1  Victor A. Sahn (CA Bar No. 97299)
      vsahn@sulmeyerlaw.com
2  Elissa D. Miller (CA Bar No. 120029)
      emiller@sulmeyerlaw.com
3  Alexandra Kazhokin (CA Bar No. 245051)
      akazhokin@sulmeyerlaw.com
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520
7
   Attorneys for Official Joint Committee of
8  Unsecured Creditors

9

                    **UNITED STATES BANKRUPTCY COURT**

10

        **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

11

12  | | |
In re                                    Case No. 8:08-bk-13150-RK

13

JAMES C. GIANULIAS,                      [Substantively Consolidated with Case No.
                                         8:08-bk-13151-RK]
14
            Debtor.
                                         Chapter 11
15  _____

16  In re                                **MOTION OF THE OFFICIAL JOINT
                                         COMMITTEE OF UNSECURED
17  CAMEO HOMES, a California corporation, CREDITORS FOR ORDER
                                         AUTHORIZING TERMINATION OF
18          Debtor,                      DEBTORS' AND DEBTORS IN
                                         POSSESSION'S PLAN EXCLUSIVITY
19                                       PURSUANT TO 11 U.S.C. § 1121(d);
                                         MEMORANDUM OF POINTS AND
20                                       AUTHORITIES; DECLARATIONS OF
                                         GARY WATTS, DOUG MAIN, AND
21                                       VICTOR A. SAHN IN SUPPORT
                                         THEREOF
22
                                         DATE:   April 13, 2009
23                                       TIME:   2:30 p.m.
                                         PLACE:  Courtroom 5D
24                                               411 West Fourth Street
                                                 Santa Ana, CA 92701-4593
25  _____

26

27

28

[EDM\LIT\525156.4]

*SulmeyerKupetz, A Professional Corporation*
*333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR*
*LOS ANGELES, CALIFORNIA 90071-1406*
*TEL. 213.626.2311 • FAX 213.629.4520*

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## MOTION

TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, TO THE DEBTORS AND THEIR ATTORNEYS AND OTHER INTERESTED PARTIES:

Through this Motion (under which the Committee requests a hearing on shortened time) of the Official Joint Committee of Unsecured Creditors for Order Authorizing Termination of Debtors' and Debtors in Possessions' Plan Exclusivity Pursuant to 11 U.S.C. § 1121(d) (the "Motion"), the Official Joint Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned jointly administered bankruptcy cases hereby applies to the Court, pursuant to 11 U.S.C. § 1121(d), for an order terminating the remaining exclusivity period held by the Debtors so that the Committee may file its competing Plan of Reorganization and have the consideration of the Committee's Plan and Disclosure Statement take place on a time track that is the same as the Debtors. The goal would be for creditors to vote upon the Committee's Plan and the Debtor's Plan and for the Court to consider confirmation of both Plans at the eventual confirmation hearings in these cases.

This Motion is based on the separately filed Notice of Motion, the attached memorandum of points and authorities and declarations of Gary Watts, Doug Main, and Victor A. Sahn submitted in support thereof, the files and pleadings in the Debtors' cases, all judicially noticeable facts, and the arguments and testimony to be presented at the hearing on the Motion.

WHEREFORE, the Committee respectfully requests that:

(1)     A hearing on the Motion be conducted at the first available date in consideration of the Debtors filing their Plan of Reorganization and Disclosure Statement on March 31, 2009 and having now scheduled a hearing on their Disclosure Statement for May 13, 2009 (however, following a discussion between counsel for the Debtors and the Committee, the hearing on the Debtors' Disclosure Statement shall take place one

1 | week later or on a date convenient to the Court's calendar which is between May 18 and

2 | May 22, 2009;

3 |         (2)     The Court enters an order granting this Motion;

4 |         (3)     The Court enters an order immediately terminating the Debtors' plan

5 | exclusivity rights;

6 |         (4)     In the alternative, the Court enters an order reducing the Debtors'

7 | exclusivity periods in order to permit the Committee to file and move forward with its Plan

8 | of Reorganization and Disclosure Statement on a parallel track with the Debtor's Plan

9 | and Disclosure Statement; and

10 |         (5)     The Court enters an order granting such other and further relief as

11 | this Court deems just and proper under the circumstances.

12 |

13 | DATED: April **3** 2009         **Sulmeyer**Kupetz

A Professional Corporation

By: _____

Victor A. Sahn
Attorneys for Official Joint Committee of
Unsecured Creditors

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[EDM\LIT\525156.4]

3

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### II.

3

### INTRODUCTION AND RELIEF REQUESTED

4      By this Motion, the Committee seeks entry of an order by the Court under

5    11 U.S.C. § 1121(d) terminating the existing exclusive right of the Debtors, as extended

6    by court order from its original expiration date of October 30, 2008 until March 31, 2009

7    to file its Plan of Reorganization and Disclosure Statement and from December 29, 2008

8    until May 11, 2009 for confirmation of the Debtors' Plan of Reorganization.[1]  Debtors

9    have been in their Chapter 11 cases since June 6, 2009 when involuntary Chapter 11

10   petitions were filed against them.  Debtors consented to Orders for Relief or otherwise

11   converted their involuntary cases to voluntary Chapter 11 cases on July 1, 2009 which

12   conversion to Chapter 11 was approved by this Court on July 2, 2009.

13      By the time of the hearing on this Motion, the Debtors will have been in

14   Chapter 11 for nine months.  By the time of the scheduled hearing on the Debtors'

15   Disclosure Statement, the Debtors will have been in Chapter 11 for ten months.  By the

16   time of any hearing on confirmation of the Debtors' Plan of Reorganization, Debtors will

17   have been in Chapter 11 for one year.

18      Finally, it is instructive that Debtors' exclusivity period to confirm its Plan of

19   Reorganization expires on May 11, 2009.  Based upon counsel's agreement to

20   _____

21   [1] Debtors' exclusivity periods were extended once by noticed motion which was opposed
     by the Committee.  The extensions granted were for approximately 90 days such that
22   Debtors' exclusivity period to file its Plan of Reorganization and Disclosure Statement
     was extended from October 30, 2008 until January 28, 2009 and Debtors' exclusivity
23   period to confirm its Plan of Reorganization was extended from December 29, 2008 until
     March 30, 2009.  Subsequent extensions of the Debtors' exclusivity periods were agreed
24   upon by stipulation although the Debtors and the Committee each have the option to
     back out of the said stipulations to extend at any subsequent time by the Debtors moving
25   ahead with their Plan and Disclosure Statement or the Committee filing a Motion like the
     within request for relief.  True and correct copies of the two stipulations to extend the
26   exclusivity periods (and for other relief) are attached hereto as **Exhibits "1" and "2"**,
     respectively ("Stipulations").
27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    accommodate the request of the Committee's counsel to continue the currently

2    scheduled Disclosure Statement hearing of May 13 to the following week, an extension of

3    the Debtors' exclusivity period regarding Plan confirmation should be from the current

4    expiration date of May 11 to May 18, 2009.

