1    There are no known Code Section 507(a)(1), 507(a)(4), 507(a)(5),

2    507(a)(6), or 507(a)(7) unsecured Priority Claims.

3    **D.    Class of General Unsecured Claims.**

4    General unsecured claims are unsecured claims not entitled to priority

5    under Code section 507(a).

6    The following chart identifies the Plan's treatment of the classes of Claims

7    containing all of Debtor's General Unsecured Claims (*see* Exhibit 4 to the Disclosure

8    Statement for detailed information about each Unsecured Claim):

| Class No. | Description | Impaired (Y/N) | Treatment |
|-----------|-------------|----------------|-----------|
| 2 | Unsecured claims of creditors in bankruptcy cases of James C. Gianulias and Cameo Homes, Inc. | Yes The Claimants in this Class are entitled to vote. Debtors estimate that the claims in this class total $250,000 | Creditors in this class shall be paid pro rata from the collections of the Estate Manager from the properties that are income producing in these cases. Secondly, creditors in this class shall be treated according to the terms and conditions of the Order entered into between the Creditors Committee and the Debtors substantively consolidating the bankruptcy estates of James C. Gianulias and Cameo Homes, Inc., which consolidation was for limited purposes. Second, creditors will be paid from the proceeds collected as a result of avoidance actions commenced by the Estate Manager against third parties. Fourth, and finally, unsecured creditors shall be paid from the net proceeds realized from sales of real property and interests in real property as well as other interests in real and personal property of the Debtors which the Estate Manager arranges in the course of his or her duties and after appropriate notice and opportunity for hearing as required under this Plan of Reorganization. Distributions pursuant to this paragraph, from funds which are available to make such distributions shall be made when the Distributable Funds available equal or exceed $250,000 but shall not occur more frequently than every three months, starting with the first full three month period following confirmation of the Plan. The Estate Manager shall receive, during the course of payments due under this Plan, a senior security interest, as of the Effective Date of the Plan in all of the assets of the Debtors including its interests in real properties as well as its ownership of real properties, subject to the rights of the Estate Manager, as established above, to review and decided if he or she wishes to abandon burdensome property(ies) under Section 553 of the Bankruptcy Code.

Disputed Claims-The Estate Manager shall object to claims as either filed or scheduled by the Debtors. Pending the conclusion of such objections, the Estate Manager shall establish a Disputed Claims Reserve where funds will be set aside from the distributions provided for to Class 2 creditors under this Plan. Attached hereto as Exhibit "__" is a true and correct copy of the claims' analysis prepared by the Debtors in these bankruptcy cases. |

**E.    Class of Interest Holders.**

As to James C. Gianulias, because he is an individual, he is the Interest

Holder as to those asset which he owns personally. As to Cameo Homes, Inc., James C.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

Gianulias is the interest holder in Cameo.    The following chart identifies the Plan's
treatment of Interest Holders:

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 3 | Debtor as to James C. Gianulias and as to Cameo Homes, Inc. | No | The confirmation of the Plan leaves the interests held by the Debtor unaffected. The rights of the Debtors, or Mesa Management or G Companies to manage the Debtors' properties or the Debtors' interests in property(ies) shall be evaluated within sixty(60) days after confirmation of the Plan by the Estate Manager. As of the Effective Date, however, no property will revest or be transferred to the Debtors or to the Estate Manager. The bankruptcy cases of the Debtors shall remain open until the obligations of the Estate Manager are fulfilled. If the bankruptcy cases of the Debtors are closed in order to avoid continuing U.S. Trustee Fees ( a decision that can be made by the Estate Manager), the Estate Manager's duties will remain the same after the bankruptcy cases are closed as they were beforehand. |

Notwithstanding any other provision of the Plan, no payments or Distributions shall
be made on account of any Disputed Claim until such Claim becomes an Allowed Claim,
and then only to the extent it becomes an Allowed Claim.    Any Proof of Claim filed which
differs from the Scheduled amount is deemed to be a Disputed Claim.

F.    **Means of Effectuating the Plan.**

1.    **Funding for the Plan.**

The Unsecured Creditor Fund will be created on the Effective Date and will be
funded by the following:

a.    Upon confirmation of the Plan, the Estate Manager will be
appointed.

b.    Upon confirmation of the Plan and before the Plan's Effective
Date, a promissory note shall be issued to the unsecured creditors in this case which
promissory note shall be in the amount of approximately $43,000,000.    The promissory
note's term shall be ten years, however, at the sole option of the Estate Manager,
prepayments upon the promissory note may be made at any time.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT 5

[VAS\GEN\523415.3 4/3/2009 (4:31 AM)]    - 31 -

92

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL.213.626.2311 • FAX 213.629.4520

1        c.    The promissory note described in subparagraph 'b', above,

2  shall be secured by all of the property of the estate in the Gianulias and Cameo

3  bankruptcies.    The lien securing payment of the Unsecured Creditor Promissory Note

4  shall be junior in priority only to those pre-existing, and prior recorded valid liens on the

5  assets of the Debtors. The Estate Manager will take all steps as are necessary in order

6  to perfect the interests of the Bankruptcy Estate in the assets described in this paragraph

7  and in this Plan.    Exhibit "2" to the Committee's Disclosure Statement sets forth

8  projections related to distributions and usage of funds relative to the Debtors' various

9  interests in real and personal property.

10        d.    The Estate Manager will be a person chosen by the

11  Committee.  The identity of the Estate Manager chosen by the Committee prior to the

12  hearing on the Committee's Disclosure Statement.

13        e.    As appropriate and after due consideration of issues of

14  taxation to the Bankruptcy Estates, the Estate Manager shall investigate and sell

15  properties owned by the Debtors in which the ownership is held in fee.  Such sales shall

16  be set for notice and an opportunity for hearing, and the said notice shall include, without

17  limitation, a complete summation of the tax impacts and implications, if any, of the

18  particular sale transaction.

19        f.    As appropriate and after due consideration of issues of

20  taxation to the Bankruptcy Estates, the Estate Manager shall investigate and sell

21  interests in real properties held by the Debtors.  Such sales shall be set for notice and an

22  opportunity for hearing, and the said notice shall include, without limitation, a complete

23  summation of the tax impacts and implications, if any, of the particular sale transaction.

24        g.    As appropriate and after due consideration of issues of

25  taxation to the Bankruptcy Estates, the Estate Manager shall investigate and determine

26  whether or not it is appropriate to refinance any of the properties owned in fee by the

27  Debtors or any of the properties in which the Debtors hold an interest and by virtue of

28

EXHIBIT 5

[VAS\GEN\523415.3 4/3/2009 (4:31 AM)]    - 32 -    93

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Debtors' position, may seek refinancing or other disposition of such properties as

2    necessary and appropriate.

3              All of the fees and expenses incurred by the Estate Manager, including but

4    not limited to the compensation of the Estate Manager and other professional fees and

5    expenses, shall be paid solely from the assets of the accumulated under the terms and

6    conditions of this Plan.  The Estate Manager need not obtain Bankruptcy Court approval

7    of such fees and expenses unless such fees and expenses are disputed by a party-in-

8    interest.  The Estate Manager shall give ten days (10) notice of the amount requested by

9    each professional he or she employs.  If a party objects to the amount requested in such

10   ten day notification, the party shall file a written objection with the Court and a copy

11   served upon the Estate Manager and the professional to whose fees and costs the

12   objection is being filed.  If the objection is to the compensation of the Estate Manager,

13   such objection(s) shall be served upon the Estate Manager and his or her counsel.  The

14   objections shall indicate what portion of the fee and cost request is the subject of the

15   objections and the amount therefore.  To the extent that such objection is to less than the

16   full amount requested in fees and costs, the Estate Manager is authorized to pay that

17   portion of the fees and costs requested to which no objections have been filed.  As to that

18   portion of the fees and costs to which an objection has been filed, the Estate Manager

19   will set the matter for hearing at the earliest time permitted by the Court's calendar.  This

20   shall be done in a way that will permit the professional to whom an objection has been

21   filed to prepare and file and reply and for the objecting party, at its option, to file a

22   response to the reply.

23              h.    Any recoveries from Avoiding Actions shall be deposited by

24   the Estate Manager into the Unsecured Creditor Fund to be distributed with other funds

25   gathered by the Estate Manager pursuant to the terms and conditions of this Plan.

