1  William N. Lobel (State Bar No. 093202)
   Mike D. Neue (State Bar No. 179303)
2  THE LOBEL FIRM, LLP
   840 Newport Center Drive, Suite 750
3  Newport Beach, California 92660
   Telephone:   (949) 999-2860
4  Facsimile:   (949) 999-2870

5  Attorneys for Debtors and
   Debtors-in-Possession
6

   Alan J. Friedman (State Bar No. 132580)
7  IRELL & MANELLA LLP
   840 Newport Center Drive, Suite 400
8  Newport Beach, California 92660
   Telephone:   (949) 760-0991
9  Facsimile:   (949) 760-5200

10 Attorneys for Debtors and
   Debtors-in-Possession
11

12

13            **UNITED STATES BANKRUPTCY COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15                 **SANTA ANA DIVISION**

16 In re                          )  Case No. SA 08-13150-RK
                                  )  [Substantively Consolidated With:
17 JAMES C. GIANULIAS, and CAMEO  )  Case No. 8:08-bk-13151-RK]
   HOMES, a California corporation, )
18                                )  Chapter 11
                                  )
19        Debtors and Debtors-in-Possession.  )  **DEBTORS' FIRST AMENDED PLAN OF**
                                  )  **REORGANIZATION (DATED**
20                                )  **NOVEMBER 9, 2009)**
                                  )
21                                )  [Confirmation Hearing To Be Set]
                                  )
22                                )
                                  )
23                                )
                                  )
24                                )
                                  )
25

26

27

28

### DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION

Pursuant to section 1121(a) of the Bankruptcy Code, James C. Gianulias and Cameo Homes, the debtors and debtors-in-possession in these substantively-consolidated cases (the "Debtors"), hereby propose this Plan of Reorganization.

### ARTICLE I

### INTRODUCTION

The purpose of this Plan is to provide the details of the Debtors' proposed reorganization and proposed distributions of money or property to their respective creditors. The Plan incorporates the terms of an agreement reached between the Debtors and the Official Committee of Unsecured Creditors (the "Committee") following extensive negotiations among the parties and, as a result, the Plan is supported by the Committee. After the Plan has been confirmed, the Bankruptcy Court will retain jurisdiction to determine the allowance of all Claims and to effectuate and enforce the terms of this Plan. The definitions provided in Article II of the Plan apply throughout the Plan, including those capitalized terms used in the Plan.

### ARTICLE II

### DEFINITIONS AND RULES OF CONSTRUCTION

**A.** **Specific Definitions**

In addition to such other terms as are defined in other sections hereof, the following capitalized terms shall have the following meanings:

1. ***"Administrative Claim"*** means any right to payment constituting a cost or expense of administration of the Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under sections 330, 331 or 503 of the Bankruptcy

1   Code, any fees or charges assessed against the Debtors' estates under section 1930 of chapter 123

2   of title 28 of the United States Code and any Claim for goods delivered to the Debtors within

3   twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section

4   503(b)(9) of the Bankruptcy Code.

5       2.     "*Allowed Administrative Claim*" means all or that portion of an Administrative

6   Claim which is an Allowed Claim.

7       3.     "*Allowed Gap Claim*" means all or that portion of a Gap Claim which is an

8   Allowed Claim.

9       4.     "*Allowed Priority Claim*" means all or that portion of a Priority Claim which is an

10   Allowed Claim.

11       5.     "*Allowed Priority Tax Claim*" means all or that portion of a Priority Tax Claim

12   which is an Allowed Claim.

13       6.     "*Allowed Secured Claim*" means all or that portion of a Secured Claim which is an

14   Allowed Claim.

15       7.     "*Allowed General Unsecured Claim*" means all or that portion of a General

16   Unsecured Claim which is an Allowed Claim.

17       8.     "*Allowed*" means, with reference to any Claim, (a) any Claim against any of the

18   Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended

19   by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in

20   amount and not disputed or contingent, and with respect to which no contrary proof of claim has

21   been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not a Disputed

22   Claim by the Claims Objection Deadline or (d) any Claim, the amount or existence of which, if it

23   is a Disputed Claim, (i) has been determined by a Final Order of a court of competent jurisdiction

24   other than the Court, or (ii) has been allowed by Final Order of the Court; provided, however, that

25   any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an

26   order of the Court shall not be considered "Allowed Claims" hereunder.

27       9.     "*Available Cash Flow*" means the Cash distributed (including the proceeds of any

28   sales of any of the Portfolio or the Portfolio Properties) to the Reorganized Debtors after the

1  Effective Date on account of the assets in the Portfolio and any Cash refund to the Reorganized

2  Debtors of any Pre-petition taxes net of: (a) the payment of all taxes associated with said

3  distributions and refunds and ownership of the Portfolio as described below and as set forth in the

4  approximate amounts set forth in the Projection (based upon the assumption made as of the date

5  hereof regarding tax laws and rates in the future); (b) payment of all Allowed Administrative

6  Claims, Allowed Gap Claims, Allowed Priority Claims and Allowed Priority Tax Claims incurred

7  in the Cases; (c) the payment of $1.8 million annually to the Reorganized Debtors in the first and