5          Accordingly, the Committee is going to be in a position to file its Plan and

6    Disclosure Statement on or about May 18, 2009.  Besides the arguments made in this

7    Motion, common sense dictates that the Court should permit the Committee to file its

8    Plan and Disclosure Statement now.

9                                   III.

10                     **FACTUAL BACKGROUND**

11     **A.**     **Background of the Debtors**

12          James C. Gianulias is an individual residing in Newport Beach, California.

13   Mr. Gianulias is in the business of real estate development and he owns an interest in a

14   number of single asset real estate entities that were formed to purchase and develop real

15   estate.  Cameo Homes, a California corporation ("Cameo") also owns an interest in a

16   number of single asset real estate entities that were formed to purchase and develop real

17   estate.  Cameo purportedly holds an interest in many of the same real estate entities in

18   which Mr. Gianulias holds an interest.  Mr. Gianulias allegedly owns 100% of Cameo and

19   therefore has an indirect interest in all of Cameo's interest in the various real estate

20   entities.  The real estate entities owned in part by Mr. Gianulias and Cameo include both

21   limited liability companies and limited partnerships (collectively, the "Companies").  The

22   Companies represent a substantial portion of the Debtors' assets.

23          Mr. Gianulias and Cameo established the Companies to own and operate

24   various real estate assets, including condominiums, residential developments,

25   commercial and retail development, and multi-family apartment complexes (collectively,

26   the "Properties").  According to the Debtors, of the various real estate assets,

27   approximately nineteen single family residence projects, four multi-family land

28   development projects and three multi-family projects remain under construction and are

1   not generating income.  Most of these projects are in foreclosure or have been foreclosed

2   upon.  According to the Debtors, the remaining projects are residential developments (for

3   the most part) that have been owned by the Debtors for some time and have been stable

4   for a long time.  These projects in many instances generate substantial income such that

5   net operating income after debt service and expenses which is distributed each month to

6   the Debtors as interest holders in these various projects is quite substantial.  Attached

7   hereto as **Exhibit "3"** are projections and actual income for the Debtors' remaining

8   properties which have been generated by GlassRatner Financial Advisory Serivces, Inc.

9   ("GlassRatner").  The declaration of Gary Watts of GlassRatner authenticates **Exhibit**

10  **"3"** and explains its contents to the Court.   This exhibit demonstrates one of the bases

11  for the Committee's Plan.  It is very simple.  The Debtors' income generating projects will

12  be utilized over a period of years to effectuate a meaningful distribution to creditors.  Mr.

13  Gianulias will continue to be employed at a reasonable salary.  The obligation to

14  administer the Plan will be with a Committee-designated bankruptcy estate

15  representative.   The differences between the Debtors' Plan and the Committee's Plan is

16  equally simple.  The Debtors estimate that unsecured creditors are owed $236,000,000.

17  The Debtors believe that by virtue of the fact that Mr. Gianulias is an individual Chapter

18  11 Debtor under applicable provisions of the Bankruptcy Code, that he can propose a

19  Plan that pays creditors income from his existing properties over a period of five years

20  following Plan confirmation.  This stream of income, after payment of claims with

21  supposedly higher liquidation priority, will result in unsecured creditors receiving $18

22  Million over the five year payment plan, a distribution of 5% on the estimated unsecured

23  claims in this case.  And, Mr. Gianulias and Cameo, which Mr. Gianulias owns 100% of

24  the stock, will get to retain the entirety of their equity in all of the remaining projects which

25  are shown upon **Exhibit 3** to this Motion, approximately 21 real properties or interests in

26  real properties.  Mr. Gianulias will have succeeded in turning $236,000,000 of unpaid

27  liabilities from his failed attempt at single-family home development into $18 Million of

28  liabilities which he will have to pay over five years.  And, he gets to keep all of the issued

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 and outstanding equity in these projects, exactly as he held them when these Chapter 11

2 cases were filed.

3      The Committee's Plan pays unsecured creditors over ten years. With the

4 continual projected growth in cash flow between the fifth and tenth years, creditors will

5 receive more than $43 Million (see Declaration of Gary Watts, paragraph 3, page 3, lines

6 16-24) under the Committee's Plan. So, on a fundamental level, the question for the

7 Court to consider is very simple-does the Court believe that Mr. Gianulias can use the

8 Chapter 11 process in the manner described in this Motion? Or, can the Committee

9 propose a Plan utilizing the very same cash flow as Mr. Gianulias while at the same time

10 paying Mr. Gianulias the salary and benefits that his own Plan contemplates and

11 returning his property to him at the conclusion of the Committee's Plan term.

12      While the Debtors' businesses span multiple states, a significant portion of

13 the Debtors' operations are located in the State of California. The Debtors claim that the

14 erosion in the California homebuilding market negatively affected the Debtors' financial

15 position. In this regard, the Debtors contend that they have guaranteed, in whole or in

16 part, the outstanding secured loans with respect to twenty-six real estate ventures that

17 remain under construction. Both of the Debtors allegedly have also guaranteed several

18 loans, which guarantees are themselves unsecured obligations against one or both of the

19 Debtors. Mr. Gianulias claims he has personally guaranteed loans totaling approximately

20 $218,000,000.00 and Cameo also has allegedly guaranteed loans totaling approximately

21 $218,000,000.00. Whatever the exact amount of these claims, the amounts owed to

22 unsecured creditors in these cases are extremely significant.

23     B.   **Substantive Consolidation of Cases**

24      After filing a noticed motion, the Debtors' Chapter 11 cases were

25 substantively consolidated on the basis of administration of claims in these cases.

26 However, as indicated in the order of substantive consolidation, these cases remain

27 separate for numerous purposes including purposes pertaining to the Plan of

28 Reorganization in these cases. A true and correct copy of this Court's order regarding

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  substantive consolidation is attached hereto as **Exhibit "4"** and is fully incorporated

2  herein by this reference.

## IV.

## FACTUAL BASIS FOR RELIEF

5       This Court has been hearing about these cases from counsel for the

6  Debtors and Counsel for the Committee for some time.  Further, the Court has heard

7  from parties representing Plaintiffs in connection with non-dischargeability cases which

8  have been filed against Mr. Gianulias, individually.  What this Court has probably heard

9  more about than any other issue in these cases is the question of value.  What is the

10  value of the assets remaining in these cases that exists for the benefit of unsecured

11  creditors as well as the purported secured claims in these cases?