26   **G.    Post-Confirmation Management.**

27              Upon the Effective Date, except for the assets to be placed in the Unsecured

28   Creditor Fund and managed by the Estate Manager in accordance with the terms of the

EXHIBIT 5

1 Plan, the Debtors shall remain the possession of their property and the management of

2 their affairs.

3     The Estate Manager shall take possession of the Unsecured Creditor Fund and

4 have exclusive right to investigate and prosecute any and all claims of the Estate,

5 including but not limited to any Avoidance Actions and any Post-Confirmation Estate

6 Claims and shall have exclusive authority to oversee the Disbursement of the Cash in the

7 Unsecured Creditor Fund pursuant to the terms of the Plan.

8     The Estate Manager shall have sole and absolute discretion over whether to

9 prosecute, settle or take action with respect to any and all claims of the Estate, including

10 but not limited to Avoidance Actions and the Post-Confirmation Estate Claims.  The

11 Estate Manager shall exercise his or her reasonable business judgment in determining

12 whether to prosecute, settle or take action regarding any and all claims of the Estate,

13 including but not limited to Avoidance Actions and the Post-Confirmation Estate Claims.

14     The Estate Manager may compromise or settle any all claims of the Estate,

15 including but not limited to Avoidance Actions and Post-Confirmation Estate Claims

16 without further notice, hearing or Court order.

17     The Estate Manager shall be responsible for all actions necessary to maintain and

18 maximize the affairs of the Unsecured Creditor Fund.  The duties of the Estate Manager

19 shall also include preparing and filing the post-confirmation status reports with the Office

20 of the United States Trustee and paying all post-confirmation quarterly fees of the Office

21 of the United States Trustee until the bankruptcy case is dismissed or a final decree has

22 been entered, whichever occurs first.

23     All obligations and duties of the Debtors in connection with any contracts between

24 G Companies or Mesa Management shall be assumed or rejected by the Estate Manager

25 on the Effective Date of the Plan.  To the extent that the obligations of G Companies

26 and/or Mesa Management were previously carried out by either of the Debtors or both of

27 them, such obligations shall be performed from and after the Effective Date by the Estate

28 Manager presuming that their agreements are assumed.  By the sixtieth day following

EXHIBIT 5

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Plan Confirmation, the Estate Manager shall decide whether to retain G Companies or

2    Mesa Management.

3        The Estate Manager has no prior relationship with the Debtors. The Estate

4    Manager shall be someone with extensive knowledge and experience in bankruptcy law

5    and the administration of bankruptcy assets. The compensation to be paid to the Estate

6    Manager shall be announced prior to the hearing on the Committee's Disclosure

7    Statement, at the same time as the Estate Manager is named.

8        **H.**    **Employment and Compensation.**

9        In carrying out his duties under the Plan, the Estate Manager shall use the

10   services of professionals he deems appropriate. Compensation of such professionals

11   shall take place pursuant to the procedures and terms and conditions set forth in this

12   Plan.

13       **I.**    **Post-Confirmation Estate Claims.**

14        The right to enforce, litigate, collect, and settle, on behalf of the Estate (at the

15   expense of the Estate), any and all Claims and causes of action which constitute property

16   of the Estate including, but not limited to, any Avoidance Actions, whether or not such

17   Claims or causes of action are the subject of litigation pending as of the Effective Date

18   (collectively, the "Post-Confirmation Estate Claims"), shall be vested solely in the Estate

19   Manager as of the Effective Date. From and after the Effective Date, the Estate Manager

20   shall have the sole right to enforce, file, prosecute, collect, or settle, any Post-

21   Confirmation Estate Claims.

22        Any litigation based upon Post-Confirmation Estate Claims will be filed no later

23   than two (2) years year after the Effective Date, or within any applicable limitations

24   period, or within such additional period of time as the Bankruptcy Court may allow upon

25   motion of the Estate Manager, after such notice as the Bankruptcy Court may deem

26   appropriate. In the event that litigation based upon any Post-Confirmation Estate Claim

27   is not timely commenced, such Post-Confirmation Estate Claim will be deemed forever

28   waived by the Estate and neither the Debtors, Estate Manager nor any other party-in-

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  interest will have the right to pursue the same; provided, however, that any such Post-
2  Confirmation Estate Claim, may be utilized as a defense against or offset to any Claim or
3  cause of action which may be brought against the Estate.

4      Notwithstanding the rights of the Estate Manager with respect to Post-
5  Confirmation Estate Claims, nothing in the Plan will require the Estate Manager to
6  prosecute or litigate any such matters, all of which may be decided by the Estate
7  Manager in his sole discretion.

8      THE COMMITTEE HAS NOT FULLY REVIEWED WHETHER POST-
9  CONFIRMATION ESTATE CLAIMS EXIST, INCLUDING, WITHOUT LIMITATION,
10  WHETHER OR NOT THERE ARE ANY AVOIDANCE ACTIONS WHICH MAY BE
11  BROUGHT AFTER THE EFFECTIVE DATE. THIS INVESTIGATION IS ONGOING
12  AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE, AS A RESULT,
13  CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE
14  PURSUANT TO THE TERMS OF THE PLAN, SPECIFICALLY ADVISED THAT,
15  NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR POST-
16  CONFIRMATION ESTATE CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET
17  FORTH IN THE PLAN OR THE DISCLOSURE STATEMENT, A POST-
18  CONFIRMATION ESTATE CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AT
19  ANY TIME, SUBJECT TO THE BAR DATE LIMITATIONS SET FORTH IN THE PLAN.

20      J.   **Objections to Claims.**

21      The right to litigate, resolve, and settle objections to Claims (at the expense of the
22  Estate), whether or not the subject of litigation as of the Effective Date, will be vested
23  solely in the Estate Manager as of the Effective Date. From and after the Effective Date,
24  the Estate Manager shall have the sole right to file, prosecute, litigate, and settle any
25  objections to Claims, whether or not any such objection is pending as of the Effective
26  Date.

27      Notwithstanding that the Estate Manager shall have the right to file, litigate,
28  prosecute, and settle objections to Claims on behalf of the Estate, nothing contained

EXHIBIT 5
[VAS\GEN\523415.3 4/3/2009 (4:31 AM)]    - 36 -    97

1 herein will be deemed to obligate the Estate Manager to take any such actions, all of

2 which will be determined in the Estate Manager's sole discretion.

3    Any Claims listed as Disputed in the Plan and Disclosure Statement and the

4 Exhibits attached thereto will be subject to claims objections proceedings.  **HOWEVER,**

5 **THE COMMITTEE HAS NOT FULLY REVIEWED THE CLAIMS OR DETERMINED**

6 **WHETHER OBJECTIONS TO CLAIMS EXIST.  THIS INVESTIGATION IS ONGOING**

7 **AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE.  CREDITORS**

8 **AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE PURSUANT TO THE**

9 **TERMS OF THE PLAN SPECIFICALLY ADVISED THAT, NOTWITHSTANDING THAT**

10 **THE EXISTENCE OF ANY PARTICULAR OBJECTION TO CLAIM MAY NOT BE**

11 **LISTED, DISCLOSED, OR SET FORTH IN THE PLAN OR DISCLOSURE**

12 **STATEMENT, AN OBJECTION TO CLAIM MAY BE BROUGHT AGAINST ANY**

13 **CLAIMANT AFTER THE EFFECTIVE DATE.**

14    **K.**  **Pending Disputed General Unsecured Claims as of the Petition Date.**

15    In the event that any objection to any General Unsecured Claim should be pending

16 as of the date on which a Distribution is owed to the holder of such General Unsecured

17 Claim, no Distribution will be made on account of such disputed General Unsecured

18 Claim until such Disputed Claim has been determined and allowed by a Final Order.  In

19 the event that a Disputed Claim is allowed by a Final Order, within five Business Days

20 after such Disputed Claim is allowed by such Final Order, such Allowed General

21 Unsecured Claim will be paid to the extent of the Distributions previously made on

22 account of Allowed General Unsecured Claims in the same Class.  Further Distributions,

23 if any, on account of such Allowed General Unsecured Claim will be paid directly to the

24 holder of such Allowed General Unsecured Claim, in an aggregate amount not to exceed

25 the amount of the General Unsecured Claim allowed by the Final Order.