8  second year following the Effective Date; and (d) the following payments to Robbins on account

9  of her Secured Claim (i) $1.0 million in the first year following the Effective Date, (ii) $1.2

10  million in the second year following the Effective Date, (iii) $1.2 million in the third year

11  following the Effective Date, (iv) $1.2 million in the fourth year following the Effective Date, and

12  (v) the remaining balance of the Secured Claim of Robbins (in the amount of approximately

13  $1,251,481) in the fifth year following the Effective Date.  For purposes of clause (a) above,

14  income taxes of the Reorganized Debtors associated with distributions on account of the assets in

15  the Portfolio shall be computed for each Reorganized Debtor as if such Reorganized Debtor's only

16  income, gain, loss and deduction items were those items arising out of the Portfolio (as well as any

17  net operating losses attributed to such Reorganized Debtor as of the Effective Date).  The income

18  tax computation for each Reorganized Debtor each year, therefore, will be a hypothetical tax

19  computation applying the normal tax accounting rules to only the items described in the previous

20  sentence.  Such computation may bear little relationship to the actual tax liability and tax attributes

21  of the Reorganized Debtors in any year.

22      10.    *"Ballot"* means each of the ballot forms distributed with the Disclosure Statement

23  to each holder of an impaired Claim (other than to holders not entitled to vote on the Plan) upon

24  which is to be indicated, among other things, acceptance or rejection of the Plan.

25      11.    *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101 *et*

26  *seq.*, as in effect on the date hereof.

27      12.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Central

28  District of California, Santa Ana Division.

13. ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require.

14. ***"Business Day"*** means any day other than a Saturday, a Sunday or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15. ***"Cameo"*** means Cameo Homes, a California corporation.

16. ***"Cases"*** means the Debtors' pending cases under chapter 11 of the Bankruptcy Code.

17. ***"Cash"*** means lawful currency of the United States and equivalents thereof, including, but not limited to: bank deposits, wire transfers, checks, and other similar items.

18. ***"Chase"*** means secured creditor JP Morgan Chase.

19. ***"Claim"*** or ***"Claims"*** as defined in the Bankruptcy Code, section 101(5)(A) and (B), means (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

20. ***"Claim Bar Date"*** means November 11, 2008 with respect to all Claims, except for Claims of a Governmental Unit and Administrative Claims. With respect to Claims of a Governmental Unit, Claim Bar Date shall mean December 29, 2008. With respect to Administrative Claims, Claim Bar Date shall mean 30 days after the Effective Date.

21. ***"Claim Objection Deadline"*** means (a) 90 days after the Effective Date, unless extended by an order of the Court, or (b) 30 days after the deadline for filing an Administrative Claim, unless extended by an order of the Court.

22. ***"Class"*** means a group of Claims or Interests classified together in a class designated in Article III of the Plan.

23. ***"Committee"*** means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee in the Cases as it may be constituted from time to time.

1    24.    *"Confirmation Date"* means the date of entry of the Confirmation Order.

2    25.    *"Confirmation Hearing"* means the hearing to consider confirmation of the Plan

3    pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time

4    to time.

5    26.    *"Confirmation Order"* means the order of the Court confirming the Plan pursuant

6    to section 1129 of the Bankruptcy Code.

7    27.    *"Consolidation Order"* means the "Order Substantively Consolidating Chapter 11

8    Estate of Cameo Homes into Chapter 11 Estate of James C. Gianulias" entered by the Court on

9    December 11, 2008.

10    28.    *"Countrywide"* means secured creditor Countrywide Financial Corporation.

11    29.    *"Control Assets"* means the following assets, in which the Debtors' own a

12    controlling interest: (a) Fountain Valley Senior Housing, L.P.; (b) Placentia 422, LP; (c) River

13    Knolls, LP; and (d) GVSC, LP.

14    30.    *"Control Assets Budget"* means the annual budget for operations of the Control

15    Assets to be established by agreement between the Debtors and the Committee as of the

16    Confirmation Date.

17    31.    *"Creditor"* means any holder of a Claim, as defined by the Bankruptcy Code,

18    section 101(10).

19    32.    *"Creditors' Trust Agreement"* means that certain "Creditors' Trust Agreement," a

20    true and correct copy of which is attached hereto as Exhibit "1."

21    33.    *"Creditors' Trust Trustee"* shall mean shall mean the Trustee of the Creditors'

22    Trust consisting of one (1) individual that is selected by the Committee.

23    34.    *"Creditors' Trust"* means that trust established in accordance with section VII.F

24    hereof, and which, after the Effective Date, will hold and distribute certain assets and funds for the

25    benefit of holders of Allowed Claims in Class 3 in accordance with the terms of the Plan, and will

26    have such powers, duties and obligations as are set forth therein, in the Creditors' Trust

27    Agreement, in the Confirmation Order, in other Final Orders, and by applicable law.

28

35. **"Creditors' Trust Lien"** means the first priority security interest in the Portfolio granted to the Creditors' Trust to secure the Reorganized Debtors' obligations under the Primary Note, established in accordance with the terms set forth in section VII.H of the Plan.