12       **A.       Valuation Information in these Cases**

13       This Court will have two points of reference in determining the appropriate

14  valuation of the assets of the Debtors in these cases.  The first point of reference are the

15  financial statements provided by Mr. Gianulias and Cameo to numerous parties, which

16  are dated as of November 30, 2007 (for Cameo) and December 31, 2007 (for Mr.

17  Gianulias).   This financial statement has already been the subject of non-dischargeability

18  litigation between Wachovia Bank, Famille Holdings and California National Bank and Mr.

19  Gianulias.

20       The second point of reference in connection with valuation of assets in

21  these cases is the value as of the present time which preliminary valuation has been

22  reached by the Committee's valuation expert[2] at Deloitte Financial Advisory Services,

23  LLP ("Deloitte").  The opinion of value for the remainder of the Debtors' real estate

24  _____

25  [2] The valuations arrived at by the Debtors are subject to the Stipulations which keeps
these values subject to the privilege regarding settlement discussions.  Accordingly, while
26  the Committee has the Debtors' valuation information from FTI, until the Debtors disclose
it to this Court, the FTI valuation conclusions are subject to the referenced privileged
27  discussions.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   portfolio accordingly to Deloitte is approximately $60,000,000.[3]  Suffice to say that

2   information provided to the Committee through FTI will, when revealed to this Court,

3   result in an opinion of value for the Debtors' assets that is significantly below the

4   conclusions reached by Deloitte.

5              B.    **Value in Debtors' Plan**

6              The Debtors and the Committee have a very significant difference of

7   opinion in regard to what must be made available to creditors under the Debtors' Plan of

8   Reorganization.   According to the Debtors' bankruptcy schedules, and pleadings filed

9   with this Court, the unsecured claims in these cases total more than $200 Million.   The

10  Debtors believe that the secured claims of Marilyn Gianulias ($4.5 Million) and Gus

11  Gianulias ($3.0 Million) constitute secured claims with liens on the various interests held

12  by the Debtors in their real estate assets.  Accordingly, any Plan proposed by the Debtors

13  or any other party must take these claims into account.

14             Notwithstanding these secured claims, which claims are currently being

15  reviewed by the Committee, the remaining assets held by the Debtors are very valuable

16  assets.

17             The Committee has finished preparation of its Chapter 11 Plan and

18  Disclosure Statement.  The Plan of Reorganization is attached hereto as **Exhibit "5"**.  At

19  its core, like the remaining issues to consider in these cases, the Committee's Plan is

20  very simple.  It provides two options – (1) the first option is having the Debtors' cash flow

21  devoted to making a pay-out to unsecured creditors over a ten year period following Plan

22  confirmation; or (2) at any time during the course of the 10-year period, if the best interest

23

24  _____

25  [3] When reviewing the valuation information which the Court will receive from the Debtors
    and from the Committee, it is crucial for the Court to understand that there is a
    valuation/distribution factor to creditors based upon net operating income of the Debtors
26  each year going forward.  This is to be distinguished from the appraised value "as is" and
    "where is" based upon the opinions of value which shall be offered by Deloitte and FTI
27  Consulting.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 of creditors would be served, any of the assets which remain in the Gianulias portfolio

2 may be sold to a third party after notice and an opportunity for hearing. Thereafter, the

3 remaining assets' cash flow would be utilized to continue with the distributions to

4 unsecured creditors over the Plan's remaining term.

5    The Committee's Plan does not impose draconian measures upon the

6 Debtors. In fact, during the term of the Plan, Mr. Gianulias shall continue to receive a

7 reasonable salary and shall have an opportunity to work directly with the Committee's

8 designated Estate Representative in managing the properties which comprise the

9 Debtors' portfolio of properties in these cases. Further, at the conclusion of the pay-out

10 (which may be prepaid at any time), Mr. Gianulias will receive all of his property interests

11 in real estate back, free and clear of all claims of unsecured creditors in these cases.

12                                        V.

13 **SUFFICIENT CAUSE EXISTS WARRANTING THE TERMINATION OF THE**

14 **DEBTORS' PLAN EXCLUSIVITY RIGHTS**

15    Section 1121(d) of the Bankruptcy Code authorizes parties in interest to

16 seek to terminate the 120-day exclusivity period granted to debtors in possession to file a

17 plan of reorganization. 11 U.S.C. §1121(d). The party requesting a reduction of the

18 exclusivity period has the burden of proving "cause" for such reduction. *See In re Texaco*

19 *Inc.*, 81 B.R. 806, 810 (Bankr. S.D. N.Y. 1988).

20    The term "cause" is not defined by the Bankruptcy Code. Rather, the courts

21 determine on a case by case basis what constitutes cause in a particular situation. *See*

22 *e.g., In re Situation Mgmt. Sys., Inc.*, 252 B.R. 859, 863-66 (Bankr. D. Mass. 2000). In

23 determining whether to terminate a debtor's exclusivity, the primary consideration should

24 be whether or not doing so would facilitate moving the case forward toward a fair and

25 equitable resolution. *In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. 444, 452 (9th Cir.

26 BAP 2002); *In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997).

27 "[T]hat is a practical call that can override a mere toting up of the factors." *In re Dow*

28 *Corning Corp., supra*, 208 B.R. at 670.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    A variety of factors probative of §1121(d) "cause" are typically considered:

2    1.  the size and complexity of the case;

3    2.  the necessity of sufficient time to permit the debtor to negotiate a plan of

4    reorganization and prepare adequate information;

5    3.  the existence of good faith progress toward reorganization;

6    4.  the fact that the debtor is paying its bills as they become due;

7    5.  whether the debtor has demonstrated reasonable prospects for filing a

8    viable plan;

9    6.  whether the debtor has made progress in negotiations with its creditors;

10    7.  the amount of time which has elapsed in the case;

11    8. whether the debtor is seeking an extension of exclusivity in order to

12    pressure creditors to submit to the debtor's reorganization demands; and

13    9. whether an unresolved contingency exists.[4]

14    *In re Dow Corning Corp.*, *supra*, 208 B.R. at 664-65; *In re Henry Mayo Newhall Mem'l*

15    *Hosp.*, 282 B.R. 444, 452.

16    In addition to the above-stated *Dow Corning* matters, courts addressed

17    other factors that tend to favor termination of exclusivity or oppose extension of

18    exclusivity.

19    **a.    The Debtors' Plan of Reorganization**

20    The Debtor's Plan and its pay-out to unsecured creditors has been

21    discussed above.  The Debtors' Plan is unconfirmable for the following reasons:

22    1.    It violates the absolute priority rule as it relates to creditors of Cameo

23    Homes, Inc and creditors holding claims against both Cameo and Gianulias.  Mr.

24

25

26    _____

[4] The legislative history of section 1121 indicates that "cause" might include "an unusually large
27    or unusually small case, delay by the debtor, or recalcitrance among creditors."  H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977).