26    **L.**  **Unclaimed Distributions.**

27    Distributions to holders of Allowed Claims will be made either:  (1) at the

28 addresses set forth in the Proof of Claim filed by the Creditor; or (2) at the address set

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT 5

98

1  forth in any written notice of address change delivered to the Debtor or the Estate

2  Manager after the date on which any related Proof of Claim was filed; or (3) at the

3  address reflected in the Schedules relating to the applicable Allowed Claim if no Proof of

4  Claim has been filed by the Creditor and neither the Debtor nor the Reorganized Debtor

5  has received a written notice of a change of address.

6      The Estate Manager shall not be required to perform any investigation or inquiry

7  as to the proper address for such Creditor if the address stated in any Proof of Claim filed

8  by the Creditor, written notice of change of address filed by the Creditor, or in the

9  Schedules is incorrect.

10      Any Unclaimed Distribution provided for under the Plan (which will include:

11  (1) checks which have been returned as undeliverable without a proper forwarding

12  address; (2) checks which were not mailed or delivered because of the absence of a

13  proper address to which to mail or deliver the same; or (3) checks which remain un-

14  negotiated for a period of ninety (90) days, will be retained and utilized by the Estate

15  Manager.

16      Following the earlier to occur of:  (1) two (2) years after a Distribution becomes an

17  Unclaimed Distribution, or (2) ninety (90) days after the making of the Final Distribution

18  under the Plan (collectively, the "Unclaimed Distribution Holding Period"), such

19  Unclaimed Distribution will become property of the Disbursement Fund, free and clear of

20  any restrictions thereon, and the holders of Allowed Claims otherwise entitled to such

21  Unclaimed Distributions will cease to be entitled thereto and their Claims based thereon

22  will be deemed discharged, waived, and forever barred.

23      Pursuant to Bankruptcy Code section 347, in the event that Unclaimed

24  Distributions remaining in the Disbursement Fund after five years from the date of entry

25  of the Confirmation Order are less than $5,000, such Unclaimed Distributions shall revert

26  to the Estate Manager as additional compensation for the Estate Manager.  In the event

27  that Unclaimed Distributions remaining in the Disbursement Fund after five years from

28  the date of entry of the Confirmation Order are $5,001 or more, after payment of all costs

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT 5

1  of administration of the Plan including payment of Allowed Administrative Claims, Allowed

2  Priority Claims and/or Allowed Secured Claims, such Unclaimed Distributions shall be

3  distributed on a pro rata basis to Allowed General Unsecured Claims.

4

5  **M.      Other Provisions of the Plan.**

6          **1.      Executory Contracts and Unexpired Leases.**

7          The Committee is analyzing which executory contracts should be assumed and

8  which should be rejected or which should be assumed and assigned.  The decision

9  whether to assume or reject executory contracts shall be made by the Estate Manager by

10  the Effective Date of the Plan.  All such contracts not expressly assumed, rejected or

11  assumed and assigned shall be deemed rejected as of the Effective Date of the Plan.

12          **2.      Changes in Rates Subject to Regulatory Commission**

13                 **Approval.**

14          The Debtors are not subject to governmental regulatory commission approval of

15  rates.  The Debtors are not regulated by a governmental commission.

16          **3.      Retention of Jurisdiction.**

17          Until this Plan has been fully consummated, the Bankruptcy Court shall retain

18  jurisdiction to the extent provided by law, including, but not limited to, the following

19  purposes:

20                 (a)      The classification, allowance, disallowance, or estimation of

21  the Claim of any Claimant and the re-examination of Claims which have been allowed for

22  the purposes of determining acceptance of the Plan at the time of the Confirmation

23  Hearing and the determination of such objections as may be filed to Claims.  The failure

24  by the Debtors to object to or to examine any Claim for the purpose of determining

25  acceptance of this Plan shall not be deemed to be a waiver of the right of Debtors or the

26  Estate Manager to object to or to re-examine the Claim, in whole or in part, at a later

27  date.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT 5

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    (b)    Except for as otherwise provided herein, the determination of

2    all questions and disputes regarding title to the assets of Debtors, the Estate, or

3    Reorganized Debtors and the determination of all causes of action, controversies,

4    disputes, or conflicts, whether or not subject to any action pending as of the Confirmation

5    Date, in which the Debtors are a party.

6    (c)    The correction of any defect, the curing of any omission, or

7    the reconciliation of any inconsistency in the Plan or in the Confirmation Order as may be

8    necessary to carry out the purposes and intent of the Plan.

9    (d)    The resolution of any motions, adversary proceedings,

10    contested or litigated matters and any other matters and grant or deny any applications

11    involving the Debtors that may be pending on the Effective Date.

12    (e)    The modification of the Plan after confirmation pursuant to the

13    Bankruptcy Code and the Bankruptcy Rules, or if in the best interests of the Estate and

14    the Creditors, modification of this Plan even after the Plan has been substantially

15    consummated.

16    (f)    The enforcement and interpretation of the terms and

17    conditions of the Plan or the Confirmation Order, and the determination of such matters,

18    and the making of such orders consistent with the Plan as may be necessary or desirable

19    to effectuate the provisions of the Plan.

20    7.    The determination, either before or after the closing of this

21    bankruptcy case, of any Claims concerning state, local, and federal taxes pursuant to

22    section 346, 505, 525, or 1146 of the Bankruptcy Code or other applicable law, and the

23    Debtors', or the Estate's entitlement, if any, to tax attributes which may have been

24    property of the Estate, either before or after the closing of this bankruptcy case.

25    8.    The shortening or extending, for cause, of the time fixed for doing

26    any act or thing under the Plan, on such notice, if any, as the Bankruptcy Court shall

27    determine to be appropriate.

28

EXHIBIT 5

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

9.      The entry of any order, including, without limitation, any injunction, to enforce the title, rights, and powers of the Debtors and such limitations, restrictions, terms, and conditions of such title, rights, and powers as the Bankruptcy Court may deem necessary.

10.      The determination of any disputes arising under or relating to any order entered by the Bankruptcy Court in the bankruptcy case.

11.      The determination of the validity, extent, or priority of any liens and security interests against property of Debtors, the Reorganized Debtors, or the Estate.

12.      The determination of all actions and proceedings which relate to pre-confirmation matters affecting the Debtors or the Estate whether such action or proceeding is brought before or after the Effective Date.

13.      The liquidation or allowance of any Claim as well as any objection or dispute concerning any Claim of the Estate.

14.      The determination of all questions and disputes regarding collection of assets of Debtors or the Estate as of the Confirmation Date.

15.      The entry of an order concluding and terminating the bankruptcy case.

16.      Such other matters to the extent provided by law.

**N.      EFFECT OF CONFIRMATION OF THE PLAN**

1.      **Discharge.**

Unless after notice and a hearing, or the Court orders otherwise for cause, the Debtors shall not receive a discharge of any debt provided for in the Plan until the Court specifically grants the Debtors a discharge on completion of all payments under the Plan. To the extent specified in Bankruptcy Code section 1141, the Debtors shall be discharged of liability for payment of debts incurred before confirmation of the Plan. However, the discharge will not discharge any liability imposed by the Plan.

EXHIBIT 5

102

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

2.    **Exculpation.**

To the extent permitted under Bankruptcy Code section 1125(e), upon the occurrence of the Effective Date, the Committee, and their agents and professionals (including counsel to the Committee) shall be deemed to have no liability for any act or omission in connection with, or arising out of, the pursuit of approval of the Disclosure Statement, the solicitation of votes for confirmation of the Plan, for violation of any applicable law, rule or regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance, sale, or purchase of securities offered or sold under the Plan. Notwithstanding the foregoing, nothing herein shall release the Committee from their duties and obligations under the Plan.

O.    **Modification of the Plan.**

The Plan may be modified at any time after Confirmation but before the completion of payments under the Plan, whether or not the Plan has been substantially consummated, upon request of the Committee, the United States Trustee, or the holder of an allowed unsecured claim, to—

(1)    increase or reduce the amount of payments on claims of a particular class provided for by the Plan;

(2)    extend or reduce the time period for such payments; or

(3)    alter the amount of the distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of such claim made other than under the plan.