36. **"Debtors"** means, collectively, Gianulias and Cameo, whether as debtors or as debtors-in-possession.

37. **"Disclosure Statement"** means the "First Amended Disclosure Statement Regarding Debtors' First Amended Plan of Reorganization (Dated November 9, 2009)" (and all exhibits and attachments thereto or referenced therein) that relates to the Plan and is approved pursuant to section 1125 of the Bankruptcy Code in an order entered by the Court, as such Disclosure Statement may be amended, modified or supplemented.

38. **"Dispute Resolution Procedure"** means the procedures set forth herein to resolve any disputes arising between the Debtors and the Committee or the Reorganized Debtors and the Creditors' Trust in connection with the terms or interpretation of the Term Sheet, a default under the Primary Note or the Secondary Note, a dispute concerning the Control Assets Budget and any issue relating to the definition or calculation of Available Cash Flow, established in accordance with the terms set forth in section VII.K of the Plan.

39. **"Disputed Claim"** means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed by the Claim Bar Date and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) that is not listed in the Schedules; or (b) any Claim as to which the Debtors or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the holder of such Claim.

40. **"Distribution Fund"** means the proceeds to be collected by the Creditors' Trust Trustee for distribution to Creditors in Class 3 pursuant to the Plan, including the proceeds of the Primary Note and the Secondary Note.

41.    *"Effective Date"* means the first Business Day following the date the Confirmation Order becomes a Final Order.

42.    *"Entity"* means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any subdivision thereof.

43.    *"Estate"* means, with respect to any Debtor, the estate created by section 541(a) of the Bankruptcy Code upon the Petition Date.

44.    *"Final Claim Order"* means a Final Order regarding an objection to and/or allowance of a Claim.

45.    *"Final Order"* means an order or judgment of the Court the operation or effect of which has not been stayed, and as to which the time to appeal or to seek reargument or rehearing has passed, and as to which no appeal, reargument, or petition for rehearing or certiorari has been taken or is pending.

46.    *"Gap Claims"* means Claims arising between the Petition Date and the Order for Relief Date which are accorded priority in right of payment under section 507(a)(3) of the Bankruptcy Code.

47.    *"General Unsecured Claims"* means those Claims included in Class 3 herein.

48.    *"Gianulias"* means James C. Gianulias, an individual.

49.    *"Governmental Unit"* has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

50.    *"Gus Gianulias"* means secured creditor Gus Gianulias.

51.    *"Initial Distribution Date"* means the first Business Day on which a distribution is made under the Plan to holders of Allowed Claims in Class 3.

52.    *"Insider"* as defined in section 101(31) of the Bankruptcy Code, means (a) a director of a Debtor; (b) an officer of a Debtor; (c) a person in control of a Debtor; (d) a partnership in which a Debtor is a general partner; (e) a general partner of a Debtor; (f) a relative of a general partner in, general partner of, or person in control of a Debtor; (g) an affiliate (as

1  defined in section 101(2) of the Bankruptcy Code) of a Debtor, or an Insider of an affiliate as if

2  such affiliate were a Debtor; and (h) a managing agent of a Debtor.

3      53.   *"Inter-Debtor Claim"* means any Claim held by one of the Debtors against the

4  other Debtor, including, without limitation, (a) any account reflecting intercompany book entries

5  by such Debtor with respect to the other Debtor, (b) any Claim not reflected in book entries that is

6  held by a Debtor against the other Debtor, and (c) any derivative Claim asserted or assertable by or

7  on behalf of such Debtor against the other Debtor.

8      54.   *"Interest Holder"* means the holder of an Interest on or before the date of the

9  Confirmation Hearing.

10     55.   *"Interest"* means (a) the membership interests or any ownership rights in Cameo,

11 and (b) any right or option, however arising, to acquire membership interests or any other equity

12 interest, or any rights therein, of Cameo.

13     56.   *"Mediator"* means the Honorable Mitchel Goldberg (Ret.).  If, for any reason,

14 Judge Goldberg is unable to serve as the Mediator, the Mediator shall be an individual mutually

15 agreed upon by the parties involved in the dispute using the following procedure: (i) each party

16 may propose the names of five neutral, qualified individuals to serve as Mediator; (ii) each party

17 may strike three names from the opposing party's list peremptorily; and (iii) the parties shall then

18 mutually select one of the remaining four individuals to serve as Mediator.  To the extent that the

19 parties are unable to mutually agree on a Mediator, the parties shall request that the Court appoint

20 a Mediator from the list of the remaining four individuals.

21     57.   *"National Bank"* means secured creditor National Bank of Arizona.

22     58.   *"Negative Pledge"* means the pledge granted to the Creditors' Trust by the

23 Reorganized Debtors as of the Effective Date that the Portfolio will not be encumbered absent the

24 consent of the Creditors' Trust Trustee, established in accordance with the terms set forth in

25 section VII.I of the Plan.

26     59.   *"Order for Relief Date"* means July 2, 2008, the date on which the Court entered

27 its "Order on Debtor's Election to Convert Chapter 7 Case to a Case Under Chapter 11 of the

28 Bankruptcy Code" for each Debtor.

1    60.    *"Pacific Mercantile"* means secured creditor Pacific Mercantile Bank.