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 · FAX 213.629.4520

1  Gianulias is retaining all of his interests in the Debtors notwithstanding the 5% payment

2  on their allowed unsecured claims.

3         2.      To the extent that individual creditors of Mr. Gianulias, who do not

4  hold claims against Cameo, are subject to the provisions of Section 1129(a)(15)(B) of the

5  Code, these creditors have additional bases to defeat the Debtors' Plan.

6         3.      The Debtors' Plan will be defeated because it is not fair and

7  equitable to unsecured creditors, whether they be creditors of Cameo or Gianulias or

8  both, within the meaning of Section 1129(b)(1) of the Code.

9         4.      The Debtors' Plan will be defeated because it is not proposed in

10  good faith within the meaning of Section 1129(a)(3) of the Code because of the meager

11  payment which unsecured creditors will receive and because of Mr. Gianulias' retention

12  of his interests and Cameo's interests in the various real properties which will fund the

13  Debtors' business going forward.

14         5.      Most importantly for this motion, the Committee's Plan offers

15  unsecured creditors substantially more than the Debtors' Plan.  *See* Declaration of Gary

16  Watts, paragraph 4.

17         b.      **Filing "New Value" Plan**

18         Filing a plan which permits old equity to retain a stake in a reorganized

19  debtor upon contribution of new value without competitive bidding for the right to

20  contribute such value violates the absolute priority rule and requires termination of the

21  debtor's exclusivity.  *Bank of America Nat'l Trust and Savings Assoc. v. 203 North*

22  *LaSalle Street Partnership*, 526 U.S. 434, 441-443, 119 S. Ct. 1411, 143 L. Ed. 2d 607

23  (1999).

24         In this case, the Debtors' Plan will provide for the following (in addition to

25  the items referenced in subparagraph 'a', above):

26         1.      Retention by the Debtors of all of the property interests held in the

27  various projects which are owned presently by the Debtors, in violation of the absolute

28  priority rule;

1    2.    Payment to creditors of seven years of "disposable income" in

2  purported satisfaction of Section 1129(a)(15)(B) of the Code; and

3    3.    Creditors will not benefit from any increase in the value of the

4  Debtors' assets.

5    The Debtors' Plan cannot be confirmed, as it violates the "fair and

6  equitable" requirement of Section 1129(b).  Cameo's equity holders will retain their equity

7  interest in Cameo without contributing any new value to the estate, a blatant violation of

8  the absolute priority rule contained in Section 1129(b)(2).  Even if Section

9  1129(b)(2)(B)(ii) permitted an individual debtor to retain his equity interests while paying

10  his creditors anything, which it does not, Cameo is not an individual debtor, and the

11  Debtors' proposed treatment at best would apply only to Mr. Gianulias.  Many of the

12  creditors of Mr. Gianulias are also creditors of Cameo and their rights as creditors of

13  Cameo cannot be treated under a Plan as Mr. Gianulias might be permitted (absent

14  violations of other provisions of the Bankruptcy Code) to treat his creditors.  The

15  absolutely priority rule applies to and in favor of creditors of Cameo.

16    The Debtors propose to pay to creditors five years of disposable income

17  pursuant to Section 1129(a)(15) which is required to be satisfied in individual debtor

18  cases.  Cameo is not an individual debtor case, but nothing prevents it from complying

19  with the additional burdens of section 1129(a)(15) if it so chooses.  The Plan, however,

20  treats Mr. Gianulias' compliance with the mandatory requirement of 1129(a)(15) as a de

21  facto waiver of Cameo's need to comply with the absolute priority rule, which is not

22  correct.  Cameo must still comply with the "fair and equitable" requirement of 1129(b)

23  which prevents equity from retaining any interest in the debtor on account of their pre-

24  petition interest, unless creditors are paid in full, and this requirement is not met.  Nor

25  does its purported compliance with section 1129(a)(15) constitute "new value" that

26  exempts Cameo from complying with the absolute priority rule, as such proposal violates

27  *La Salle*.  Mr. Gianulias likewise must comply with the fair and equitable requirement of

28  Section 1129(b), independent of the mandatory requirements of Section 1129(a)(15).

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Debtors must also give creditors the potential for up-side profit, which the

2  Debtors' Plan fails to do.  See *In re Bohman*, 77 B.R. 639 (Bankr. S.D. Ohio 1987)

3  (finding plan proposing 15% payout to creditors with no potential for up-side profit not fair

4  and equitable); *In re Pullman Constr. Indus.*, 107 B.R. 909, 950 (Bankr. N.D. Ill. 1989)

5  (plan proposing 1% payout to creditors violated 1129(b), as no provision was made for

6  creditors to share in debtors' up-side growth potential).

7    The Plan further violates the good faith provision of Section 1129(a)(3).

8  "Good Faith" under subsection (a)(3) requires that creditors get reasonable value for the

9  assets in the Bankruptcy Case and that this value is determined with reference to the

10  utilization which will be made of the assets as contemplated by the Debtors' Plan.  The

11  Debtors propose to retain all property in the estate, yet the creditors will not be paid

12  based upon the reorganization value or "going concern value" of the Debtors.  See *In re*

13  *Bjolmes Realty Trust*, 134 B.R. 1000 (Bankr. Mass. 1991) (current market value is

14  irrelevant in determining reorganization value).

15    c.    <u>Use of Exclusivity to Force Creditors to Accept Unsatisfactory</u>

16    <u>or Unconfirmable Plan</u>

17    The debtor's use of the exclusivity period to force creditors to accept an

18  unsatisfactory or unconfirmable plan may be a factor in deciding to terminate exclusivity.

19  *See In the Matter of Interco Incorporated*, *supra*, 137 B.R. at 1001 (declining to terminate

20  exclusivity, the court noted that, among other things, the record had not established that

21  the debtors were using what remained of the extended exclusive period to pressure

22  creditors into acceding to a plan that was not confirmable); *In re Texaco Inc.*, *supra*, 81

23  B.R. at 812-13 (deciding not to terminate the debtor's exclusivity period, the court

24  recognized that the exclusivity period should not be used as a tactical device to put

25  pressure on parties to agree to an unsatisfactory plan; however, there was no evidence

26  to conclude the debtor was using the exclusivity period in that fashion).  In this case,

27  there have been negotiations between the Debtors and the Committee, however, those

28  negotiations have not lead to a consensual result or a settlement of disputes.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    It is difficult or impossible to know the intentions of another party. The

2    Debtors have fought aggressively to preserve their exclusivity rights in these cases.

3    There can be only one reason for Debtors' tenacity. The Debtors do not want the

4    Committee to give unsecured creditors an alternative to the Debtors' Plan on which to

5    vote, and the Debtors do not want to give this Court an alternative Plan of Reorganization

6    to consider for confirmation purposes, especially if the Committee's Plan receives the

7    affirmative votes of unsecured creditors and the Debtors' Plan is rejected.