O.    **Post-Confirmation Status Reports.**

Within 120 days of the entry of the order confirming the Plan, the Estate Manager shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on

EXHIBIT 5
103

1  the United States Trustee, the twenty largest unsecured Creditors, and those parties who

2  have requested special notice.  Further status reports shall be filed every 120 days and

3  served on the same entities.

4      **P.**    **Post-Confirmation Conversion/Dismissal.**

5      A Creditor or party in interest may bring a motion to convert or dismiss the case

6  under section 1112(b), after the Plan is confirmed, if there is a default in performing the

7  Plan.  If the Bankruptcy Court orders the case converted to chapter 7 after the Plan is

8  confirmed, then all property that had been property of the chapter 11 Estate shall become

9  property of the chapter 7 estate.   The automatic stay will be reimposed upon this

10  property, but only to the extent that relief from stay was not previously authorized by the

11  Court during this case.

12      The order confirming the Plan may also be revoked under very limited

13  circumstances.  The Court may revoke the order if the order of confirmation was procured

14  by fraud and if a party in interest brings an adversary proceeding to revoke confirmation

15  within 180 days after the entry of the order of confirmation.

16      **Q.**    **Final Decree.**

17      Once the Estate has been fully administered as referred to in Federal Rule of

18  Bankruptcy Procedure 3022, the Debtors, or such other party as the Court shall

19  designate in the Plan confirmation order, shall file a motion with the Bankruptcy Court to

20  obtain a final decree to close the case.

21      **Joint Official Committee of Unsecured Creditors of the Consolidated Bankruptcy Estates of James C.**

22  DATED:  December  , 2008  **Gianulias and Cameo Homes, Inc. ("Joint Committee")**

23

24  By:_____
    Lance Jurich
    Chairperson of the Joint Committee

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | **Presented by:**

2 | **SULMEYER**KUPETZ
A Professional Corporation

3

4

By: _____

5 | Victor A. Sahn
Elissa Miller

6 | Daniel Lev
Counsel for the Joint Committee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EXHIBIT 5

105

# EXHIBIT 6

EXHIBIT 6
106

eloitte - Preliminary Valuation Summary
xcludes Prepayment Fees & Penalties)
raft Summary Analysis

| roperty | Preliminary Property Value (Rounded) | Total Secured Bank Debt | Fair Market Equity (Net Asset Value) | Adjusted Fair Market Equity Subtotal (Net Asset Value) | Combined JCG Equity Value | Combined Discount for Lack of Control & Lack of Marketability ($) | Combined Discount for Lack of Control & Lack of Marketability (%) | JCG Combined Equity Value (from Chart 7) |
|---|---|---|---|---|---|---|---|---|
| ulti-Family Subtotal | 390,300,000 | 254,236,799 | 137,228,156 | 137,228,156 | 62,651,874 | 14,534,748 | -23.2% | 48,117,126 |
| commercial Subtotal | 139,600,000 | 99,333,594 | 41,989,183 | 41,989,188 | 12,414,132 | 2,266,470 | -18.2% | 10,140,662 |
| ixed Use Subtotal | 4,000,000 | | 4,000,000 | 4,000,000 | 1,933,320 | 596,662 | -44.8% | 736,659 |
| rivate Residence Subtotal | 5,700,000 | 8,495,944 | 646,291 | 646,291 | 646,291 | | 0.0% | 648,291 |
| GSL LLC (Kona Plantation) | 16,600,000 | 15,500,000 | 1,800,000 | 1,800,000 | 500,000 | 171,000 | -19.0% | 723,000 |
| apa Golf Associates, LLC (Chardonnay) | 12,500,000 | 13,451,000 | | | | | 0.0% | |
| ubleased Subtotal | 29,100,000 | 28,451,000 | 1,800,000 | 1,800,000 | 500,000 | 171,000 | -15.0% | 729,000 |
| urleta 492 (JV) | 59,100,000 | 80,020,000 | | | | | 0.0% | |
| urleta 144 (JV) | 13,400,000 | 25,850,000 | | | | | 0.0% | |
| ther Subtotal | 72,500,000 | 105,850,000 | | | | | 0.0% | |
| rand Totals | $ 632,400,000 | $ 486,050,477 | $ 185,665,696 | $ 185,617,345 | $ 77,239,326 | $ 17,566,879 | -22.7% | $ 69,732,247 |
| | | | | | | | Rounded | $ 60,000,000 |

EXHIBIT 6

107

# EXHIBIT 7

EXHIBIT 7
108

James Gianulias / Cameo Homes
Cash Flow Projection

|  |  | January - April | | | 5 - Year Projection Period | | | | January - April |
|---|---|---|---|---|---|---|---|---|---|
|  | 2009 | 2010 | May - Dec 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
| River Knolls | $ 43,015 | $ 25,752 | $ 51,504 | $ 198,374 | $ 190,284 | $ 141,245 | $ 165,017 | $ 63,174 |
| Parkewood Village | 343,204 | 158,515 | 317,031 | 491,868 | 502,537 | 525,110 | 547,773 | 150,375 |
| Fountain Valley Senior Housing | 1,136,450 | 389,819 | 779,637 | 1,117,044 | 1,247,979 | 1,360,661 | 1,470,716 | 528,052 |
| Park Glen | 626,748 | 222,037 | 444,074 | 678,262 | 647,418 | 743,511 | 787,052 | 277,307 |
| Park Mesa | 750,878 | 252,306 | 504,612 | 762,674 | 784,218 | 825,688 | 867,289 | 303,386 |
| Piccadilly Square | 331,016 | 77,105 | 154,211 | 331,695 | 338,976 | 355,245 | 371,529 | 129,436 |
| Placentia 422 | 343,174 | 121,359 | 242,719 | 376,367 | 431,218 | 536,849 | 644,820 | 262,049 |
| Villa Buena | 346,784 | 116,114 | 232,228 | 349,930 | 323,133 | 387,228 | 412,501 | 146,182 |
| Silverhawk Apartments [1] |  |  |  |  |  |  |  |  |
| ECP - Country Gardens | 10,653 | 2,616 | 5,231 | 6,382 | 6,284 | 7,621 | 9,000 | 3,474 |
| ECP - Country Estates | 24,027 | 7,269 | 14,539 | 20,816 | 21,073 | 22,644 | 24,263 | 8,644 |
| ECP - Grenadier Village | 173,235 | 51,155 | 102,310 | 144,275 | 145,868 | 158,792 | 172,113 | 61,948 |
| ECP - Woodwind Gardens | 71,802 | 20,852 | 41,703 | 57,973 | 58,145 | 63,314 | 68,642 | 24,712 |
| Murrieta 492 [2] | - | - | - | - | - | - | - | - |
| Murrieta 144 [2] | - | - | - | - | - | - | - | - |
| Multi-Family Cash Flow [3],[4],[5] | $ 4,200,985 | $ 1,444,900 | $ 2,889,800 | $ 4,533,579 | $ 4,697,133 | $ 5,127,908 | $ 5,540,716 | $ 1,988,739 |
| Silverhawk Center [1] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Coast Business Center | 153,512 | 33,068 | 66,135 | 118,119 | 169,586 | 198,637 | 200,923 | 69,157 |
| Crown Building | 64,726 | 18,016 | 36,033 | 39,398 | 37,473 | 39,034 | 66,817 | 27,822 |
| Dana Center | 109,132 | 23,369 | 46,737 | (59,846) | 39,125 | 101,083 | 102,517 | 34,664 |
| Greenhaven Plaza | 9,494 | (7,190) | (14,379) | 38,564 | 48,200 | 44,211 | 30,573 | 7,917 |
| Grass Valley Shopping Center | 430,542 | 197,302 | 394,605 | 701,237 | 280,284 | 437,742 | 603,091 | 250,114 |
| Lahaina Cannery Mall | (73,799) | 17,324 | 34,648 | 113,644 | 107,812 | 92,560 | 101,252 | 44,439 |
| Lucas / Gianulias | 93,640 | 25,584 | 51,168 | 104,058 | 110,231 | 60,572 | 125,588 | 40,637 |
| Sunrise Village | 179,057 | 60,097 | 120,195 | 183,861 | 187,853 | 197,572 | 207,588 | 72,637 |
| Commercial Cash Flow [4],[5] | $ 966,303 | $ 367,571 | $ 735,141 | $ 1,237,036 | $ 980,564 | $ 1,169,411 | $ 1,438,349 | $ 547,086 |
| Social Security, Interest Income, etc. | $ 30,276 | $ 10,092 | $ 20,184 | $ 30,276 | $ 30,276 | $ 30,276 | $ 30,276 | $ 10,092 |
| Restaurant Dividends [7] | - | - | - | - | - | - | - | - |
| Asset Sales (net of tax) | - | - | - | - | - | - | - | - |
| Tax Refund | 800,000 | - | - | - | - | - | - | - |
| Total Other Income | $ 830,276 | $ 10,092 | $ 20,184 | $ 30,276 | $ 30,276 | $ 30,276 | $ 30,276 | $ 10,092 |
| Raw Land Carrying Costs [8] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Mesa Mgmt. (Net of Mgmt. Income) | $ 2,000 | $ 687 | $ 1,373 | $ 2,122 | $ 2,185 | $ 2,251 | $ 2,319 | $ 796 |
| Cameo Homes [9] | (411,421) |  |  |  |  |  |  |  |
| G Companies [10] | (813,876) | (175,269) | (350,539) | (541,582) | (557,830) | (574,565) | (591,802) | (203,185) |
| J. Gianulias Business/Personal Exp. [11] | (339,820) | (117,340) | (234,680) | (384,586) | (377,628) | (390,859) | (404,590) | (139,578) |
| Cameo Homes Taxes - Federal [12] | - | (6,988) | (20,966) | (28,185) | (27,854) | (31,210) | (34,041) | (9,130) |
| Cameo Homes Taxes - State [12] | - | (64,392) | (6,971) | (9,372) | (9,261) | (10,377) | (11,319) | (3,036) |
| J. Gianulias Taxes - Federal [12] | - | (11,191) | (33,574) | (48,730) | (54,456) | (63,906) | (76,635) | (21,567) |
| J. Gianulias Taxes - State [12] | - | (2,415) | (7,246) | (10,441) | (11,924) | (13,876) | (17,101) | (5,028) |
| Budgeted Expenses | $ (1,563,117) | $ (376,910) | $ (652,602) | $ (1,000,774) | $ (1,036,668) | $ (1,082,541) | $ (1,133,169) | $ (380,727) |
| Cash Flow Available for Plan Pmts. | $ 4,434,447 | $ 1,445,653 | $ 2,992,523 | $ 4,800,117 | $ 4,671,305 | $ 5,245,053 | $ 5,876,172 | $ 2,165,189 |
| Cumulative Cash Flow Available for Plan Payments |  |  | $ 2,992,523 | $ 7,792,640 | $ 12,463,945 | $ 17,708,998 | $ 23,585,170 | $ 25,750,359 |