2    61.    *"Pacific Mercantile Note"* means that certain promissory note dated as of October

3    26, 2005, in the original principal sum of $2 million (as subsequently modified to $3 million),

4    executed by Gianulias.

5    62.    *"Person"* means any individual, corporation, partnership, limited liability

6    company, association, indenture trustee, organization, joint stock company, joint venture, estate,

7    trust, governmental unit or any political subdivision thereof, or any other entity.

8    63.    *"Petition Date"* means June 6, 2008.

9    64.    *"Plan Proponents"* means the Debtors.

10    65.    *"Plan"* means this "Debtors' First Amended Plan of Reorganization (Dated

11    November 9, 2009)" (including all exhibits and attachments, each of which is hereby incorporated

12    and made part of the Plan), as modified or amended from time to time in accordance with section

13    1127 of the Bankruptcy Code.

14    66.    *"Portfolio"* means the Debtors' interests in the following Entities: (a) East Coast

15    Properties (Country Gardens); (b) East Coast Properties (Grenadier Village); (c) East Coast

16    Properties (Valenti's Country Estate); (d) East Coast Properties (Wood Wind Gardens); (e)

17    Fountain Valley Senior Housing, LP (Palm Island); (f) LG Parkewood Village, LP; (g) Park Glen,

18    LP (Brooklake); (h) Park Mesa, LP; (i) Piccadilly Square, LP; (j) Placentia 422, LP (Emerald

19    Isle); (k) River Knolls, LP; (l) Villa Buena, LP; (m) Coast Business Center; (n) Crown Building;

20    (o) Dana Centre (GP); (p) Dana Center, LP; (q) Greenhaven Plaza; (r) GVSC, LP (Grass Valley);

21    (s) Lahaina Cannery Mall, LLC; (t) Lucas-Gianulias; and (u) Sunrise Village, LP.

22    67.    *"Portfolio Properties"* means the real property assets underlying the Portfolio.

23    68.    *"Projection"* means the projection prepared in connection with the Term Sheet

24    estimating cash flow generated by the Portfolio and the payments on account of the Primary Note,

25    which is intended as a guide only and is not a guarantee of any specific payment stream, and

26    attached to the Disclosure Statement as Exhibit 2.

27    69.    *"Primary Note"* means the promissory note in the original principal amount of $42

28    million, bearing interest at a rate of 3.75% per annum, and maturing on December 31, 2024, to be

1  issued by the Reorganized Debtors as of the Effective Date and made payable to the Creditors'

2  Trust solely for the benefit of holders of Allowed General Unsecured Claims, established in

3  accordance with the terms set forth in section VII.G of the Plan.

4      70.    "***Priority Claim***" means a Claim other than an Administrative Claim or a Tax

5  Claim which, if allowed, would be entitled to priority under section 507(a) of the Bankruptcy

6  Code.

7      71.    "***Priority Tax Claim***" means a Claim entitled to priority under section 507(a)(8) of

8  the Bankruptcy Code.

9      72.    "***Pro Rata***" means proportionately, so that with respect to a particular Allowed

10  Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the

11  amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on

12  account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of

13  all Allowed Claims in that Class.

14      73.    "***Professionals***" means those Entities (a) employed in the Cases under sections 327

15  or 1103 of the Bankruptcy Code, and (b) entitled, under sections 328, 330, 331, 503(b), 506(b),

16  507(a)(2) of the Bankruptcy Code, to seek compensation for legal, accounting or other

17  professional services and the costs and expenses related to such services from the Debtors or the

18  Estates.

19      74.    "***Recovery Rights***" means any and all manner of causes of action, claims,

20  obligations, suits, debts, judgments and demands whatsoever, whether in law or in equity,

21  including, but not limited to, actions to subordinate Claims under Section 510 of the Bankruptcy

22  Code and avoidance power actions set forth in Sections 544 through 550, inclusive, of the

23  Bankruptcy Code.

24      75.    "***Rejection Damages Deadline***" means the later of the Claim Bar Date, or thirty

25  (30) days after the entry of an order approving the rejection of an executory contract or unexpired

26  lease.

27      76.    "***Reorganized Debtors***" means the Debtors, or any successors thereto by merger,

28  consolidation, or otherwise, on and after the Effective Date.

1    77.    ***"Robbins"*** means secured creditor Marilyn Gianulias Robbins, an individual.

2    78.    *"Schedules"* means the schedules of assets and liabilities, statements of financial

3 affairs, and lists of holders of Claims and Equity Interests filed with the Court by each of the

4 Debtors, including any amendments or supplements thereto.

5    79.    ***"Secondary Note"*** means the promissory note in the original principal amount of

6 $5 million, which shall not bear interest, and maturing on December 31, 2025, to be issued by the

7 Reorganized Debtors as of the Effective Date and made payable to the Creditors' Trust solely for

8 the benefit of holders of Allowed General Unsecured Claims, established in accordance with the

9 terms set forth in section VII.J of the Plan.