8    It is reasonable for the Court to assume that the Debtors have this intention.

9    The Committee does not begrudge the Debtors for their aims. The Committee simply

10   points out that this fails to accord unsecured creditors their rights under Chapter 11 of the

11   Bankruptcy Code in these particular cases. **The Committee's valuation expert values**

12   **the Debtors' property, today, at $60 Million. The Debtors' Plan pays unsecured**

13   **creditors $18 Million over more than five years and the Debtors keep all of the**

14   **equity in their property**. (Emphasis added)The Committee believes that giving it the

15   opportunity to solicit its constituency and provide them with an alternative to the Debtors'

16   Plan is what is "just and equitable" and fair under the circumstances. Only by permitting

17   this to occur will the rights of unsecured creditors under Section 1129(b)(1) be protected

18   and properly recognized as the law requires.

19   d.    **Acrimonious Relations and Feuding Between Principal Parties**

20   In *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 160-61 (Bankr. D. Me.

21   1982), the court shortened both the 120-day and 180-day periods referred to in section

22   1121. In doing so, the court noted that the major obstacle in the path to a successful

23   reorganization in the case was the principal parties' acrimonious relations. *Id.* As the

24   debtor continued to lose money, the relationship between him and the creditor soured.

25   *Id.* at 157. The creditor testified to many occasions when the debtor made allegedly false

26   statements to him. *Id.* While most of those statements concerned matters not of great

27   consequence, they contributed to the breakdown of good relations between the debtor

28   and the creditor. *Id.* In an angry meeting, both parties aired their mutual displeasure with

1 the then-existing state of affairs. *Id.* Finally, the creditor commenced foreclosure

2 proceedings in state court on his mortgages. *Id.* In response, the debtor filed Chapter 11

3 petition. *Id.*

4          The *Crescent Beach Inn* court noted that the parties "continued their bitter

5 feuding not only at their own expense, but at the expense of all creditors of the debtor."

6 *Id.* at 160-61. Therefore, shortening the debtor's exclusive period for filing a plan would

7 "permit any party in interest, including parties with perhaps a more objective view of the

8 debtor's circumstances, to file a plan." *Id.* The court believed that the interests of all

9 creditors and the interests of the debtor would be best served by permitting any party in

10 interest to file a plan. *Id.* Moreover, the court urged the parties to "put aside their

11 personal differences and unite in a common effort to successfully reorganize the debtor

12 for the benefit of all creditors." *Id.*

13          Similarly, in *In re Texas Extrusion Corp.*, 68 B.R. 712, 724-25 (N.D. Tex.

14 1986), the court held that the exclusive time for filing a plan was properly shortened

15 where, among other things, a major obstacle in the path to successful reorganization was

16 the principal parties' acrimonious relations. Specifically, there were accusations of ethical

17 violations, a motion for sanctions after the "hustle" letter was sent out, and motions to

18 disqualify counsel. *Id.*

19          Committee counsel and Debtors' counsel have conducted themselves in a

20 cooperative manner for some months, especially as compared with the early stages of

21 this case. However, there are three non-dischargeability lawsuits pending against Mr.

22 Gianulias, including two which have been filed by Committee members. This certainly is

23 not evidence of harmonious relations and the Committee believes that this should be

24 considered by the Court in deciding whether to terminate the Debtors' exclusivity period.

25          e.      **Prejudice**

26          "Prejudice" in the exclusivity context is defined as the debtor "unwilling to

27 negotiate in good faith with creditors." *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr.

28 S.D. Ohio 1996) (addressing extension of exclusivity); *see also In re McLean Indus., Inc.*,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  87 B.R. 830, 835 (Bankr. S.D. N.Y. 1987) (in the context of extension of exclusivity, no

2  prejudice was shown because, among other reasons, it was not the case where the

3  debtor "had lost sight of the need to deal with its creditors," and the debtor and the

4  creditor agreed on the preliminary direction for a plan).

5       The Committee cannot say that the Debtors have failed to negotiate in good

6  faith as the Committee's counsel believes that the Debtors have negotiated in good faith.

7  As the Court has been informed, that may lead to a consensual Plan of reorganization at

8  some future date in this case, and perhaps in the near future.  However, this possibility,

9  while promising, is not certain and the Court and parties cannot act as if it is until there is

10  an agreement reached and a binding agreement signed by parties who can bind their

11  clients.  The fact remains that as demonstrated by this Motion, the Debtors and the

12  Committee have drastically different views of what the true values are of the assets in

13  these cases and of the Debtors' obligations vis-à-vis creditors relative to the amount and

14  time frame over which net cash flow from operations must be utilized to pay creditors'

15  claims.  Accordingly, while prejudice does not exist by reason of the Debtors' bad faith

16  negotiations, real prejudice will result if the Committee is not permitted to solicit

17  acceptances for its Plan of Reorganization which shall demonstrably offer considerably

18  more in consideration than will be offered by the Debtors.

19       **f.**    **Stalemate or Impasse in Plan Negotiations**

20       Whether the parties have reached a stalemate or impasse in plan

21  negotiations is one of the factors courts look at in determining whether to adjust the

22  exclusivity period.  *See e.g.*, *In re Henry Mayo Newhall Mem'l Hosp.*, *supra*, 282 B.R. at

23  452 (the Ninth Circuit BAP discussed the bankruptcy court's findings, including the fact

24  that the debtor was "making satisfactory progress negotiating with key creditors"); *In re*

25  *Elder-Beerman Stores Corp.*, 1997 U.S. Dist. LEXIS 23785, *28 (S.D. Ohio June 23,

26  1997) (in deciding whether to grant an extension, the court affirmed the bankruptcy

27  court's finding that negotiations had just begun, that there had been only one meeting

28  between the parties, and that it was too early to conclude that negotiations were at an

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  impasse); *In re Sharon Steel Corp.*, 78 B.R. 762, 765 (Bankr. W.D. Pa. 1987) (rejecting

2  the debtor's first request for an extension because, among other things, the debtor has

3  not demonstrated sufficient progress in negotiations); *In re R.G. Pharmacy, Inc. d/b/a*

4  *Medicine Shoppe*, 374 B.R. 484, 488 (Bankr. D. Conn. 2007) (the debtor did not show

5  good cause for granting the extension, particularly in light of the breakdown of

6  negotiations between the parties).