| Plan Payments | Int. % | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Admin Claims/Professional Fees [13] |  | (4,009,308) |  | (2,526,007) |  |  |  |  |  |
| Sec 1A: Pacific Merc. (Cambridge) | 8.5% |  |  | (39,353) | (59,029) | (59,029) | (59,029) | (59,029) | (19,676) |
| Sec 1B: WFB (Coconut Grove) [14] |  |  |  | (217,348) | (326,022) | (326,022) | (326,022) | (326,022) | (108,674) |
| Sec 1B: WFB (Fasching Haus) [14] |  |  |  | (14,789) | (22,183) | (22,183) | (22,183) | (22,183) | (7,394) |
| Sec 1F: Countrywide (Santa Rosa) [14] |  |  |  | (24,230) | (36,346) | (36,346) | (36,346) | (36,345) | (12,115) |
| Sec 1C: National Bank (Old Greenwood) [16] |  |  |  |  |  |  |  |  |  |
| Sec 1G: JP Morgan Chase (48th & Adams) [15] |  |  |  |  |  |  |  |  |  |
| Sec 1D: Robbins ($4.5 million) [16] | 7.5% |  |  | (1,600,000) | (2,300,000) | (1,506,221) |  |  |  |
| Sec 1H: Other Secured |  |  |  |  |  |  |  |  |  |
| Class 2: Priority Claims [17] |  |  |  | (83,572) |  |  |  |  |  |
| Class 3: General Unsecured [18] | 10% |  |  | (894,807) | (2,326,498) | (3,042,343) | (5,189,880) | (5,726,764) | (715,846) |
| Class 4: Inter-Debtor |  |  |  |  |  |  |  |  |  |
| Class 5: Subordinated Claims |  |  |  |  |  |  |  |  |  |
| Class 6: Equity Interest in Cameo |  |  |  |  |  |  |  |  |  |
| Total Plan Payments |  | $ (4,009,308) | $ - | $ (5,400,106) | $ (5,070,078) | $ (4,992,145) | $ (5,633,460) | $ (6,170,344) | $ (863,706) |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Net Cash Flow (Excludes 2nd Res. Pmts.) | $ 425,139 | $ 1,445,653 | $ (2,151,216) | $ 114,590 | $ .63,711 | $ (3,856) | $ 90,379 | $ 1,429,667 |
| Beginning Cash | 696,797 | 1,121,936 | 2,567,599 | '416,373 | 530,963 | 594,674 | 590,818 | 681,197 |
| Ending Cash | $ 1,121,936 | $ 2,567,589 | $ 416,373 | $ 530,963 | $ 594,674 | $ 590,818 | $ 681,197 | $ 2,110,864 |

EXHIBIT 7

109

James Gianulias / Cameo Homes
Cash Flow Projection

Notes

[1] Removed assuming property will be foreclosed in 2009 due to the inability to service debt.

[2] Due to the priority distribution of cash flow to APW per the Amended and Restated Partnership Agreements for these properties, Jim Gianulias and Cameo Homes are not projected to receive any distributions over the forecast period.

[3] With the exception of Murrieta 492, Murrieta 144 and Silverhawk Apartments, projections assume flat rents in 2010, rent growth of 1.0% in 2011, growth of 2.0% in 2012, and 3.0% growth per annum thereafter and stabilized occupancy of 95% in years 2010 and beyond. Expense growth is projected at 3.0% per annum, and property taxes are assumed to grow at 3.0% for the East Coast Properties, and 2.0% for all other properties. Management fees are 5.0% of rental income for all properties except the East Coast Properties which are set at 4.0%. Additionally, all properties incorporate a replacement reserve per door based upon the Korpacz average which is grown at 3.0% per annum.

[4] Because the company has not prepared a capital budget for known major capital projects past 2012, multi-family projections do not reflect any known capital projects/ expenditures beyond 2012 (besides an annual replacement reserve estimate). Similarly, East Coast Properties contain no known capital expenditures over the projection.

[5] Properties with notes maturing during the projection period are assumed to refinance to keep existing terms. Refinance costs have not been assumed.

[6] Commercial property cash flow has been projected with the use of a modeling software which incorporates lease terms for each property and tenant. Market rent growth is based upon market research reports relevant for each commercial property market.

[7] Due to the current state of the economy, and minimal and uncertain distributions in prior periods, no distributions are assumed during the projection period.

[8] Assumes all raw land has or will be foreclosed in 2009, with the exception of Cambridge Square for which the carrying costs are tentatively assumed to be funded outside of the estate.

[9] Per Management's 2009 budget. Includes D. Gianulias' compensation/benefits and miscellaneous business expenses. Beginning in 2010, the forecast assumes D. Gianulias' compensation will terminate, and miscellaneous business expenses will be absorbed in the budget for G Companies.

[10] Per Management's 2009 budget. Expenses reduced after plan confirmation to reflect further cost cutting measures the Company plans to implement by 2010. 2010 budget includes full compensation for J. McFadden and 2 full-time support staff, as well as an allocation of a few other support staff and business expenses (lease, IT, etc.).

[11] Represents direct expenses for items such as trade publications, membership dues, primary residence utilities & homeowner association fees, business meals, insurance, medical bills, personal expenses, and primary residence mortgage.

[12] Taxes estimates per Haskell & White analysis.

[13] A portion of professional fees have been forecast to be paid in 2010 due to holdback provisions ordered by the court.

[14] Payments to these secured creditors do not impact cash balances available for payment to other secured creditors or unsecured creditors. Payments are to be made out of J. Gianulias personal income or from potential 3rd party investors.

[15] The Debtor's plan assumes the rights and remedies to which the creditor is entitled shall remain unaltered and it is anticipated the property will be foreclosed.