10    80.    ***"Secured Claim"*** means a Claim secured by a lien on any property of any of the

11 Estates, but only to the extent of the value of the interest of the holder of such Allowed Claim in

12 the interest of the Estate in such property, the calculation of which shall not include any demand

13 for default interest, penalty interest or other similar demands.

14    81.    ***"Subordinated Claims"*** means: (a) any Claim, or a portion of a Claim, that is

15 subject to subordination under section 510 of the Code, and (b) any Claim, or portion of a Claim,

16 for fines, penalties, forfeitures, or for multiple, exemplary, or punitive damages, or other non-

17 pecuniary, direct or non-proximate damages.

18    82.    ***"Term Sheet"*** means the Binding Term Sheet entered into by Gianulias, Cameo

19 and the Committee in October 2009.

20    83.    ***"Unclaimed Property"*** means any funds or other Property to be distributed to

21 Creditors pursuant to the Plan, which, after an attempted distribution, has not been received by the

22 rightful Creditor.  Unclaimed property shall include checks and any other property that have been

23 returned as undeliverable without a proper forwarding address, or which were not mailed or

24 delivered because of the absence of a proper address to which to mail or deliver such property.

25 Such Unclaimed Property that remains unclaimed at the end of one (1) year following the date of

26 an attempted distribution shall be reallocated and paid to other holders of Allowed Claims in

27 accordance with the Plan.  After the expiration of one (1) year following the date of an attempted

28

distribution, each Claim with respect to Unclaimed Property shall be treated as if it had been disallowed in its entirety.

84.    *"United States Trustee"* means the United States Trustee for the District of California.

85.    *"Voting Deadline"* means _____, 2010, or such other deadline established by the Bankruptcy Court for parties in interest entitled to vote to submit their ballots accepting or rejecting the Plan.

86.    *"Wells Fargo"* means secured creditor Wells Fargo Bank.

**B.    Rules of Interpretation, Construction, and Computation of Time**

1.    Any term used in the Plan that is not defined herein, whether in this Article or elsewhere, or other exhibits hereto, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.

2.    Any capitalized term used in the Plan that is not defined herein, or other exhibits hereto, but that is defined and used in the Disclosure Statement has the meaning ascribed to that term in the Disclosure Statement.

3.    The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan.

4.    Unless specified otherwise in a particular reference, a reference to an article or a section is a referenee to that article or section of the Plan.

5.    Any reference in the Plan to a document being in a particular form or on particular terms and conditions means that the document shall be substantially in such form or substantially on such terms and conditions.

6.    Any reference in the Plan to an existing document means such document, as it may have been amended, modified or supplemented from time to time as of the Effective Date.

7.    Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

8.      The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan.

9.      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.     All exhibits to the Plan are incorporated into the Plan, and shall be deemed to be part of the Plan.

11.     The provisions of the Plan shall control over the contents of the Disclosure Statement.  The provisions of the Confirmation Order shall control over the contents of the Plan.

12.     Unless otherwise specified in the Plan, whenever a distribution of property must be made, or an act required on a particular date, the distribution or act shall occur on such date, or as soon as practicable thereafter.

**ARTICLE III**

**PAYMENT OF ADMINISTRATIVE EXPENSES**

**AND TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS**

**A.**     <u>**Summary**</u>

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Claims for Professional Fees and Priority Tax claims against the Debtors are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims are instead treated separately in accordance with this Article III and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**B.**     <u>**Administrative Claims**</u>

Subject to section 330(a) and 331 of the Bankruptcy Code and the bar date provisions of paragraph C of this Article III, on the later of the Effective Date, or as soon thereafter as practical, or the date on which the Administrative Claim is allowed, the Debtors will pay to each Creditor holding an Allowed Administrative Claim, unless that Creditor agrees to different treatment, Cash equal to the unpaid portion of such Allowed Administrative Claim; *provided, however,* that Allowed Administrative Claims representing obligations incurred in the ordinary course of

1    business or otherwise assumed by the Debtors pursuant to this Plan and unpaid as of the Effective

2    Date, shall be assumed on the Effective Date and paid or performed by the Debtors when due in

3    accordance with the terms and conditions of the particular agreements governing such obligations.

4    **C.**      **Bar Date For Administrative Claims**

5          All applications for final compensation of Professionals for services rendered and for

6    reimbursement of expenses incurred on or before the Effective Date, and any other request for

7    compensation by any Entity for making a substantial contribution in the Cases, and all other

8    requests for payment of an Administrative Claim incurred before the Effective Date under sections

9    507(a)(2) or 503(b) of the Bankruptcy Code (except only for Claims under 28 U.S.C. § 1930) shall

10    be filed no later than thirty (30) days after the Effective Date.

11          Any Administrative Claim required to be filed within the foregoing deadlines that is not

12    filed within such deadlines shall be forever barred and the Debtors shall be discharged of any

13    obligation on such Claim.  Any Creditor required to file a request for payment of such Claim and

14    who does not file such request by the applicable bar date shall be forever barred from asserting

15    such Claim against the Estates or the Debtors, or any of their respective properties.