7          The negotiations thus far in this case have already been described above

8  and at a hearing which occurred before this Court on March 31. However, as stated, until

9  the parties reach an agreement, the present state of the record is that there is a Plan on

10  file by the Debtors which the Committee will vigorously oppose if it is not dramatically

11  revised. This case has been ongoing for nine months and there is no agreement as of

12  yet. Nothing in regard to the negotiating balance between the parties will be disturbed by

13  having the Committee's motion granted. The Committee is confident that this Court will

14  judiciously consider the merits of this Motion without regard to prior descriptions of the

15  parties' negotiations or the hope that a resolution will be reached.

16          g.    **Prospect of Concurring Plan or other Initiatives; Delay of**

17              **Alternative Plan because of Exclusivity**

18          The possibility of a concurring plan or other initiatives may affect the court's

19  decision with respect to adjusting the exclusivity period. For instance, in *In re Amko*

20  *Plastics, Inc., supra*, 197 B.R. at 77-78, the court noted that the Unsecured Creditors'

21  Committee had not offered a plan in connection with its opposition to the motion for

22  extension of exclusivity, "nor shared with the court what initiatives it would undertake if

23  exclusivity were terminated." The only other course than the one pursued by the debtor

24  seemed to be liquidation. *Id.* at 78. Then, the showing had to be made of the presence

25  of the conditions for conversion or dismissal, and none of those conditions were present.

26  *Id.; see also In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 521, 537 (Bankr. D. N.H.

27  1988) (among other factors pertinent to the extension of plan exclusivity, the court noted

28  "no alternate substantial plan being held off by debtor exclusivity").

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    In this case, the Committee is not offering liquidation.  The Committee is

2 simply offering to take the very cash flow which the Debtors will utilize to pay creditor

3 claims in this case and causing it to be distributed over a longer period of time than will

4 be the case with the Debtors' Plan.  All that the Debtors can offer to oppose this Plan is

5 their misplaced reliance upon the primacy of Section 1129(a)(15)(B) of the Code and the

6 hope that this Court will ignore the balance of the Bankruptcy Code and that this Court

7 will mis-apply Section 1129(a)(15)(B) in this case.[5]

8    **h.    Depriving Creditors' Committee of Material or Relevant**

9       **Information**

10    Whether the Creditors' Committee is deprived of material or relevant

11 information may be considered in adjusting the exclusivity period.  For instance, in *Henry*

12 *Mayo Newhall Memorial Hospital*, the Ninth Circuit BAP affirmed the bankruptcy court's

13 extension of the exclusivity period in part because the Creditors' Committee had access

14 to relevant information.  *In re Henry Mayo Newhall Mem'l Hosp.*, *supra*, 282 B.R. at 452;

15 *see also In re Dow Corning Corp.*, *supra*, 208 B.R. at 665 (assessing the sufficiency of

16 time for the debtor to prepare and provide adequate information to all parties).

17    **i.    The Creditors' Loss of Confidence in Capability of Debtor's**

18       **Management**

19    In *In the Matter of All Seasons Industries, Inc.*, *supra*, 121 B.R. at 1006, the

20 court held that the creditors' loss of confidence in the capability and the integrity of the

21

22 [5] By the Debtors' reasoning, to overcome their unconfirmable Plan of Reorganization, this
Court would have to hold that substantive consolidation robbed unsecured creditors of

23 their rights under the Bankruptcy Code in favor of adherence to a single provision of the
Code that permits a pay-out of disposable income over a limited period of time.  That is

24 not what substantive consolidation does and is not what the substantive consolidation
order entered by this Court permits.  If the Debtors were correct, then any high net-worth

25 individual with guarantee liabilities that exceed the individual's net worth and a separate
business entity having the same obligations as the individual can file two Chapter 11's

26 and forego the corporation's obligations and the obligations of the individual under
Section 1129(a) and 1129(b) simply by relying on Section 1129(a)(15)(B) and making

27 believe that no other provisions of the Code apply.

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  debtor's management was one of the factors to consider in determining whether to grant

2  the debtor's motion for an extension of the exclusivity period.  The creditors' loss of

3  confidence was one of the reasons that the debtor and its major secured creditors were

4  not able to find common ground upon which to build a plan of reorganization.  *Id.*

5        In this case, unsecured creditors do not believe that any thought has been

6  given to their legitimate rights or to maximizing their distribution in these cases.  The

7  Debtors have not tried to market their real estate portfolio, have not investigated whether

8  any prepetition transactions can be avoided for the benefit of creditors, and are focused

9  on one goal only—to retain their property interests in the various real estate assets they

10  own and to pay the smallest possible dividend to unsecured creditors, whether fairness

11  and equity is accomplished in that process or not.

12        The within Exclusivity Reduction motion by the Committee, reduced to its

13  essentials, is what is necessary for this Court to level the playing field and create a "fair

14  and equitable" situation in these cases.

15              **j.      No Progress in Arranging Financing**

16        In *In re EUA Power Corp.*, 130 B.R. 118, 118 (Bankr. D. N.H. 1991), the

17  debtor did not make a showing of cause justifying an extension of the exclusivity.  The

18  debtor's reports showed it operating at a loss, and the debtor admitted that it did not have

19  in place any funding arrangement with regard a substantial cash payment that would be

20  required in the near future.  *Id.*  While the debtor was pursuing his course of action, it was

21  useful and appropriate for the reorganization that other alternative approaches be

22  pursued.  *Id.* at 119.  The bondholders committee was in a position to pursue those

23  alternative approaches because it had the power to wipe out all debt service by filing a

24  plan that provided for conversion of its creditor position into equity position.  *Id.*

25  Therefore, it was essential to open up the plan process to competing plans to achieve a

26  number of results that would foster a consensual reorganization or would force

27  movement towards a reorganization that might be confirmed by the court.  *Id.* at 118-19;

28  *see also In re Sharon Steel Corp., supra,* 78 B.R. at 766 (rejecting the debtor's first

1    request for an extension because, among other things, the debtor has shown no

2    meaningful progress toward obtaining the financing package to assure its continued

3    operation).

4       The Debtors have employed some very expensive talent in this case in

5    order to try and bring about a reorganization.  They have hired David Gianulias at

6    $27,000/month to perform tasks regarding obtaining of financing with respect to property

7    that the Debtors no longer own; they have employed Steve Thigpen at a monthly salary

8    of approximately $28,000.  They have employed two internal financial people, Shaun

9    Conerty and John McFadden.  Mr. McFadden is extremely busy in both responding to the

10    Committee's information requests and addressing financial and tax issues of the Debtors

11    and entities related to the Debtors.  He is paid approximately $17,000 per month.

12    However, at a cost of approximately $18,000 per month, Mr. Conerty's duties and

13    performance are extremely unclear to the Committee.  Finally, there is Mr. Gianulias

14    himself, who receives net distributions each month which are in excess of $50,000.