[16] Assumes note balance of $4.9 million. Secured principal payments have been modeled to minimize interest paid, while maintaining sufficient cash balance for operations and other plan payments.

[17] Priority claims are comprised of payments to the State of Hawaii, BMC group, Pension Benefit Guaranty Corporation and the Internal Revenue Service.

[18] Plan payments to unsecured creditors includes a dividend for those creditors harmed through the substantive consolidation of the Debtors.

EXHIBIT 7

110

James C. Gianulias & Cameo Homes
Summary of Creditor Recovery by Class and Liquidation Scenario (Consolidated vs. Separate Estates)

**Secured Creditors**

| | CONSOLIDATED JCG & CAMEO ESTATES | | | | SEPARATE JCG & CAMEO ESTATES | | | | VARIANCE | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Secured $ Recovery | Unsecured $ Recovery | Total $ Recovery | Implied % Recovery | Secured $ Recovery | Unsecured $ Recovery | Total $ Recovery | Implied % Recovery | Total $ Recovery | Implied % Recovery |
| Secured 1A: Pacific-Mercantile (Cambridge) | $ 543,066 | $ 63,431 | $ 606,497 | 20.0% | $ 543,066 | $ 59,323 | $ 602,389 | 20.0% | $ (4,107) | -0.1% |
| Secured 1B: Wells Fargo (Coconut Grove) | 3,714,500 | 7,547 | 3,722,047 | 92.9% | 3,714,500 | 7,058 | 3,721,558 | 92.9% | (489) | 0.0% |
| Secured 1C: National Bank of AZ (Old Greenwood) | 430,100 | 1,989 | 432,089 | 85.3% | 430,100 | 1,841 | 431,941 | 85.3% | (127) | 0.0% |
| Secured 1F: Countrywide (Santa Rosa) | 472,500 | - | 472,500 | 100.0% | 472,500 | - | 472,500 | 100.0% | - | 0.0% |
| Secured 1G: JP Morgan Chase (48th & Adams) | 383,180 | 6,565 | 389,745 | 61.1% | 383,180 | 6,140 | 389,320 | 61.0% | (425) | -0.1% |
| Secured 1B: Wells Fargo (Flushing Haus) | 316,770 | - | 316,770 | 100.0% | 316,770 | - | 316,770 | 100.0% | - | 0.0% |
| Secured 1D: Robbins | 4,935,000 | - | 4,935,000 | 100.0% | 4,935,000 | - | 4,935,000 | 100.0% | - | 0.0% |
| **Total Secured Recovery** | $ 10,795,116 | $ 79,531 | $ 10,874,627 | | $ 10,795,116 | $ 74,363 | $ 10,869,478 | | $ (5,148) | |

**Priority Creditors**

| | Priority $ Recovery | | Total $ Recovery | Implied % Recovery | Priority $ Recovery | | Total $ Recovery | Implied % Recovery | Total $ Recovery | Implied % Recovery |
|---|---|---|---|---|---|---|---|---|---|---|
| Priority Claims | $ 83,572 | - | $ 83,572 | 100.0% | $ 83,572 | - | $ 83,572 | 100.0% | $ - | 0.0% |

**Unsecured Creditors**

| | Secured $ Recovery | Unsecured $ Recovery | Total $ Recovery | Implied % Recovery | Secured $ Recovery | Unsecured $ Recovery | Total $ Recovery | Implied % Recovery | Total $ Recovery | Implied % Recovery |
|---|---|---|---|---|---|---|---|---|---|---|---|
| General Unsecured Creditors - Cameo Homes | $ - | 518,382 | 518,382 | 2.6% | $ - | 562,768 | 562,768 | 2.6% | $ 44,385 | 0.2% |
| General Unsecured Creditors - James Gianulias | - | 388,937 | 388,937 | 3.1% | - | 373,105 | 373,105 | 2.9% | (25,832) | -0.2% |
| General Unsecured Creditors - Dual Guarantees | - | 5,097,519 | 5,097,519 | 5.1% | - | 5,084,114 | 5,084,114 | 5.1% | (13,405) | 0.0% |
| **Total Unsecured Recovery** | $ - | 6,014,838 | 6,014,838 | | $ - | 6,019,986 | 6,019,986 | | $ 5,148 | |

EXHIBIT 7

111

James C. Gianulias & Cameo Homes - Consolidated Estate Liquidation
Liquidation Analysis

| | CONSOLIDATED | |
|---|---|---|
| PROCEEDS AVAILABLE FROM LIQUIDATION OF ASSETS | Liquidation Values, Net | Liquidation Values, Gross |
| Multi-Family Properties [1] | $ 9,791,632 | $ 9,791,632 |
| Commercial Properties (Office & Retail) | 2,807,932 | 2,807,932 |
| Land Parcels [2] | 543,066 | 543,066 |
| Businesses [3] | 943,658 | 943,658 |
| Private Residences [4] | 162,191 | 6,197,350 |
| Investments / Other [5] | 1,123,753 | 1,123,753 |
| Personal Property [6] | - | 200,000 |
| Cash on Hand at Liquidation Commencement [7] | - | 542,000 |
| Tax Liability Incurred from Liquidation of Assets [8] | (2,770,745) | (2,770,745) |
| Total Proceeds from Assets | $ 15,372,233 | $ 19,378,647 |

| ESTIMATED ALLOCATION OF PROCEEDS | Original Claim Amount | Estimated Claims | Estimated $ Recovery | Implied % Recovery |
|---|---|---|---|---|
| I. Administrative Expenses | | | | |
| Trustee Fees [9] | | $ 671,472 | $ 671,472 | 100.0% |
| Wind-down Income [10] | | (2,598,782) | (2,598,782) | N/A |
| Wind-down Costs [11] | | 1,247,921 | 1,247,921 | 100.0% |
| Professional Fees [12] | | 3,085,000 | 3,085,000 | 100.0% |
| Total Administrative Expenses | | 2,405,611 | 2,405,611 | 100.0% |
| | | | | |
| Proceeds Available After Administrative Expenses | | $ 16,973,037 | | |

| | Original Claim Amount | Estimated Claims | Estimated $ Recovery | Implied % Recovery |
|---|---|---|---|---|
| II. Secured Claims [13] | | | | |
| Secured 1A: Pacific Mercantile (Cambridge) | 3,007,750 | 543,066 | 543,066 | 100.0% |
| Secured 1B: Wells Fargo (Coconut Grove) | 4,007,735 | 3,714,500 | 3,714,500 | 100.0% |
| Secured 1C: National Bank of AZ (Old Greenwood) | 506,500 | 430,100 | 430,100 | 100.0% |
| Secured 1F: Countrywide (Santa Rosa) | 472,500 | 472,500 | 472,500 | 100.0% |
| Secured 1G: JP Morgan Chase (48th & Adams) | 638,275 | 383,180 | 383,180 | 100.0% |
| Secured 1B: Wells Fargo (Faushing Haus) | 316,770 | 316,770 | 316,770 | 100.0% |
| Secured 1D: Robbins | 4,935,000 | 4,935,000 | 4,935,000 | 100.0% |
| | 13,884,530 | 10,795,116 | 10,795,116 | 100.0% |
| | | | | |
| Proceeds Available After Secured Claims | | $ 6,177,921 | | |
| | | | | |
| III. Priority Claims [14] | | 83,572 | 83,572 | 100.0% |
| | | | | |
| Proceeds Available After Priority Claims | | $ 6,094,349 | | |
| | | | | |
| IV. General Unsecured Claims | | | | |
| General Unsecured Creditors - Cameo Homes | | 20,142,491 | 518,382 | 2.6% |
| General Unsecured Creditors - James Gianulias | | 15,501,267 | 398,937 | 2.6% |
| General Unsecured Creditors - Dual Guarantees | | 198,071,384 | 5,097,519 | 2.6% |
| Transferred Undersecured Claims - Pacific Mercantile | | 2,464,684 | 63,431 | 2.6% |
| Transferred Undersecured Claims - Wells Fargo (Coconut Grove) | | 293,235 | 7,547 | 2.6% |
| Transferred Undersecured Claims - National Bank of AZ (Old Greenwood) | | 76,500 | 1,969 | 2.6% |
| Transferred Undersecured Claims - Countrywide (Santa Rosa) | | - | - | 0.0% |
| Transferred Undersecured Claims - JP Morgan Chase (48th & Adams) | | 255,095 | 6,565 | 2.6% |
| Transferred Undersecured Claims - Wells Fargo (Faushing Haus) | | - | - | 0.0% |
| Other | | - | - | 0.0% |
| | | 236,804,656 | 6,094,349 | 2.6% |
| | | | | |
| Proceeds Available After General Unsecured Claims | | $ - | | |

EXHIBIT 7

112

James C. Gianulias & Cameo Homes – Consolidated Estate Liquidation
Liquidation Analysis

**Notes:**

[1]  Includes Murrieta 492 and Murrieta 144 ownership interests.