16    **D.**      **Payment of Allowed Administrative Claims of Professionals**

17          The Allowed Administrative Claims of Professionals shall not be paid in full on the

18    Effective Date.  Instead, Allowed Administrative Claims of Professionals shall be paid, Pro Rata,

19    from the cash generated by the Portfolio, subject to the payment of $1.8 million annually to the

20    Reorganized Debtors in the first and second year following the Effective Date and the payments to

21    be made to Robbins on account of her Secured Claim as set forth herein.  All Professionals have

22    agreed to this deferral, without which, the Plan would not be feasible.

23    **E.**      **Payment of Priority Tax Claims**

24          Each holder of an Allowed Priority Tax Claim against the Debtors shall receive, on the

25    Effective Date, in full satisfaction, release, and discharge of such Allowed Priority Tax Claim, at

26    the election of the Debtors, either: (i) Cash payment in the amount of the holder's Allowed

27    Priority Tax Claim; (ii) deferred Cash payments over a period not to exceed five (5) years, from

28    the Petition Date, equal to the Allowed amount of such claim; or (iii) such other terms as may be

1   agreed upon by such holder and the Debtors.  The rate of interest to be paid on Priority Tax

2   Claims paid out over a period not to exceed five (5) years from the Petition Date shall be equal to

3   the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S.C. §

4   6621(c)) as of the Effective Date or such higher rate as required by 11 U.S.C. § 511(a).

5          Holders of Allowed Priority Tax Claims shall not be entitled to receive any payment on

6   account of post-Petition Date interest on, or penalties with respect to or arising in connection with,

7   such Priority Tax Claims, except as allowed by the Court, and all Claims or demands by holders of

8   Priority Tax Claims for post-Petition Date interest or penalties thereon, except as may be allowed

9   by the Court, shall be disallowed by the Plan and the Confirmation Order, and the holders of

10  Priority Tax Claims shall not assess or attempt to collect interest or penalties from the Estates or

11  their properties.

12  **F.**     **Payment of Gap Claims**

13         Each holder of an Allowed Gap Claim shall receive in full satisfaction of such holder's

14  Allowed Claim (a) the amount of such holder's Allowed Claim in one cash payment on the

15  Effective Date, or as soon thereafter as practical, or (b) such other treatment as may be agreed

16  upon in writing by such holder.

17                                  **ARTICLE IV**

18                    **CLASSIFICATION OF CLAIMS AND INTERESTS**

19  **A.**     **Manner of Classification of Claims and Interests**

20         Except for Claims of a kind specified in sections 507(a)(2) or 507(a)(8) of the Bankruptcy

21  Code, all Claims against, and Interests in the Debtors and with respect to all property of the

22  Debtors and the Estates, are defined and hereinafter designated in respective Classes.  The Plan is

23  intended to deal with all Claims against and Interests in the Debtors, of whatever character,

24  whether known or unknown, whether or not with recourse, whether or not contingent or

25  unliquidated, and whether or not previously allowed by the Court pursuant to section 502 of the

26  Bankruptcy Code.  Only holders of Allowed Claims, however, will receive any distribution under

27  the Plan.  For purposes of determining Pro Rata distributions to holders of Allowed Claims under

28

1    the Plan, Disputed Claims shall be included in the Class in which such Claims would be included

2    if they were Allowed Claims.

3    **B.**    **Classification**

4          Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of the

5    classes of Claims and Interests in the Debtors.  A Claim or Interest is placed in a particular Class

6    only to the extent such Claim or Interest is an Allowed Claim or Interest in that Class and such

7    Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective

8    Date.  Any Claims not described in Article IV of this Plan are unclassified, and therefore, are not

9    included in the Classes below.  The Allowed Claims and Interests, except for Claims described

10    above and which are not required to be classified pursuant to section 1123(a)(1) of the Bankruptcy

11    Code, are divided into the following Classes.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SUMMARY OF CLASSIFICATION

| Class | Status | Voting Rights |
|---|---|---|
| Class 1A: Secured Claims of Pacific Mercantile | Impaired | Entitled to Vote |
| Class 1B-1: Secured Claim of Wells Fargo on Account of the Colorado Note | Impaired | Entitled to Vote |
| Class 1B-2: Secured Claim of Wells Fargo on Account of the Hawaii Note | Impaired | Entitled to Vote |
| Class 1C: Secured Claims of National Bank | Unimpaired | Deemed Accepted; Not Entitled to Vote |
| Class 1D: Secured Claims of Robbins | Impaired | Entitled to Vote |
| Class 1E: Secured Claims of Gus Gianulias | Unimpaired | Deemed Accepted; Not Entitled to Vote |
| Class 1F: Secured Claims of Countrywide | Impaired | Entitled to Vote |
| Class 1G: Secured Claims of Chase | Unimpaired | Deemed Accepted; Not Entitled to Vote |
| Class 1H: Other Secured Claims | Unimpaired | Deemed Accepted; Not Entitled to Vote |
| Class 2: Priority Claims | Unimpaired | Deemed Accepted; Not Entitled to Vote |
| Class 3: General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4: Inter-Debtor Claims | Impaired | Entitled to Vote |
| Class 5: Subordinated Claims | Unimpaired | Deemed Accepted; Not Entitled to Vote |
| Class 6: Interests in Cameo | Unimpaired | Deemed Accepted; Not Entitled to Vote |

## ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS

A.  **Class 1A ~ Secured Claims of Pacific Mercantile**

Class 1A consists of all Secured Claims of Pacific Mercantile.