15    These four individuals cost the estate $140,000 per month.  Over the last nine months,

16    that is a total cost to the estate of $1,260,000.  The Committee has indicated that it has

17    personally observed both Mr. McFadden and Mr. Thigpen performing valuable services in

18    these cases.  The same cannot be said of David Gianulias, James Gianulias or Shaun

19    Conerty.

20       All that this very expensive talent has come up with in these cases (these

21    costs exclude more than $1,000,000 incurred and paid to FTI Consulting) is a Plan that

22    will apparently distribute income that already exists, and which has existed for some time,

23    to unsecured creditors for a very limited period of time.  Accordingly, it is very clear in

24    these cases that the Debtors have not been able to come up with financing and that they

25    are using the assets which existed when these cases were filed to pay some dividend to

26    creditors.

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## VI.

## CAUSE EXISTS TO HEAR THE MOTION ON AN EMERGENCY OR SHORTENED

## TIME BASIS

Pursuant to Local Bankruptcy Rules 2081-1(a) and 9075-1(a) and Rule 9006(c) of the Federal Rules of Bankruptcy Procedure, the Court may hear an emergency motion on less than 48 hours notice.  Rule 9006(c) specifically provides as follows:

> (c)      Reduction.
>
> (1) *In general.*  Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.
>
> (2) *Reduction not permitted.*  The court may not reduce the time for taking action under Rules 2002(a)(7), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 4008(a), 8002, and 9033(b). In addition, the court may not reduce the time under Rule 1007(c) to file the statement required by Rule 1007(b)(7).

This Motion is a motion under section 1121(d) of the Bankruptcy Code, as permitted motion under Rule 9006(c)(1).  Therefore, the Court should exercise its power under Local Rule 9075-1(b).  Given that the Debtors have agreed to hold a hearing on approval of their Disclosure Statement during the week of May 18-22 instead of the scheduled date of May 13, it would be appropriate for the Court to conduct the hearing on the within Motion either on April 10 or April 12 or 13 if the Court's calendar will permit and the Court agrees with the Committee's request for a shortened time hearing.

As discussed above, the Debtors have devised an unconfirmable Plan meant to accomplish nothing more than enrich equity to the detriment of unsecured

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   creditors.  At this point, continuation of the Debtors' exclusivity period will put unjustified

2   pressure on creditors to submit to the Debtors' reorganization demands and to accept an

3   unsatisfactory plan.  It will impede moving these chapter 11 cases moving forward

4   towards a fair and equitable resolution.  Maintaining the Debtors' exclusivity will result in

5   nothing more than increased costs of litigation, and will prolong the "agony" of the

6   Debtors' Plan which has no chance of becoming satisfactory to unsecured creditors or

7   being confirmed.

8          As the Committee has prepared its own plan, it has the right and desire to

9   propose it and should no longer be held hostage by the Debtors.  Therefore, it is

10  imperative that this Court grant the Debtor's emergency request to have this matter heard

11  as soon as possible.

**VII.**

**CONCLUSION**

14         Based on the foregoing, the Committee respectfully requests that the

15  Motion be granted in all respects, and for such other and further relief as the Court

16  deems just and proper.

18  DATED: April ___ 2009          **Sulmeyer**Kupetz
                                   A Professional Corporation

20                          By:  _____

21                               Victor A. Sahn
22                               Alexandra Kazhokin
                                 Attorneys for Official Joint Committee of
23                               Unsecured Creditors

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[EDM\LIT\525156.4]

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DECLARATION OF DOUG MAIN**

I, Doug Main, hereby declare:

1.      I am employed by Deloitte Financial Advisory Services, LLP ("Deloitte").  My position with them is Director.  I am one of the individuals employed by Deloitte in connection with Deloitte's employment as valuation and financial consultant to the Creditors Committee who is responsible for Deloitte's performance of their duties.  I submit this declaration in support of the Committee's Motion to Reduce or Eliminate the Debtors' Exclusivity Periods.  I submit this declaration based upon my personal knowledge and if called as a witness, I would testify completely to each of the mattes stated herein under the penalty of perjury.

2.      Attached hereto as **Exhibit "6"** is a true and correct copy of a schedule summarizing preliminary valuation prepared by Deloitte for the Committee regarding the value of the Gianulias' real estate portfolio, excluding any deductions for prepayment penalties.  The valuation shown in that schedule, which does not include a deduction for prepayment penalties which we are advised should not apply to the Plan of Reorganization which either the Debtor or the Committee shall propose in this case, is approximately $60,000,000.

3.      We have met with FTI Consulting in order to discuss the differences between the parties in regard to valuation.  There may be some adjustments prior to the actual presentation of testimony if the parties do not settle their differences.  However, I am comfortable in providing Deloitte's valuation to the Court in order for the Court to understand the magnitude of value that exists in this case.

I declare the matters stated herein to be true under the penalty of perjury.

Executed this 2nd day of April, 2009 at Atlanta, Georgia.

_____
Doug Main

[EDM\LIT\525156.4]

## Sahn, Victor A.

| | |
|---|---|
| **From:** | Main, Douglas (US - Atlanta) [dmain@deloitte.com] |
| **Sent:** | Thursday, April 02, 2009 4:08 PM |
| **To:** | Main, Douglas (US - Atlanta); Kazhokin, Alexandra G. |
| **Cc:** | Sahn, Victor A. |
| **Subject:** | RE: Your Declaration |

**From:** Main, Douglas (US - Atlanta)
**Sent:** Thursday, April 02, 2009 7:04 PM
**To:** 'Kazhokin, Alexandra G.'
**Subject:** RE: Your Declaration

Hello Alexandra

As mentioned I got this email this morning and I have been in the field all day in Ft Meyers – I am current in the airport to as have a flight to Toronto tonight – as mentioned, during our call there is not a place to print out the document –

As promised below is my electronic signature

Regards

Doug
949-500-2840

**From:** Kazhokin, Alexandra G. [mailto:akazhokin@sulmeyerlaw.com]
**Sent:** Wednesday, April 01, 2009 9:12 PM
**To:** Main, Douglas (US - Atlanta)
**Cc:** Sahn, Victor A.
**Subject:** RE: Your Declaration

Hi Doug,

Thank you for your comments.  Please sign and date the attached declaration and return it to me by either fax or e-mail as soon as possible.  We anticipate filing the motion tomorrow.