[2]  Assumes all raw land parcels with the exception of Cambridge Square Partners will be foreclosed upon.

[3]  Represents ownership interests in Napa Wine Group (Levendi) and LAGI.

[4]  Estimated proceeds for private residences reflects the gross asset value for purposes of calculating secured claims (excluding Atlantis Cove), less disposition costs and chapter 7 discounts.

[5]  Represents investments and automobiles.

[6]  Personal property includes furniture, collections and other personal property.

[7]  Estimated cash on hand at the end of June 2009.

[8]  Tax liability based upon analysis by Haskell & White.

[9]  Calculation based upon the formula outlined by the United States Office of the Trustee.

[10]  Represents an estimate of 50% of 2009 income (assumes mid-year convention for the sale of assets).

[11]  Represents an estimate of wind down costs based upon 2009 budgeted expenses for Mesa Management, G Companies, Cameo Homes, and James C. Gianulias.

[12]  Represents an estimate of $1,285,000 for professional fees assumed to be accrued as of start of liquidation at the end of June 2009, an additional $200,000 per month for the remainder of 2009, and $100,000 per month of professional fees for the first 6 months of 2010 to be incurred during the wind down of the estate.

[13]  Secured claims are limited to the gross value of collateral less applicable asset disposition costs and chapter 7 liquidation discounts.  The difference between the original claim and the secured portion is re-classified and treated as an unsecured claim.

[14]  Priority claims are comprised of payments to BMC group, State of Hawaii and the Internal Revenue Service.

EXHIBIT 7

113

James C. Gianulias & Cameo Homes – Separate Estate Liquidations
Liquidation Analysis

| | CAMEO HOMES | | | | JAMES C. GIANULIAS | | | | | COMBINED | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PROCEEDS AVAILABLE FROM LIQUIDATION OF ASSETS | Liquidation Values, Gross | Liquidation Values, Net | Estimated $ Recovery | Implied % Recovery | | Liquidation Values, Gross | Liquidation Values, Net | Estimated $ Recovery | Implied % Recovery | | Liquidation Values, Gross | Liquidation Values, Net | Estimated $ Recovery | Implied % Recovery |
| Multi-Family Properties [1] | $ 5,421,543 | $ 5,421,543 | | | | $ 4,370,090 | $ 4,370,090 | | | | $ 9,791,632 | $ 9,791,632 | | 100.0% |
| Commercial Properties (Office & Retail) | 890,835 | 890,835 | | | | 1,917,097 | 1,917,097 | | | | 2,807,932 | 2,807,932 | | 100.0% |
| Land Parcels [2] | | | | | | 543,066 | 543,066 | | | | 543,066 | 543,066 | | 100.0% |
| Businesses [3] | | | | | | 943,658 | 943,658 | | | | 943,658 | 943,658 | | 100.0% |
| Private Residences [4] | | | | | | 6,167,050 | 162,101 | | | | 6,167,050 | 162,101 | | 100.0% |
| Investments / Other [5] | | | | | | 1,123,753 | 1,123,753 | | | | 1,123,753 | 1,123,753 | | 100.0% |
| Personal Property [6] | | | | | | 200,000 | | | | | 200,000 | | | |
| Cash on Hand at Liquidation Commencement [7] | 162,002 | | | | | 542,000 | | | | | 542,000 | | | |
| Inter-Debtor Claims | | | | | | 281,006 | | | | | 281,006 | | | |
| Tax Liability Incurred from Liquidation of Assets [8] | (1,949,422) | | | | | (651,523) | | | | | (2,770,745) | | | |
| **Total Proceeds from Assets** | 4,524,956 | 6,312,378 | | | | 15,134,697 | 9,059,855 | | | | 19,689,653 | 15,372,233 | | |

ESTIMATED ALLOCATION OF PROCEEDS

| | Estimated Claims | Estimated $ Recovery | Implied % Recovery | | Estimated Claims | Estimated $ Recovery | Implied % Recovery | | Estimated Claims | Estimated $ Recovery | Implied % Recovery |
|---|---|---|---|---|---|---|---|---|---|---|---|
| I. Administrative Expenses | | | | | | | | | | | |
| Trustee Fees [9] | 154,570 | 154,570 | 100.0% | | 516,902 | 516,902 | 100.0% | | 671,472 | 671,472 | 100.0% |
| Wind-down Income [10] | (1,075,016) | (1,075,016) | N/A | | (1,523,765) | (1,523,765) | N/A | | (2,598,782) | (2,598,782) | N/A |
| Wind-down Costs [11] | 519,135 | 519,135 | 100.0% | | 728,786 | 728,786 | 100.0% | | 1,247,921 | 1,247,921 | 100.0% |
| Professional Fees [12] | 1,266,809 | 1,266,809 | 100.0% | | 1,818,191 | 1,816,191 | 100.0% | | 3,085,000 | 3,085,000 | 100.0% |
| **Total Administrative Expenses** | 865,498 | 865,498 | 100.0% | | 1,540,114 | 1,540,114 | 100.0% | | 2,405,611 | 2,405,611 | 100.0% |

**Proceeds Available After Administrative Expenses** | $ 3,440,980 | | | | $ 13,593,583 | | | | $ 17,034,043 | | |

| | Secured Portion | | Est. Sec. $ Recovery | Implied % Recovery | Original Claim Amount | Secured Portion | Est. Sec. $ Recovery | Implied % Recovery | | Secured Portion | | Est. Sec. $ Recovery | Implied % Recovery |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| II. Secured Claims [13] | | | | | | | | | | | | | |
| Secured 1A: Pacific Mercantile (Cambridge) | | | | | 3,007,760 | 543,096 | 543,096 | 100.0% | | 543,096 | | 543,096 | 100.0% |
| Secured 1B: Wells Fargo (Coconut Grove) | | | | | 4,007,795 | 3,714,500 | 3,714,500 | 100.0% | | 3,714,500 | | 3,714,500 | 100.0% |
| Secured 1C: National Bank of AZ (Oak Greenwood) | | | | | 505,601 | 420,100 | 420,100 | 100.0% | | 420,100 | | 420,100 | 100.0% |
| Secured 1F: Countrywide (Santa Rosa) | | | | | 472,500 | 472,500 | 472,500 | 100.0% | | 472,500 | | 472,500 | 100.0% |
| Secured 1G: JP Morgan Chase (4th & Adams) | | | | | 638,976 | 383,180 | 383,180 | 100.0% | | 383,180 | | 383,180 | 100.0% |
| Secured 1H: Wells Fargo (Flushing Haus) | | | | | 316,770 | 316,770 | 316,770 | 100.0% | | 316,770 | | 316,770 | 100.0% |
| Secured 1D: Roskins | | | | | 4,935,000 | 4,935,000 | 4,935,000 | 100.0% | | 4,935,000 | | 4,935,000 | 100.0% |
| | | | | | 13,884,630 | 10,785,116 | 10,785,116 | 100.0% | | 10,785,116 | | 10,785,116 | 100.0% |

**Proceeds Available After Secured Claims** | $ 3,440,980 | | | | | $ 2,798,467 | | | | | $ 6,465,927 | | |

| III. Priority Claims [14] | 49,295 | 49,295 | 100.0% | | 34,277 | 34,277 | 100.0% | | 63,572 | 63,572 | 100.0% |