Except to the extent that Pacific Mercantile agrees to a different treatment, Pacific

Mercantile's Note shall be modified as follows:

1       1.    <u>Principal Amount</u>.  The Pacific Mercantile Note shall have a principal amount

2  equal to the principal balance as of the Petition Date, plus all amounts that have accrued on the

3  Pacific Mercantile Note through and including the Effective Date.

4       2.    <u>Interest</u>.  Simple interest shall accrue on the unpaid principal balance of the Pacific

5  Mercantile Note at the rate of 5.5% per annum.

6       3.    <u>Payments</u>.  The first monthly payment under the Pacific Mercantile Note will be

7  due on the fifteenth (15th) day of the first calendar month following the Effective Date and will be

8  in an amount equal to the interest accrued on the Pacific Mercantile Note from the Effective Date

9  through the end of the calendar month in which the Effective Date occurs.  Thereafter, until

10  maturity, a monthly payment will be due on the fifteenth (15th) day of each successive month in

11  an amount equal to the interest accrued on the unpaid principal balance of the Pacific Mercantile

12  Note during the previous month.

13       4.    <u>Maturity</u>.  The maturity date of the Pacific Mercantile Note shall be extended, and

14  the Pacific Mercantile Note will be due and payable in full on the last Business Day of the 84th

15  calendar month after the Effective Date.

16       5.    <u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium,

17  the Pacific Mercantile Note may be prepaid, in whole or in part, in the sole discretion of the

18  Reorganized Debtors provided, however, that pre-payment cannot act to impact payments due to

19  the Creditors' Trust.

20       6.    <u>Retention of Collateral</u>.  Except to the extent inconsistent herewith or with the law,

21  the validity and priority of the security interest securing the Pacific Mercantile Note shall remain

22  in full force and effect following the Effective Date.

23       To the extent that a Creditor in Class 1A does not hold an Allowed Secured Claim, such

24  Claim, if it becomes an Allowed Claim, shall be included in Class 3.

25       **Class 1A is impaired under the Plan.**

26  **B.**    <u>**Class 1B ~ Secured Claims of Wells Fargo**</u>

27       Class 1B consists of all Secured Claims of Wells Fargo.  Wells Fargo's Secured Claims

28  arise from two promissory notes, secured by two properties: (1) a property located at 747 S.

1  Galena, Aspen, Colorado (the "Colorado Property"); and (2) a property located at 13 Coconut

2  Grove Lane, Lahaina, Hawaii (the "Hawaii Property").  The note secured by the Colorado

3  Property shall be referred to below as the Colorado Note, the note secured by the Hawaii Property

4  shall be referred to below as the Hawaii Note and collectively the modified Hawaii Note and the

5  Colorado Note shall be referred to as the Wells Fargo Notes.

6              *(a)*      Class 1B-1: the Colorado Note

7          Class 1B-1 consists of the Secured Claims of Wells Fargo arising from the Colorado Note.

8  Except to the extent that Wells Fargo agrees to a different treatment, the Colorado Note shall be

9  modified as follows:

10         1.      Principal Amount.  The Colorado Note shall have a principal amount equal to the

11  principal balance as of the Petition Date, plus all amounts that have accrued on the Colorado Note

12  through and including the Effective Date.

13         2.      Interest.  Simple interest shall accrue on the unpaid principal balance of the

14  Colorado Note at the rate of a 5.75% per annum.

15         3.      Payments.  The first monthly payment under the Colorado Note will be due on the

16  fifteenth (15th) day of the first calendar month following the Effective Date and will be in an

17  amount equal to (a) the interest accrued on the Colorado Note from the Effective Date through the

18  end of the calendar month in which the Effective Date occurs plus (b) principal calculated on the

19  basis of a 30-year amortization schedule.  Thereafter, until maturity, a monthly payment will be

20  due on the fifteenth (15th) day of each successive month in an amount equal to (a) the interest

21  accrued on the unpaid principal balance of the Colorado Note during the previous month plus (b)

22  an installment of principal calculated on the basis of a 30-year amortization schedule.

23         4.      Maturity.  The maturity date of the Colorado Note shall be extended, and the

24  Colorado Note will be due and payable in full on the last Business Day of the 180th calendar

25  month after the Effective Date.

26         5.      Pre-Payment.  At any time after the Effective Date, without penalty or premium,

27  the Colorado Note may be prepaid, in whole or in part, in the sole discretion of the Reorganized

28

1  Debtors provided, however, that pre-payment cannot act to impact payments due to the Creditors'

2  Trust.

3        6.        Retention of Collateral.  Except to the extent inconsistent herewith or with the law,

4  the validity and priority of the security interest securing the Colorado Note shall remain in full

5  force and effect following the Effective Date.