Thank you,

4/2/2009

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## DECLARATION OF GARY WATTS

I, Gary Watts, hereby declare:

1.    I am employed by GlassRatner Advisory Group, LLC ("GlassRatner"). I am a certified public accountant and law school graduate. I have been employed at GlassRatner since 2007. Prior to working at GlassRatner, I worked with XRoads Solutions, Navigant Consulting, Inc., Kibel Green, Inc., and with the Federal Deposit Insurance Corporation and the Resolution Trust Corporation. I worked in Public Accounting for approximately ten years, and during that time primarily in the real estate area. I was also a due diligence officer and broker dealer and was responsible for approving the sale of between $150-$200,000,000 of real estate limited partnership interests each year for a company known as Financial Services Corporation located in Atlanta, Georgia. I have been an Executive Vice President for Historic Diversified Investors for five different public limited partnerships (i.e. with reporting obligations to the Securities and Exchange Commission) which owned historically certified real estate projects. I submit this declaration in support of the Committee's Motion to Reduce or Eliminate the Debtors' Exclusivity Periods.

2.    In connection with the Debtors' business, we have performed due diligence work on the Debtors' assets and have examined their books and records and other information given to us by the Debtors. In addition, we have prepared pro forma projections for the Debtors' operations beginning in 2009 and have moved those projections forward over ten years. A true and correct copy of those projections is attached hereto as **Exhibit 3** and is incorporated herein by this reference. We believe that the projections are reasonable and conservative and, without breaching the confidentiality of information exchanged with the Debtor for settlement purposes, believe that our projections for future operations are more conservative than the Debtors' projections.

3.    We have spent a great deal of time reviewing the Debtors' operations and the financial information which they have supplied to GlassRatner

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    regarding those operations.  We are confident that the projections we have provided in

2    support of this Declaration and the Committee's motion regarding reduction or elimination

3    of exclusivity are correct.  Over the course of ten years following plan confirmation of the

4    Committee's Plan of Reorganization, the existing portfolio of the Debtors' properties will

5    provide cash flow which we believe will total, before taxes, approximately

6    $67,669,475.00.  The Debtors' cash flows which are attached to its Plan of

7    Reorganization project cash flows over five years whereby unsecured creditors will be

8    paid approximately $18 Million on account of their allowed claims.  The Plan also

9    estimates claims in the unsecured creditor class in the amount of $236,000,000 thereby

10    giving creditors a total return of $.05/$1.00.  Utilizing the cash flows prepared by

11    GlassRatner (which would be even greater based upon the Debtors' view of its cash

12    flows), after deducting payment to Gus Gianulias and Marilyn Gianulias Robbins (and not

13    making any payments on account of secured debt on the Hawaii condominium, the

14    Colorado Ski Condominium and the property in Northern California, none of which have

15    any equity for the benefit of creditors), the distributable cash to unsecured creditors will

16    be approximately $43,169,475 over ten years.  In making this calculation, I have

17    subtracted the expenses exactly as projected in the Gianulias/Cameo Plan including

18    making payments to Mr. Gianulias for his personal expenses and have projected out

19    those expenses (see **Exhibit 7** attached hereto which are the projections prepared by Mr.

20    Gianulias and Cameo in connection with their Plan of Reorganization) over the ten year

21    term of the Plan.  I have also subtracted full payments to Marilyn Gianulias Robbins on

22    her purported secured claim as well as full payments to Gus Gianulias (although the

23    Debtors' plan does not provide for any payments to Gus Gianulias) in arriving at this total

24    sum.

25         4.    The Debtors' Plan of Reorganization proposes payments to

26    unsecured creditors of $18 Million over five years while the Committee's Plan proposes

27    payments of $43,169,475 over ten years.  The present value of the funds which the

28    unsecured creditors will receive from the Debtor is approximately $13-$15 Million.  The

1  present value of the cash flow payments to the unsecured creditors under the

2  Committee's Plan is $30-$33 Million.

3              I declare the matters stated herein to be true under the penalty of perjury.

4  Executed this 2nd day of April, 2009 at Irvine, California.

5

6

7              Gary Watts

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## DECLARATION OF VICTOR A. SAHN

I, Victor A. Sahn, hereby declare:

1.      I am a member of SulmeyerKupetz, a professional corporation, one of the counsel at this firm responsible for representation of the Creditors' Committee in the bankruptcy cases of James C. Gianulias and Cameo Homes, Inc. I submit this declaration in support of the Committee's Motion to Reduce or Eliminate Exclusivity. If called as a witness, I would testify to each of the matters stated herein based upon my personal knowledge and under the penalty of perjury.

2.      I believe that the parties have made their best attempt to negotiate a resolution of the issues in this case. In spite of those efforts, no resolution has been reached. Further, given (1) the different views of the Debtors and the Committee regarding how the Debtors should allocate their distributable cash under their Plan; and (2) the different views of the Debtors and the Committee regarding the value of the various real property interests in the Debtors' portfolio, I am not optimistic that a consensual resolution of disputes will ever occur.

3.      Whether or not it was the Debtors' intention, the Committee has been prevented from meaningful participation in these bankruptcy cases. No avoiding powers' analysis has been done by the Debtors; no efforts have been made by the Debtors to market their real estate portfolio to an interested third party. The clear intention of the Debtors from the inception of these cases was to retain their interests in the real estate portfolio that they own and to effectuate as de minimus a distribution as possible to unsecured creditors while at the same time retaining their existing interests in the real estate portfolio after creditor claims are paid pursuant to their proposal.

4.      Other than providing unsecured creditors with an opportunity to propose and solicit acceptances of their Plan through a Committee-sponsored Plan of Reorganization, I do not see any other manner by which the playing field between the Debtors and the Committee can be leveled, and no other manner by which fair and equitable treatment can be accorded to my clients. To permit unsecured creditors to

1  decide between voting on the Committee's Plan and voting on the Debtors' Plan is the

2  only way that fairness, as required by the Bankruptcy Code, can possibly be achieved.

3         5.       At this point, continuation of the Debtors' exclusivity period will put

4  unjustified pressure on creditors to submit to the Debtors' reorganization demands and

5  to accept an unsatisfactory plan.  It will impede moving these chapter 11 cases forward

6  towards a fair and equitable resolution.  Maintaining the Debtors' exclusivity will result in

7  nothing more than increased costs of litigation, and will prolong the "agony" of the

8  Debtors' Plan which has no chance of becoming satisfactory to unsecured creditors or

9  being confirmed.   The Committee firmly believes that if the Debtors' Plan is the only one

10  that is allowed to be considered at this time, that the Committee will defeat the Plan and

11  then have to move thereafter to have its Disclosure Statement considered by this Court

12  followed by its own Plan of Reorganization.

13         6.       As the Committee has prepared its own Plan, it has the right and

14  desire to propose it and should no longer be held hostage by the Debtors.  Therefore, it is

15  imperative that this Court grant the Committee's request to have this matter heard as

16  soon as possible.

17         I declare the matters stated herein to be true under the penalty of perjury.

18  Executed this _3_ day of April, 2009 at Los Angeles, California.

19

20

Victor A. Sahn

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520