**Proceeds Available After Priority Claims** | $ 3,610,765 | | | | | $ 2,764,590 | | | | | $ 6,375,355 | | |

| IV. General Unsecured Claims | | | | | | | | | | | |
| General Unsecured Creditors – Cameo Homes | 20,142,491 | 562,768 | 2.8% | | 20,142,491 | | 0.0% | | 20,142,491 | 502,708 | 2.8% |
| General Unsecured Creditors – James Gianulias | | | 0.0% | | 15,601,207 | 373,105 | 2.4% | | 15,601,207 | 373,105 | 2.4% |
| General Unsecured Creditors – Dual Guarantees [15] | 93,035,992 | 2,764,991 | 2.8% | | 96,536,701 | 2,317,123 | 2.4% | | 93,035,992 | 5,084,114 | 5.1% |
| | 115,178,183 | | | | 111,709,868 | | | | 134,679,480 | 6,019,956 | |
| Transferred Unsecured Claims – Pacific Mercantile | | | 0.0% | | 2,464,984 | 59,323 | 2.4% | | 2,464,984 | 59,323 | 2.4% |
| Transferred Unsecured Claims – Wells Fargo (Coconut Grove) | | | 0.0% | | 293,235 | 7,058 | 2.4% | | 293,235 | 7,058 | 2.4% |
| Transferred Unsecured Creditors – National Bank of AZ (Oak Greenwood) | | | 0.0% | | 76,500 | 1,841 | 2.4% | | 76,500 | 1,841 | 2.4% |
| Transferred Unsecured Claims – Countrywide (Santa Rosa) | | | 0.0% | | | | 0.0% | | | | 0.0% |
| Transferred Unsecured Claims – JP Morgan Chase (4th & Adams) | | | 0.0% | | | | 0.0% | | | | 0.0% |
| Transferred Unsecured Claims – Wells Fargo (Flushing Haus) | | | 0.0% | | 255,095 | 6,140 | 2.4% | | 255,095 | 6,140 | 2.4% |
| Inter-Debtor Claims | | | 0.0% | | | | 0.0% | | | | 0.0% |
| Inter-Debtor Claims Payable to James C. Gianulias | 10,057,726 | 281,008 | 2.8% | | 10,057,726 | | 0.0% | | 10,057,726 | 281,008 | 2.8% |
| | 129,235,909 | 3,610,765 | 2.8% | | 114,869,482 | 2,764,590 | 2.4% | | 147,626,591 | 6,375,355 | 4.3% |

**Proceeds Available After General Unsecured Claims** | $ – | | | | $ – | | | | $ – | | |

EXHIBIT 7
114

James C. Glanullas & Cameo Homes - Separate Estate Liquidations
Liquidation Analysis

Notes:
[1] Includes Murrieta 462 and Murrieta 144 ownership interests.
[2] Assumes all raw land parcels with the exception of Cambridge Square Partners will be foreclosed upon.
[3] Represents ownership interests in Napa Wine Group (Lanand) and LAGI.
[4] Estimated proceeds for private residence reflects the gross asset value for purposes of calculating secured claims (excluding Atlantis Cove), less
     disposition costs and chapter 7 discounts.
[5] Represents investments and automobiles.
[6] Personal property includes furniture, collections and other personal property.
[7] Preference actions are currently assumed to be zero.
[8] Tax liability based upon analysis by Haskell & White.
[9] Calculation based upon the formula outlined by the United States Office of the Trustee. Fees are assumed to be calculated as if Cameo Homes and
     James C. Glanullas are consolidated estates for comparative purposes.
[10] Represents an estimate of each estate's pro-rata share of 50% of 2009 income (assumes mid-year convention for the sale of assets).
[11] Represents an estimate of each estate's share of wind down costs based upon 2009 budgeted expenses for Mesa Management, G Companies,
     Cameo Homes, and James C. Glanullas.
[12] Represents an estimate of each estate's pro-rata share of $1,285,000 for professional fees assumed to be accrued as of start of liquidation at the end of June 2009, an
     additional  $200,000 per month for the remainder of 2009, and $100,000 per month of professional fees for the first 6 months of 2010 to be incurred
     during the wind down of the estate.
[13] Secured claims are limited to the gross value of collateral less applicable asset disposition costs and chapter 7 liquidation discounts. The
     difference between the original claim and the secured portion is re-classified and treated as an unsecured claim.
[14] Priority claims are comprised of payments to BMC group, State of Hawaii and the Internal Revenue Service.
[15] Unrecovered general unsecured claims from sale proceeds of Cameo Homes assets guaranteed by both Debtors are treated as general unsecured claims
     of the James C. Glanullas estate.

EXHIBIT 7

115

| In re:                          |          | CHAPTER: 11                          |
|                                 |          |                                      |
| JAMES C. GIANULIAS              |          |                                      |
|                        Debtor(s). |        | CASE NUMBER: 8:08-bk-13150-RK        |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document described as <u>MOTION OF THE OFFICIAL JOINT COMMITTEE OF UNSECURED CREDITORS FOR ORDER AUTHORIZING TERMINATION OF DEBTORS' AND DEBTORS IN POSSESSION'S PLAN EXCLUSIVITY PURSUANT TO 11 U.S.C. § 1121(d); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF GARY WATTS, DOUG MAIN, AND VICTOR A. SAHN IN SUPPORT THEREOF</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

☐ Service Information continued on attached page.

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>April 3, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

The Honorable Robert Kwan
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

☒ Service Information continued on attached page.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on <u>April 3, 2009</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 3, 2009 | Lauren Dionneau |  |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br><br>JAMES C. GIANULIAS<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 8:08-bk-13150-RK |
| --- | --- |

**ADDITIONAL SERVICE INFORMATION** (if needed):

**SERVICE LIST**

**VIA ELECTRONIC MAIL**

- Jesse R. Bressi jbressi@coxcastle.com
- Frank Cadigan frank.cadigan@usdoj.gov
- Sean T Cork Scork@ssd.com
- Paul J Couchot pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Susan S Davis sdavis@coxcastle.com
- Daniel Denny ddenny@gibsondunn.com
- Lei Lei Wang Ekvall lekvall@wgllp.com
- David K. Eldan malvarado@pmcos.com
- Alan J. Friedman afriedman@irell.com
- Robert P Goe kmurphy@goeforlaw.com
- Michael J Hauser michael.hauser@usdoj.gov
- Whitman L Holt wholt@stutman.com
- Marsha A Houston mhouston@reedsmith.com
- Kerri A. Lyman klyman@irell.com
- Andrew K Mauthe mauthelaw@attglobal.com
- Randall P Mroczynski randym@cookseylaw.com
- Mike D. Neue mneue@irell.com
- Penelope Parmes pparmes@rutan.com
- Steven G Polard spolard@perkinscoie.com
- Christopher O Rivas crivas@reedsmith.com
- Martha E Romero Romero@mromerolawfirm.com
- Anthony J. Rothman anthony@arothmanlaw.com
- John D Schlotter bkmail@mrdefault.com
- Mark C Schnitzer mschnitzer@rhlaw.com
- Leonard M Shulman lshulman@shbllp.com
- DerrickTalericodtalerico@loeb.com, kpresson@lobel.com; ljurich@loeb.com
- James E. Till jtill@millbank.com
- James E. Till jtill@thelobelfirm.com
- U.S. Trustee ustpregion16.sa.ecf@usdoj.gov
- Matthew S Walker matthew.walker@pillsburylaw.com, sue.hodges@pillsburylaw.com, pamela.breeden@pillsburylaw.com
- Joshua D Wayser joshua.wayser@kattenlaw.com
- John H Wunsch sandra.g.mcmasters@wellsfargo.com
- William Lobel wlobel@thelobelfirm.com
- Marc S. Hines mhines@hinessmith.com
- Katherine S. Agbayani kagbayani@hinessmith.com
- Lance Jurich ljurich@loeb.com

**VIA OVERNIGHT MAIL**

Office of the United States Trustee
Michael J. Hauser
411 West Fourth Street, Suite 9041
Santa Ana, CA 92701-8000

California Bank & Trust
c/o Peter L. Duncan, Esq.
Pyle Sims Duncan & Stevenson APC
401 "B" Street, Suite 1500
San Diego, CA 92101

Daniel J. Flanigan
Polsinelli Shalton Flanigan Suelthaus PC
700 W. 47th Street, Suite 1000
Kansas City, Missouri 64112

Jean-Paul Menard
McKenna Long & Aldridge LLP
444 South Flower Street, 8th Floor
Los Angeles, CA 90071-2901

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**