6        To the extent that a Creditor in Class 1B-1 does not hold an Allowed Secured Claim, such

7  Claim, if it becomes an Allowed Claim, shall be included in Class 3.

8      **Class 1B-1 is impaired under the Plan.**

9        *(b)*      Class 1B-2: the Hawaii Note

10  Class 1B-2 consists of the Secured Claims of Wells Fargo arising from the Hawaii Note.

11  Except to the extent that Wells Fargo agrees to a different treatment, the Hawaii Note shall be

12  modified as follows:

13       1.        Principal Amount.  The Hawaii Note shall have a principal amount equal to $3.7

14  million.

15       2.        Interest.  Simple interest shall accrue on the unpaid principal balance of the Hawaii

16  Note at the rate of a 6.25% per annum.

17       3.        Payments.  The first monthly payments under the Hawaii Note will be due on the

18  fifteenth (15th) day of the first calendar month following the Effective Date and will be in an

19  amount equal to (a) the interest accrued on the Hawaii Note from the Effective Date through the

20  end of the calendar month in which the Effective Date occurs plus (b) principal calculated on the

21  basis of a 30-year amortization schedule.  Thereafter, until maturity, a monthly payment will be

22  due on the fifteenth (15th) day of each successive month in an amount equal to (a) the interest

23  accrued on the unpaid principal balance of the Hawaii Note during the previous month plus (b) an

24  installment of principal calculated on the basis of a 30-year amortization schedule.

25       4.        Maturity.  The maturity date of the Hawaii Note shall be extended, and the Hawaii

26  Note will be due and payable in full on the last Business Day of the 240th calendar month after the

27  Effective Date.

28

5.    <u>Pre-Payment</u>. At any time after the Effective Date, without penalty or premium, the Hawaii Note may be prepaid, in whole or in part, in the sole discretion of the Reorganized Debtors provided, however, that pre-payment cannot act to impact payments due to the Creditors' Trust.

6.    <u>Retention of Collateral</u>. Except to the extent inconsistent herewith or with the law, the validity and priority of the security interest securing the Hawaii Note shall remain in full force and effect following the Effective Date.

To the extent that a Creditor in Class 1B-2 does not hold an Allowed Secured Claim, such Claim, if it becomes an Allowed Claim, shall be included in Class 3.

**Class 1B-2 is impaired under the Plan.**

**C.    Class 1C ~ Secured Claims of National Bank**

Class 1C consists of all Secured Claims of National Bank.

Except to the extent that the holder of an Allowed Secured Claim in Class 1C agrees to a different treatment, the holder of the Allowed Secured Claim in Class 1C shall, at the sole election of the Debtors (made prior to the Effective Date), receive one of the following treatments: (i) the legal, equitable and contractual rights to which the holder of such Allowed Secured Claim is entitled shall remain unaltered; or (ii) the Debtors shall surrender to the holder of the Allowed Secured Claim such property of the applicable Estate as may be security and collateral for its Claim.

To the extent that a Creditor in Class 1C does not hold an Allowed Secured Claim, such Claim, if it becomes an Allowed Claim, shall be included in Class 3.

**Class 1C is unimpaired under the Plan.**

**D.    Class 1D ~ Secured Claims of Robbins**

Class 1D consists of all Secured Claims of Robbins.

Robbins shall receive the following treatment on account of her Allowed Secured Claims:

1.    <u>Principal Amount</u>. The principal amount to be paid to Robbins under the Plan shall be $4,830,000.

1    2.    <u>Interest</u>. Simple interest shall accrue on the unpaid principal balance owed to

2    Robbins at the rate of 7.5% per annum.

3    3.    <u>Payments</u>. Payments to Robbins shall be made on a monthly basis commencing on

4    the Effective Date, based on the following schedule:

| <u>Year</u> | <u>Annual Payment Amount</u> |
|---|---|
| Year 1 | $1,000,000 |
| Year 2 | $1,200,000 |
| Year 3 | $1,200,000 |
| Year 4 | $1,200,000 |
| Year 5 | Approximately $1,251,481 (remaining balance of the Robbins Secured Claim) |

12    Robbins shall receive monthly payments of $30,187.50 on the fifteenth (15th) day of the

13    first and second calendar month following the Effective Date.  Robbins shall receive monthly

14    payments of $93,962.50 on the fifteenth (15th) day of the third through twelfth calendar months

15    following the Effective Date.  Thereafter, until maturity, a monthly payment of $100,000.00 will

16    be due on the fifteenth (15th) day of each successive month until month 60, when Robbins shall

17    receive a final payment of $151,481.04.  In the event that payments for a particular month are

18    insufficient to pay the accrued interest for the current month, the excess accrued interest shall be

19    added to the principal amount owed to Robbins.

20    4.    <u>Maturity</u>. The maturity date of the Robbins obligation shall be the last Business

21    Day of the 60th calendar month after the Effective Date.

22    5.    <u>Pre-Payment</u>. At any time after the Effective Date, without penalty or premium,

23    the Robbins Allowed Secured Claim may be prepaid, in whole or in part, in the sole discretion of

24    the Reorganized Debtors.

25    6.    <u>Retention of Collateral</u>. Except to the extent inconsistent herewith or with the law,

26    the validity and priority of the security interest securing Robbins' Allowed Secured Claim shall

27    remain in full force and effect following the Effective Date.

28