1       To the extent that a Creditor in Class 1D does not hold an Allowed Secured Claim, such

2  Claim, if it becomes an Allowed Claim, shall be included in Class 3.

3       **Class 1D is impaired under the Plan.**

4  **E.**     **Class 1E – Secured Claims of Gus Gianulias**

5       Class 1E consists of all Secured Claims of Gus Gianulias.

6       Except to the extent that the holder of an Allowed Secured Claim in Class 1E agrees to a

7  different treatment, the holder of the Allowed Secured Claim in Class 1E shall, at the sole election

8  of the Debtors (made prior to the Effective Date), receive one of the following treatments: (i) the

9  legal, equitable and contractual rights to which the holder of such Allowed Secured Claim is

10  entitled shall remain unaltered; or (ii) the Debtors shall surrender to the holder of the Allowed

11  Secured Claim such property of the applicable Estate as may be security and collateral for its

12  Claim.

13       To the extent that a Creditor in Class 1E does not hold an Allowed Secured Claim, such

14  Claim, if it becomes an Allowed Claim, shall be included in Class 3.

15       **Class 1E is unimpaired under the Plan.**

16  **F.**     **Class 1F ~ Secured Claims of Countrywide**

17       Class 1F consists of all Secured Claims of Countrywide.

18       Except to the extent that Countrywide agrees to a different treatment, Countrywide's Note

19  shall be modified as follows:

20       1.     Principal Amount.  The Countrywide Note shall have a principal amount equal to

21  the principal balance as of the Petition Date, plus all amounts that have accrued on the

22  Countrywide Note through and including the Effective Date.

23       2.     Interest.  Simple interest shall accrue on the unpaid principal balance of the

24  Countrywide Note at the rate of 5.75% per annum.

25       3.     Payments.  The first monthly payment under the Countrywide Note will be due on

26  the fifteenth (15th) day of the first calendar month following the Effective Date and will be in an

27  amount equal to (a) the interest accrued on the Countrywide Note from the Effective Date through

28  the end of the calendar month in which the Effective Date occurs plus (b) principal calculated on

1  the basis of a 30-year amortization schedule.  Thereafter, until maturity, a monthly payment will

2  be due on the fifteenth (15th) day of each successive month in an amount equal to (a) the interest

3  accrued on the unpaid principal balance of the Countrywide Note during the previous month plus

4  (b) an installment of principal calculated on the basis of a 30-year amortization schedule.

5      4.    Maturity.  The maturity date of the Countrywide Note shall be extended, and the

6  Countrywide Note will be due and payable in full on the last Business Day of the 240th calendar

7  month after the Effective Date.

8      5.    Pre-Payment.  At any time after the Effective Date, without penalty or premium,

9  the Countrywide Note may be prepaid, in whole or in part, in the sole discretion of the

10  Reorganized Debtors provided, however, that pre-payment cannot act to impact payments due to

11  the Creditors' Trust.

12      6.    Retention of Collateral.  Except to the extent inconsistent herewith or with the law,

13  the validity and priority of the security interest securing the Countrywide Note shall remain in full

14  force and effect following the Effective Date.

15      To the extent that a Creditor in Class 1F does not hold an Allowed Secured Claim, such

16  Claim, if it becomes an Allowed Claim, shall be included in Class 3.

17  **Class 1F is impaired under the Plan.**

18  **G.**    **Class 1G ~ Secured Claims of Chase**

19      Class 1G consists of all Secured Claims of Chase.

20      To the extent that the Debtors continue to hold such property, the Debtors shall surrender

21  to the holder of the Allowed Secured Claim such property of the applicable Estate as may be

22  security and collateral for its Claim.

23      To the extent that a Creditor in Class 1G does not hold an Allowed Secured Claim, such

24  Claim, if it becomes an Allowed Claim, shall be included in Class 3.

25  **Class 1G is unimpaired under the Plan.**

26

27

28

1  **H.    Class 1H~ Other Secured Claims**

2    Class 1H consists of all Secured Claims not included in the Classes described above.  Each

3  holder of an Allowed Secured Claim in Class 1H shall be deemed to be a separate subclass of

4  Class 1H.

5    Except to the extent that the holder of an Allowed Secured Claim in Class 1H agrees to a

6  different treatment, the holder of the Allowed Secured Claim in Class 1H shall, at the sole election

7  of the Debtors (made prior to the Effective Date), receive one of the following treatments: (i) the

8  Allowed Secured Claim shall be cured and reinstated pursuant to section 1124(2) of the

9  Bankruptcy Code, and the Debtors shall fund all amounts and take all actions otherwise necessary

10 to reinstate such Allowed Secured Claim, on or prior to the tenth (10th) Business Day following

11 the Effective Date; or (ii) the legal, equitable and contractual rights to which the holder of such

12 Allowed Secured Claim is entitled shall remain unaltered.  Notwithstanding the foregoing,

13 alternatively, the Debtors may elect to satisfy an Allowed Secured Claim in Class 1H by one of

14 the following treatments: (x) the surrender to the holder of the Allowed Secured Claim of such

15 property of the applicable Estate as may be security and collateral for its Claim, or (y) the payment

16 in Cash of the amount of such Allowed Secured Claim, as set forth in the Confirmation Order or

17 other Final Order.

18    To the extent that the County of Riverside has a Secured Claim for real property taxes

19 under 11 U.S.C. § 506(b), any payment made to the County of Riverside upon the sale or transfer

20 of such real property will include all applicable state law interest under 11 U.S.C. § 511.  The

21 County of Riverside will retain any applicable lien until such Secured Claim is paid in full.  A

22 failure by the Debtors to make a payment based on a Secured Claim to the County of Riverside

23 pursuant to the terms of the Plan shall be an Event of Default.  If the Debtors fail to cure any such

24 Event of Default within ten (10) days after service of written notice of default from the County of

25 Riverside, then the County of Riverside may enforce the entire amount of its Secured Claim,

26 including all penalties and interest accrued under state law, against the applicable Debtor in

27 accordance with applicable state law remedies.

28

1    To the extent that a Creditor in Class 1H does not hold an Allowed Secured Claim, such

2  Claim, if it becomes an Allowed Claim, shall be included in Class 3.

3    **Class 1H is unimpaired under the Plan.**

4  **I.    Class 2 ~ Priority Claims**

5    Class 2 consists of all Allowed Priority Claims against the Debtors.  Class 2 does not

6  include any Priority Tax Claims, all of which shall be treated in accordance with section III.E of

7  the Plan.

8    Except to the extent that the holder of such Claim agrees to a different treatment, the

9  Debtors shall pay Cash on the Effective Date to each holder of an Allowed Claim in Class 2 the

10  amount of such Allowed Claim.

11    **Class 2 is unimpaired under the Plan.**

12  **J.    Class 3 ~ General Unsecured Claims**

13    Class 3 consists of all Allowed Claims against the Debtors (including Claims arising from

14  the rejection of executory contracts and/or unexpired leases) other than: (a) Administrative

15  Claims; (b) Priority Tax Claims; and (c) Claims included within any other Class designated in the

16  Plan.  Class 3 shall be deemed to include those Creditor(s) holding an alleged Secured Claim

17  against the Debtors for which: (i) no collateral exists to secure the alleged Secured Claim; and/or

18  (ii) liens, security interests, or other encumbrances that are senior in priority to the alleged Secured

19  Claim exceed the fair market value of the collateral securing such alleged Secured Claim as of the

20  Petition Date.

21    Due to the substantive consolidation of the Estates resulting from the Consolidation Order,

22  Creditors holding Allowed Claims against the Debtors will share the assets to be distributed by the

23  Creditors' Trust Trustee on a Pro Rata basis.  The holders of Allowed Claims in Class 3 shall

24  receive periodic payments from the Creditors' Trust, as and when determined by the Creditors'

25  Trust Trustee in accordance with and as provided by the Creditors' Trust Agreement.  Each holder

26  of an Allowed Claim in Class 3 shall receive the lesser of: (a) an amount equal to such Creditor's

27  Allowed Claim in Class 3, or (b) such Creditor's Pro Rata share of the available sum of monies to

28

1    be distributed to all holders of Allowed Claims in Class 3 from the Distribution Fund by the

2    Creditors' Trust.

3            The payments to be made by the Reorganized Debtors to the Creditors' Trust pursuant to

4    the Primary Note (including the proceeds of any recovery with respect to the Recovery Rights, to

5    the extent not otherwise utilized to pay Allowed Administrative Claims) and the Secondary Note

6    shall be the sole source of distributions to holders of Allowed Claims in Class 3.  Each Creditor

7    holding an Allowed Claim in Class 3 is entitled to a Pro Rata share of the Primary Note and the

8    Secondary Note.  The amount to be paid to a Creditor holding an Allowed Claim in Class 3 may

9    depend upon which of the following categories of Claims applies to a particular Creditor's Claim:

10   (1) the Creditors' Allowed Claim is asserted solely against the estate of Gianulias; (2) the

11   Creditors' Allowed Claim is asserted solely against the estate of Cameo; or (3) the Creditor has

12   valid, non-duplicative Allowed Claims against both the Gianulias and Cameo estates (for example,

13   a Creditor with enforceable guarantees issued by both Debtors).  The Creditors'.Trust Trustee will

14   determine the appropriate Pro Rata distributions for Creditors holding Allowed Claims in each of

15   the foregoing three categories of claims, and shall ensure that each distribution is not less than the

16   amount such a Creditor would have received absent the substantive consolidation of the Debtors'

17   estates.  The Creditors' Trust Trustee shall establish a sufficient reserve in Cash so that the

18   appropriate Pro Rata distributions to Creditors holding Claims in any of the foregoing three

19   categories of Claims, following the Claims objection process.

20           The Reorganized Debtors shall make payments to the Creditors' Trust Trustee from

21   Available Cash Flow for the benefit of holders of Allowed Claims in Class 3 under and pursuant

22   to the terms of the following notes:

23           •    The Primary Note, in the principal amount of $42 million, bearing interest

24                at a rate of 3.75% per annum, and with a maturity date of December 31,

25                2024, established in accordance with the terms set forth in section VII.G of

26                the Plan.

27

28

1    • The Secondary Note, in the principal amount of $5 million, which shall not

2    bear interest, and with a maturity date of December 31, 2025, established in

3    accordance with the terms set forth in section VII.I of the Plan.

4    The payments to be made to the Creditors' Trust by the Reorganized Debtors pursuant to

5 the Primary Note and the Secondary Note, and the proceeds of any recovery with respect to the

6 Recovery Rights (to the extent not otherwise utilized to pay Allowed Administrative Claims),

7 shall be the sole source of distributions to holders of Allowed Claims in Class 3.

8    **Class 3 is impaired under the Plan.**

9 **K.    Class 4 ~ Inter-Debtor Claims**

10    Class 4 consists of all Allowed Claims of any Debtor against the other Debtor.

11    Inter-Debtor Claims of Class 4 will continue to exist and will not be eliminated under the

12 Plan.  However, Allowed Inter-Debtor Claims shall be subordinated to all Allowed General

13 Unsecured Claims and shall not receive any distribution under the Plan.

14    **Class 4 is impaired under the Plan.**

15 **L.    Class 5 ~ Subordinated Claims**

16    Class 5 consists of all Allowed Subordinated Claims.

17    Holders of Allowed Subordinated Claims of Class 5 shall retain, unaltered, all legal,

18 equitable and contractual rights to which the holder of such Claim is entitled.

19    **Class 5 is unimpaired under the Plan.**

20 **M.    Class 6 ~ Interests**

21    Class 6 consists of all Interests.

22    Holders of Class 6 Interests in Cameo shall retain, unaltered, all legal, equitable and

23 contractual rights to which the holder of such Interest is entitled.  In addition, because Gianulias is

24 an individual, he is the Interest Holder with respect to his Estate.  As set forth in section VI.B of

25 the Plan, title to all assets, properties, and business operations of Gianulias and his Estate,

26 including his Interests in Cameo, shall revest in Gianulias as Reorganized Debtor.

27    **Class 6 is unimpaired under the Plan.**

28

# ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan shall be entitled to vote separately to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.  In the event no holder of an Allowed Claim in an impaired Class of Claims submits a Ballot accepting or rejecting the Plan, such Class of Claims shall be deemed to have voted to reject the Plan.

**A.** **Classes Entitled to Vote**

Classes 1C, 1E, 1G, 1H,  2, 5, and 6 are unimpaired Classes under the Plan and are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

Classes 1A, 1B-1, 1B-2, 1D, 1F, 3 and 4 are impaired Classes under this Plan and are entitled to vote to accept or reject this Plan.

**B.** **Non-Consensual Confirmation**

If a Class fails to accept this Plan by the statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Plan Proponents reserve the right to request the Bankruptcy Court to confirm this Plan as to such rejecting Class.

**C.** **Elimination of Vacant Classes**

Any Class of Claims that does not have a holder of an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date of commencement of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

# ARTICLE VII

## IMPLEMENTATION OF THE PLAN AND EXECUTION OF ITS TERMS

### A.    Implementation of Plan

The Debtors propose to implement and consummate the Plan through the means contemplated by sections 1123(a)(5)(A), (B), (D), (E) and (G), 1123(a)(8), 1123(b)(1), (b)(2), (b)(3)(A) and (B), (b)(4) and (b)(5), and 1145(a) of the Code.

### B.    The Reorganized Debtors and Revesting of Assets

Except as otherwise set forth herein, or as modified by appropriate corporate action after the Effective Date, the corporate structure and equity ownership of Cameo by Gianulias shall be unchanged.

On the Effective Date, title to all assets, claims, causes of action, properties, and business operations of the Debtors and of the Estates shall revest in each respective Reorganized Debtor, and thereafter, the Reorganized Debtors shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in the Plan.  From and after the Effective Date, except as otherwise described in this Plan, the Reorganized Debtors shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein. From and after the Effective Date, in accordance with the terms of this Plan and the Confirmation Order, the Reorganized Debtors shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with Article IX of the Plan.

### C.    The Disbursing Agent

The Reorganized Debtors shall serve as disbursing agents, without bond, for purposes of making transfers and payments under this Plan, except with respect to distributions to be made by the Creditors' Trust, for which the Creditors' Trust Trustee shall serve as the disbursing agent, without bond.

### D.    Management of the Reorganized Debtors

Following the Effective Date, Reorganized Debtor Gianulias will operate and manage his interest in Reorganized Debtor Cameo, and the business operations of Reorganized Debtor Cameo and its subsidiaries.

1.   <u>Funding of the Reorganized Debtors</u>.  During the first two years following the Effective Date, the Reorganized Debtors shall receive $1.8 million annually from the Cash distributed on account of the Portfolio, from which they will fund post-Effective Date expenses and operations.  Commencing in the third year following the Effective Date and continuing until such time as the Primary Note is paid in full, the Reorganized Debtors shall receive 40% of Available Cash Flow on a monthly basis.  If the Reorganized Debtors and the Creditors' Trust Trustee dispute the interpretation of or calculation of the Available Cash Flow, the parties shall use the Dispute Resolution Procedure to resolve the dispute.

Mesa Management, Inc. shall be entitled to compensation for its services related to the Portfolio Properties at the current management rate of 5.0% of actual gross collections with respect to the Portfolio Properties, of which 0.5% is contractually due and payable to Robert Lucas, until the Primary Note has been paid in full.  G Companies Management, Inc. shall not be entitled to receive any compensation or other fees with respect to the Portfolio Properties until the Primary Note has been paid in full.

2.   <u>Management of the Control Assets</u>.  The Debtors and the Committee will agree upon the Control Assets Budget as of the Confirmation Date.  Thereafter, so long as the aggregate expenses of the Control Assets in subsequent years are not more than 10% in excess of the prior year's aggregate expenses for the Control Assets, the Reorganized Debtors may continue to operate the Control Assets without obtaining any approvals from the Creditors' Trust Trustee.  If the annual aggregate expenses of the Control Assets are more than 10% in excess of the prior year's actual aggregate expenses with respect to the Control Assets, the Creditors' Trust Trustee and the Reorganized Debtors shall meet and confer regarding such additional expenses.  If the Reorganized Debtors and the Creditors' Trust Trustee are unable to agree upon such additional expenses, the parties shall use the Dispute Resolution Procedure to resolve the dispute.

3.   <u>The Portfolio</u>.  With respect to Portfolio Properties managed by the Reorganized Debtors, the Creditors' Trust Trustee shall have the right to review and provide input concerning (but shall not have any approval rights whatsoever), the annual budget for operation of each such property until the Primary Note is paid in full.  The Reorganized Debtors shall also provide the

1  Creditors' Trust Trustee with a comparison of the proposed annual budget for each of the Portfolio

2  Properties as compared to the prior year's actual aggregate expenses with respect to such property,

3  as and when such proposed annual budget is received by the Reorganized Debtors.

4        The Creditors' Trust Trustee shall be responsible for monitoring the performance under the

5  Plan including the right to request information from the Reorganized Debtors, no more frequently

6  than each calendar quarter, to verify that monthly rent collections and expenditures attributable to

7  the Portfolio are consistent with the annual budget discussed above.

8        4.   <u>Reporting to the Creditors' Trust Trustee</u>.  In order to keep the Creditors' Trust

9  Trustee informed of the financial status of the Portfolio, the Reorganized Debtors shall prepare

10  and deliver consolidated financial status reports to the Creditors' Trust Trustee, on a quarterly

11  basis.  Not later than thirty (30) days after the end of each calendar quarter after the Effective

12  Date, the Reorganized Debtors shall prepare and send to the Creditors' Trust Trustee a quarterly

13  consolidated financial status report for the Portfolio in substantially the form of the quarterly

14  reports provided to the Committee throughout the Cases, which shall include copies of the

15  quarterly balance sheets and income statements for the Portfolio.  Further reports shall be prepared

16  and sent to the Creditors' Trust Trustee thirty (30) days after the end of every calendar quarter

17  thereafter until the Primary Note has been paid in full.

18  **E.**    **<u>Transfer of the Recovery Rights to the Reorganized Debtors</u>**

19        Pursuant to Section 1123(b)(3) of the Code, all Recovery Rights of the Debtors and the

20  Estates, including but not limited to all Recovery Rights that could be brought under any of

21  Sections 362, 510, 542, 544, 545, 547, 548, 549, 550 and 553 of the Code and under applicable

22  non-bankruptcy law, shall be retained, owned and enforced by the Creditors' Trust Trustee and

23  may be pursued by the Creditors' Trust Trustee, at its option, after the Effective Date with like

24  manner and effect as if commenced prior to the Confirmation Date.  After the Payment of all

25  Allowed Administrative Claims in full, the Creditors' Trust shall receive 100% of the proceeds of

26  any recovery with respect to such Recovery Rights to fund the payments to General Unsecured

27  Creditors in accordance with the Plan.

28

**F.    The Creditors' Trust**

1.    <u>Purpose of the Creditors' Trust</u>.  The Creditors' Trust shall be deemed established on the Effective Date pursuant to the terms of the Creditors' Trust Agreement.  The purpose of the Creditors' Trust is to receive and disburse amounts due under the Plan to holders of Allowed Claims in Class 3 pursuant to the Plan.  The Creditors' Trust shall also be responsible for objecting to Claims in Class 3, if appropriate.

2.    <u>Payments to the Creditors' Trust by Reorganized Debtors</u>.  Payments shall be made by the Reorganized Debtors to the Creditors' Trust in accordance with the terms of the Primary Note, the Secondary Note and the Plan.

3.    <u>Management and Powers of the Creditors' Trust</u>.  After the Effective Date, the affairs of the Creditors' Trust and all assets held or controlled by the Creditors' Trust shall be managed under the direction of the Creditors' Trust Trustee in accordance with the terms of the Creditors' Trust Agreement.  The powers of the Creditors' Trust shall include: (a) the ability and authority to object to Claims in Class 3, and the ability to prosecute or settle such objections and defend claims and counterclaims asserted in connection therewith (including by way of asserting the Debtors' rights of recoupment, setoff or otherwise); (b) enforcing and collection upon Recovery Rights as set forth in Section VII.E of this Plan; (c) effecting distributions under the Plan to the holders of Allowed Claims in Class 3; (d) participation in any post-Confirmation Date motions to amend or modify the Plan or the Creditors' Trust Agreement, or appeals from the Confirmation Order as it relates to Class 3; and (e) participation in actions to enforce or interpret the Plan as it relates to Class 3.

If the holder of a Disputed Claim in Class 3 and the Creditors' Trust Trustee agree to a settlement of such holder's Disputed Claim for an amount not in excess of the face amount of such Disputed Claim, provided that the face amount of the Disputed Claim and the proposed settlement amount are less than $50,000, such Claim shall be deemed to be an Allowed Claim as of the Effective Date in an amount equal to the agreed settlement amount without need for further review or approval of the Court.  If the proposed settlement involves a Disputed Claim in Class 3 that was filed in a face amount greater than or equal to $50,000, or the proposed settlement amount is

1   greater than or equal to $50,000, then the Creditors' Trust Trustee shall provide notice of the

2   proposed settlement (with a 15-day period to object) to each of the members of the Committee (as

3   constituted on the Confirmation Date), the Office of the United States Trustee, and counsel for the

4   Reorganized Debtors.  If no objection is received by the Creditors' Trust Trustee within the 15-day

5   period, the settled Claim shall be deemed to be an Allowed Claim as of the Effective Date without

6   the need for further review or approval of the Court.  If an objection to a proposed settlement is

7   received within the 15-day period, the Creditors' Trust Trustee shall schedule a Court hearing to

8   resolve the objection.

9       4.      Establishment of Reserve.  Pursuant to the terms of the Creditors' Trust

10  Agreement, the Creditors' Trust Trustee shall maintain a reserve in trust for the payment of any

11  administrative expenses of the Creditors' Trust, taxes, and any Disputed Claims which later

12  become Allowed Claims.  No distributions shall be made on account of any Disputed Claims

13  unless and until such Claims become Allowed Claims as provided in the Creditors' Trust

14  Agreement.  The Creditors' Trust Trustee shall establish a sufficient reserve in Cash so that the

15  appropriate Pro Rata distributions to Creditors holding Allowed Claims can be made in

16  accordance with the Consolidation Order.

17      5.      Employment of Professionals.  The Creditors' Trust Trustee is authorized, without

18  further order of the Court, to employ such Entities, including professionals, as he/she/it may deem

19  necessary to enable him/her/it to perform his/her/its functions under the Plan, and the costs of such

20  employment and other expenditures shall be paid solely from assets transferred to, or payments

21  received by, the Creditors' Trust as provided in the Plan.  Such Entities shall be compensated and

22  reimbursed for their reasonable and necessary fees and out-of-pocket expenses on a monthly basis

23  from the Creditors' Trust without further notice, hearing or approval of the Court except as set

24  forth in the Creditors' Trust Agreement.

25      6.      Objections to Claims by the Creditors' Trust.  All objections to Disputed Claims in

26  Class 3 to be filed by the Creditors' Trust Trustee shall be filed with the Court and served upon the

27  holders of such Claims by the Claim Objection Deadline, except as extended by an agreement

28  between the claimant and the Creditors' Trust, or by order of the Court upon a motion filed by the

1   Creditors' Trust, with notice of such motion to be served upon the Office of the United States

2   Trustee and those holders of Disputed Claims to whom the objection is made.  If an objection has

3   not been filed to a proof of claim that relates to a Disputed Claim by the objection bar dates

4   established in this paragraph, the Claim to which the proof of claim relates shall be treated as an

5   Allowed Claim for purposes of distribution under the Plan.

6       7.    Distributions.  Distributions by the Creditors' Trust Trustee shall be made in

7   accordance with the Plan, the Confirmation Order, and the Creditors' Trust Agreement.

8           (a)    *Reserve for Unpaid Claims.*  For purposes of calculating Pro Rata

9   distributions or any other distributions to be made under the Plan to holders of Allowed Claims,

10  the calculation of the total Allowed Claims shall be computed as if all Disputed Claims then

11  pending were allowed in the full amount thereof.

12          (b)    *Allowance of Claims.*  Distributions shall be made with respect to any

13  Disputed Claim which becomes an Allowed Claim after the Effective Date on or as soon as

14  practicable after the date on which each Disputed Claim becomes an Allowed Claim.  The amount

15  of any distribution shall be calculated, on a Pro Rata basis, so that each Disputed Claim that

16  becomes an Allowed Claim receives an initial distribution equal to the total percentage

17  distributions made prior to the date of such allowance on account of other Allowed Claims under

18  the Plan and the Creditors' Trust Agreement.

19          (c)    *Initial Distribution Date.*  Except for payments required to be made on the

20  Effective Date in accordance with other sections of the Plan, and subject to the discretion of the

21  Creditors' Trust Trustee, on the third anniversary of the Effective Date, or as soon as practicable

22  thereafter, the Creditors' Trust Trustee shall distribute any property required to be distributed

23  under the Plan (and in accordance with Creditors' Trust Agreement) to the holders of Allowed

24  Claims in Class 3.

25          (d)    *Subsequent Distribution Dates.*  After the Initial Distribution Date, unless

26  otherwise directed in a post-Confirmation Date Final Order, the Creditors' Trust Trustee shall

27  make additional bi-annual distributions to the holders of Allowed Claims in Class 3, provided that

28  in the reasonable discretion and judgment of the Creditors' Trust Trustee, there shall be in the

1  Creditors' Trust Cash in an amount sufficient to render feasible a distribution after making

2  reasonable reserves to pay the expenses (including, but not limited to, federal income taxes and

3  withholding taxes, if any, and all expenses and fees incurred in objecting to Claims), debts,

4  charges, liabilities, and obligations of the Creditors' Trust, and provided that each distribution to a

5  single Creditor must exceed $25.00.  Any bi-annual distribution which is less than $25.00 shall be

6  withheld and carried-over to the next period only once; thereafter, the distribution shall be made

7  notwithstanding the fact that it may be less than $25.00.

8         (e)     *Unclaimed Property*.  Until the expiration of one (1) year following the date

9  on which the distribution of the Unclaimed Property has been attempted, Unclaimed Property shall

10 be delivered upon presentation of proper proof by a holder of its entitlement thereto, after which

11 time any holder of an Allowed Claim entitled to Unclaimed Property shall cease to be entitled

12 thereto.  Thereafter, all right, title and interest therein shall vest in the Creditors' Trust for

13 redistribution in the order and priority established in the Plan and the Creditors' Trust Agreement.

14        (f)     *Surrender*.  Notwithstanding any other provision of the Plan, no holder of

15 an Allowed Claim shall receive any distribution under the Plan in respect of such Allowed Claim

16 until such holder has surrendered to the Creditors' Trust any promissory note or other document(s)

17 evidencing such Allowed Claim, or until evidence of loss and indemnity satisfactory to the

18 Creditors' Trust Trustee, in his/her/its sole and absolute discretion, shall have been delivered to

19 the Creditors' Trust in the case of any note or other document(s) alleged to be lost, stolen or

20 destroyed.

21        (g)     *Final Distribution*.  Upon resolution of all outstanding objections to

22 Disputed Claims in Class 3, and after all payments to be made by the Reorganized Debtors to the

23 Creditors' Trust required by the Plan have been received by the Creditors' Trust, and after the

24 payment of all expenses and other obligations of the Creditors' Trust, the Creditors' Trust shall

25 cause the Pro Rata distribution of all remaining available assets of the Creditors' Trust to holders

26 of Allowed Claims in Class 3 in accordance with the Plan.

27        (h)     *Exemption From Certain Transfer Taxes*.  Pursuant to section 1146(c) of

28 the Code, the issuance, transfer or exchange of a security, or the making or delivery of an

1   instrument of transfer under a plan confirmed under section 1129 of the Code, may not be taxed

2   under any law imposing a stamp tax, transfer tax or similar tax.  Pursuant to section 1146(c) of the

3   Code, no transfer to or from the Creditors' Trust under the Plan, shall be subject to any stamp tax,

4   transfer tax or similar tax.

5         (i)    *Estimation of Unliquidated Disputed Claims*.  As to any unliquidated

6   Disputed Claim, including Claims based upon rejection of executory contracts or leases, or other

7   Disputed Claims, the Court, upon motion by the Creditors' Trust, may estimate the amount of the

8   Disputed Claim and may determine an amount sufficient to reserve for any such Claim.  Any

9   Entity whose Disputed Claim is so estimated shall have recourse only against the Creditors' Trust

10   and against no other assets or person (including the Creditors' Trust Trustee), and in any case only

11   in an amount not to exceed the estimated amount of such Entity's Claim, even if such Entity's

12   Claim, as finally allowed, exceeds the maximum estimated amount thereof.

13   **G.**    **The Primary Note**

14         The following is a summary of the material terms of the Primary Note:

15         1.    Principal Amount to be Paid.  The total principal amount to be paid to the

16   Creditors' Trust under the Primary Note shall be $42 million.

17         2.    Interest.  Simple interest shall accrue on the unpaid principal balance owed to the

18   Creditors' Trust at the rate of 3.75% per annum, commencing on the Effective Date.  Interest

19   accruing but not paid during the two year period immediately following the Effective Date will be

20   capitalized and included in the recalculated principal as of the second anniversary of the Effective

21   Date.

22         3.    Payments.  Payments to the Creditors' Trust Trustee shall be made on a monthly

23   basis from Available Cash Flow, commencing on the Effective Date.  Thereafter, until maturity, a

24   monthly payment will be due on the fifteenth (15th) day of each calendar month and will be in an

25   amount equal to 60% of the Available Cash Flow of the prior calendar month.  Commencing in the

26   third year following the Effective Date and continuing until such time as the Primary Note is paid

27   in full, the Reorganized Debtors shall receive 40% of Available Cash Flow on a monthly basis.  In

28

1  addition, the Creditors' Trust shall receive 100% the proceeds of any recovery with respect to the

2  Recovery Rights, to the extent not otherwise utilized to pay Allowed Administrative Claims.

3       4.    <u>Maturity</u>.  The maturity date of the Primary Note is December 31, 2024.

4       5.    <u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium,

5  the obligation owed to the Creditors' Trust under the Primary Note may be prepaid, in whole or in

6  part, in the sole discretion of the Reorganized Debtors; *provided, however*, that the Creditors'

7  Trust must have received, at the time of the payment of the Primary Note, payments in an amount

8  equaling at least $52 million on account of the Primary Note.

9       6.    <u>Inconsistency</u>.  If there is any inconsistency between this Plan and the Primary

10  Note, the terms of the Primary Note will control.

11       7.    <u>Collateral</u>.  The Primary Note shall be secured by the Creditors' Trust Lien.

12       8.    <u>Negative Pledge</u>.  The Reorganized Debtors shall also grant to the Creditors' Trust

13  the Negative Pledge not to encumber the Portfolio absent the consent of the Creditors' Trust

14  Trustee.

15  **H.    The Creditors' Trust Lien**

16       The Primary Note shall be secured by a first priority lien on the Portfolio; *provided,*

17  *however*, that the Creditors' Trust Lien shall not prime or take priority over any tax liability that is

18  generated as the result of the sale of any of the assets in the Portfolio, or any of the Portfolio

19  Properties.

20       Notwithstanding the Creditors' Trust Lien, the Reorganized Debtors may sell any asset in

21  the Portfolio without the consent of the Creditors' Trust Trustee so long as the net proceeds of any

22  such sale are included in Available Cash Flow.  For the avoidance of doubt, any of the Portfolio

23  Properties may be sold without the consent of the Creditors' Trust Trustee, provided that the net

24  proceeds of any such sale received by the Reorganized Debtors shall be included in Available

25  Cash Flow.  In conjunction with the sale of any asset in the Portfolio, the Creditors' Trust Trustee

26  shall release the Creditors' Trust Lien.  In the event of a dispute between the Reorganized Debtors

27  and the Creditors' Trust Trustee concerning the sale of any of the assets in the Portfolio or any of

28

1    the Portfolio Properties, the parties shall use the Dispute Resolution Procedure to resolve the

2    dispute.

3         **Notwithstanding anything to the contrary in any note, operating agreement, or**

4    **executory contract to which the Reorganized Debtors or an Entity owned in whole or in part**

5    **by the Reorganized Debtors is a party, the granting of the Creditors' Trust Lien**

6    **encumbering the Portfolio shall not cause a default in any note, operating agreement or**

7    **executory contract to which the Reorganized Debtors or an Entity owned in whole or in part**

8    **by the Reorganized Debtors is a party.**

9         The Creditors' Trust Lien shall cease and be of no force or effect upon (i) the payment in

10    full of the Primary Note or (ii) with respect to any asset in the Portfolio, upon the sale of such

11    asset, so long as the net proceeds of any such sale (net of all taxes associated with such sale) are

12    included in Available Cash Flow.

13    **I.**      **The Negative Pledge**

14         The Reorganized Debtors shall grant to the Creditors' Trust the Negative Pledge, pursuant

15    to which the Reorganized Debtors will agree not to encumber the Portfolio absent the consent of

16    the Creditors' Trust Trustee, which consent will not be unreasonably withheld.

17         Notwithstanding the Negative Pledge, the Reorganized Debtors may sell any asset in the

18    Portfolio without the consent of the Creditors' Trust Trustee so long as the net proceeds of any

19    such sale are included in Available Cash Flow. For the avoidance of doubt, any of the Portfolio

20    Properties may be sold without the consent of the Creditors' Trust Trustee, provided that the net

21    proceeds of any such sale received by the Reorganized Debtors shall be included in Available

22    Cash Flow. In conjunction with the sale of any asset in the Portfolio, the Creditors' Trust Trustee

23    shall release the Negative Pledge. In the event of a dispute between the Reorganized Debtors and

24    the Creditors' Trust Trustee concerning the sale of any of the assets in the Portfolio or any of the

25    Portfolio Properties, the parties shall use the Dispute Resolution Procedure to resolve the dispute.

26         **Notwithstanding anything to the contrary in any note, operating agreement, or**

27    **executory contract to which the Reorganized Debtors or an Entity owned in whole or in part**

28    **by the Reorganized Debtors is a party, the granting of the Negative Pledge as an**

encumbrance on the Portfolio shall not cause a default in any note, operating agreement or executory contract to which the Reorganized Debtors or an Entity owned in whole or in part by the Reorganized Debtors is a party.

The Negative Pledge shall cease and be of no force or effect upon the payment in full of the Primary Note.

**J.    The Secondary Note**

The following is a summary of the material terms of the Secondary Note:

1.    Total Amount to be Paid. The total amount to be paid to the Creditors' Trust under the Secondary Note shall be $5.0 million.

2.    Interest. The Secondary Note shall not bear interest.

3.    Maturity. The maturity date of the Secondary Note is December 31, 2025.

4.    Pre-Payment. At any time after the Effective Date, without penalty or premium, the Secondary Note may be prepaid, in whole or in part, in the sole discretion of the Reorganized Debtors.

**K.    Dispute Resolution Procedure**

1.    Matters to be Resolved through the Dispute Resolution Procedure. The Debtors and the Committee have agreed to use the Dispute Resolution Procedures to resolve any disputes arising between the Debtors and the Committee or the Reorganized Debtors and the Creditors' Trust in connection with the terms or implementation of the Term Sheet, including but not limited to the following matters:

- any dispute concerning the terms or interpretation of the Term Sheet,
- any dispute relating to a default under the Primary Note, the Secondary Note, the Creditors' Trust Lien, the Plan or other related documents, including the alleged failure to make a payment due with respect to the Primary Note;
- any dispute concerning expenses in excess of the Control Assets Budget;
- any issue relating to the definition or calculation of Available Cash Flow not otherwise addressed in the Plan or the Term Sheet; and

- any dispute with respect to the Creditors' Trust Lien and/or the Negative Pledge concerning the sale of any of the assets in the Portfolio or any of the Portfolio Properties.

2.      Dispute Resolution Procedures.  The following procedures shall govern any dispute resolved pursuant to this section of the Plan:

- The complaining party shall provide written notice of the dispute to the opposing party and allow the opposing party seven (7) Business Days to respond and cure any default.  Notice shall be presumed to occur upon transmission of said notice by expedited means (email, facsimile or overnight mail).

- If the dispute is not resolved within seven (7) Business Days, or if the opposing party contests the assertion that they are in default, the complaining party shall provide written notice to the Mediator of the dispute.

- The parties and the Mediator shall mutually agree on a date for a mediation, which shall occur within 60 calendar days of the complaining party providing notice to the Mediator of the dispute, or as soon thereafter as practicable based on the Mediator's availability.

- Each party will prepare a list of individuals to attend the mediation and a one-page summary summarizing the dispute to submit to the Mediator no later than three (3) Business Days prior to the mediation.

- Each party may, but is not obligated to, prepare a mediation brief in support of its position.  Absent mutual agreement, briefs may not exceed five (5) pages in length.  Briefs shall be submitted to the Mediator no later than three (3) Business Days prior to the mediation.  If briefs are prepared, they shall be exchanged at the mediation.

- The Mediator shall attempt to resolve the dispute through mediation.

- If the parties fail to resolve the dispute through the mediation, the parties may submit a reply to the mediation briefs exchanged at the mediation. Absent mutual agreement, such reply briefs may not exceed five (5) pages in length. Such reply briefs should be submitted to the Mediator no later than ten (10) calendar days after the mediation.

- The Mediator shall then resolve the dispute without further input from the disputing parties, provided, however, that the Mediator may, at his/her discretion, request that the parties provide additional information or conduct further mediations.

- The decision of the Mediator shall be a final, binding resolution on all parties.

3.    <u>Defaults by the Reorganized Debtors</u>.  To the extent that the Reorganized Debtors contest that they are in default under the Primary Note, the Secondary Note, the Creditors' Trust Lien, the Plan or other related documents, the Reorganized Debtors shall not be deemed to be in default unless and until the Reorganized Debtors are found to be in default by the Mediator.  After a determination by the Mediator that the Reorganized Debtors are in default, the Reorganized Debtors shall have seven (7) calendar days to cure such default.  If the Reorganized Debtors fail to do so, the Reorganized Debtors shall not be permitted to receive the 40% of Available Cash Flow allocated to the Reorganized Debtors unless and until said default is cured and the Creditors' Trust shall be entitled to take any and all actions it deems appropriate to enforce its rights.

4.    <u>Attorneys' Fees</u>.  The prevailing party to a dispute resolved under the Dispute Resolution Procedures is entitled to recover reasonable attorneys' fees incurred in connection with the resolution of such dispute.

L.    **<u>Settlement with US Bank</u>**

The effectiveness of the Plan shall automatically, and without the necessity of further notice or hearing approve for all purposes, the following settlement between the Debtors and US Bank (the real party in interest to the two adversary proceedings commenced by and all proofs of claim filed by California National Bank ("Cal National")).  To the extent that this Court has not

1   entered a separate order approving settlement with US Bank prior to Confirmation, US Bank will

2   be entitled to a General Unsecured Claim of $23.5 million against each of the Debtors in full and

3   final settlement and satisfaction of the two adversary proceedings commenced by Cal National and

4   all proofs of claim filed by Cal National against the Debtors.  The two adversary proceedings

5   commenced by Cal National against Gianulias will be dismissed upon entry of the Confirmation

6   Order.

7                           **ARTICLE VIII**

8           **POST-CONFIRMATION OBJECTIONS; ESTIMATION OF CLAIMS**

9           The Reorganized Debtors and the Creditors' Trust Trustee (with respect to General

10  Unsecured Claims) shall have the right and standing to (i) object to and contest the allowance of

11  any Disputed Claim by means of objections to Claims, and (ii) compromise and settle such

12  objections to Disputed Claims.  The Reorganized Debtors and the Creditors' Trust Trustee may

13  litigate to Final Order objections to Disputed Claims.

14          All objections to Claims shall be filed with the Court and served upon the holders of such

15  Claims no later than the Claim Objection Deadline, except as extended by an agreement between

16  the claimant and the Reorganized Debtors and/or the Creditors' Trust Trustee, or by order of the

17  Court upon a motion filed prior to the Claim Objection Deadline, with notice of such motion to be

18  served upon the Office of the United States Trustee and those holders of Disputed Claims to which

19  the objection is made.

20          On the Effective Date, without further action, the Creditors' Trust Trustee shall be

21  substituted in as the real party in interest for the Debtors and/or the Committee in any and all

22  objections to General Unsecured Claims filed prior to the Effective Date.  The Creditors' Trust

23  Trustee shall have the authority, in accordance with the Plan, the Confirmation Order, and the

24  Creditors' Trust, to settle and/or prosecute all objections to General Unsecured Claims.

25          If an objection has not been filed to a proof of claim that relates to a Disputed Claim by the

26  Claim Objection Deadline, the Claim to which the proof of claim relates shall be treated as an

27  Allowed Claim for purposes of distribution under the Plan.

28

DEBTORS' FIRST AMENDED PLAN OF
REORGANIZATION                                    - 43 -

1    The Reorganized Debtors or the Creditors' Trust Trustee (with respect to General

2    Unsecured Claims) may at any time, request that the Court estimate any Disputed Claim pursuant

3    to section 502(c) of the Bankruptcy Code regardless of whether the Debtors, the Reorganized

4    Debtors or the Creditors' Trust Trustee have previously objected to such Claim.  The Court will

5    retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any

6    objection to such Claim.  In the event that the Court estimates any Disputed Claim, such estimated

7    amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a

8    reserve is to be calculated for purposes of any reserve requirement to the Plan, or (c) a maximum

9    limitation on such Claim, as determined by the Court.  If the estimated amount constitutes a

10    maximum limitation on such Claim, the Debtors, the Reorganized Debtors or the Creditors' Trust

11    Trustee as the case may be, may elect to object to ultimate payment of such Claim.  All of the

12    aforementioned Claims objection, estimation and resolution procedures are cumulative and not

13    necessarily exclusive of one another.

14    **ARTICLE IX**

15    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

16    A.    **Executory Contracts and Unexpired Leases to be Assumed**

17    All executory contracts and unexpired leases of the Debtors set forth in Exhibit "2" hereto

18    shall be assumed pursuant to the provisions of sections 365 and 1123 of the Code.  Such assumed

19    executory contracts and unexpired leases shall, as of the Effective Date, vest in the corresponding

20    Reorganized Debtor.  The Debtors reserve the right to remove any of the contracts or leases

21    specified in Exhibit "2" from the list of assumed contracts and leases, in their discretion, thereby

22    causing the rejection of such contract or lease pursuant to section IX.C of the Plan, by filing a

23    written election prior to the Confirmation Hearing and serving such election on the parties to such

24    contract or lease.

25    B.    **Cure Amounts**

26    Amounts due under section 365(b)(1)(A) of the Code with respect to any executory

27    contract or unexpired lease assumed pursuant to section IX.A hereof shall be paid by the

28    Reorganized Debtors in full, in Cash, on the Effective Date (except for amounts due under any

1    contracts and leases that were assumed by the Debtors prior to the Confirmation Date, which

2    amounts shall be paid in accordance with the Court's order(s) authorizing such assumption -- any

3    unpaid obligations to cure arrearages under such contracts or leases over time shall become

4    obligations of the Reorganized Debtors if they have not otherwise been paid or assigned to a third

5    party prior to the Effective Date); provided, however, that as to any disputed portion of such cure

6    amounts, payment shall be made on or as soon as practicable after such disputed portion is

7    resolved by Final Order.

8    **C.    Rejection of All Other Executory Contracts**

9        All executory contracts and unexpired leases of the Debtors other than those described in

10    section IX.A hereof are deemed rejected pursuant to the Plan and the Confirmation Order.

11    **D.    No Effect on Insurance**

12        To the extent possible, and without impacting the existing coverage under the Insurance

13    Policies, the rejection of executory contracts shall not apply to, and shall have no effect upon, the

14    Insurance Policies.

15    **E.    Pension Plan**

16        Cameo maintains a single-employer defined benefit pension plan for the benefit of its

17    employees, namely the Cameo Homes Defined Benefit Pension Plan (the "Pension Plan").  The

18    Pension Plan is covered by the pension plan termination insurance program administered by the

19    Pension Benefit Guaranty Corporation ("PBGC") under Title IV of the Employee Retirement

20    Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1301-1461 (2006).

21        Cameo and all members of its controlled group are obligated to pay the contributions

22    necessary to satisfy the minimum funding standards under section 412 of the Internal Revenue

23    Code ("IRC") and section 302 of ERISA. 26 U.S.C. § 412(c)(11), 29 U.S.C. § 1082(c)(11).

24        The Pension Plan may be terminated only if the statutory requirements of either ERISA

25    section 4041, 29 U.S.C. § 1341 or ERISA section 4042, 29 U.S.C. § 1342, are met.  In the event of

26    a termination of the Pension Plan, Cameo and all members of its controlled group are jointly and

27    severally liable for the unfunded benefit liabilities of the Pension Plan.  See 29 U.S.C. § 1362(a).

28    Cameo and all members of its controlled group are also jointly and severally liable to PBGC for

1  all unpaid premium obligations owed by Cameo on account of the Pension Plan. <u>See</u> 29 U.S.C. §

2  1307.

3       PBGC has filed an estimated contingent claim of $56,474 in the Cases against each Debtor

4  for unfunded benefit liabilities owed to the Pension Plan.  PBGC has also filed an unliquidated

5  claim for statutory premiums owed to PBGC and an estimated claim in the amount of $145,158

6  for minimum funding contributions owed to the Pension Plan.

7       Pursuant to the Plan, it is Cameo's intention to complete a standard termination of the

8  Pension Plan pursuant to 29 U.S.C § 1341.  If Cameo is unable to complete a standard termination

9  prior to emergence from bankruptcy, the Debtors shall assume and continue the Pension Plan,

10 satisfy the minimum funding standards pursuant to 26 U.S.C §§ 412, 430, and 29 U.S.C. § 1082,

11 and administer the Pension Plan in accordance with the provisions of ERISA.

12      Nothing in the Plan shall be construed as discharging, releasing or relieving the Debtors or

13 the Debtors' successors, including the Reorganized Debtors, or any party, in any capacity, from

14 any liability imposed under any law or regulatory provision with respect to the Pension Plan or

15 PBGC.  The PBGC and the Pension Plan shall not be enjoined or precluded from seeking to

16 enforce such liability as a result of any provision of the Plan or the Confirmation Order.

17 **ARTICLE X**

18 **CONDITIONS TO CONSUMMATION**

19 A.    <u>**Conditions to Consummation**</u>

20      The following are conditions precedent to the occurrence of the Effective Date, each of

21 which must be (a) satisfied, or (b) waived by the Plan Proponents and the Committee:

22      1.    The Confirmation Order, entered in a form reasonably acceptable to the Plan

23 Proponents and the Committee, must have become a Final Order;

24      2.    No request for revocation of the Confirmation Order under section 1144 of the

25 Bankruptcy Code shall have been made, or, if made, shall remain pending; and

26      3.    All actions, documents and agreements necessary to implement the Plan shall have

27 been effectuated or executed.

28

1  **B.      Waiver of Conditions**

2       Each of the conditions set forth above may be waived in whole or in part by the Plan

3  Proponents and the Committee in their sole and absolute discretion, without any notice to parties

4  in interests or the Bankruptcy Court, and without a hearing.  The Plan Proponents' waiver of any

5  one condition shall not be deemed a waiver of any other condition.

6                              **ARTICLE XI**

7                         **EFFECT OF CONFIRMATION**

8  **A.      Jurisdiction of Bankruptcy Court**

9       Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtors,

10  their assets and their Estates.  Thereafter, jurisdiction of the Bankruptcy Court over the Debtors,

11  their assets and their Estates shall be limited to the subject matters set forth in Article XII of this

12  Plan.

13  **B.      Binding Effect**

14       Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the

15  Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest

16  in the Debtors and such holder's respective successors and assigns, whether or not the Claim or

17  Interest of such holder is impaired under the Plan and whether or not such holder has accepted the

18  Plan.

19  **C.      Exculpation**

20       **The Committee (solely with respect to its conduct as a committee and not with respect**

21  **to the actions of its members as individual creditors), or any of its respective present**

22  **members and their representatives, Professionals, advisors, attorneys, financial advisors,**

23  **investment bankers or agents (solely with respect to each member's conduct in furtherance**

24  **of its, his, or her duties as a member of the Committee, and not with respect to the actions of**

25  **such members as individual creditors), the Debtors and their representatives, Professionals,**

26  **advisors, attorneys, investment bankers, officers, directors or agents, and the Financial**

27  **Advisors shall neither have nor incur, and are hereby released from, any Claim, obligation,**

28  **cause of action or liability to one another or to any holder of a Claim or an Interest, or any**

1    other party in interest, or any of its members, representatives, advisors, attorneys, financial

2    advisors, investment bankers, agents, or affiliates, or any of its successors or assigns, for any

3    act or omission in connection with, relating to, or arising out of, these Cases, the pursuit of

4    Confirmation of the Plan, the consummation of this Plan, or the administration of this Plan

5    or the property to be distributed under the Plan, except for (i) claims which arise or relate to

6    actions or omissions occurring prepetition, and (ii) willful misconduct or gross negligence at

7    any time.  In all respects the Committee and/or the Debtors shall be entitled to reasonably

8    rely upon the advice of counsel with respect to their duties and responsibilities under the

9    Plan.

10   D.      **Injunctive Relief**

11           Notwithstanding anything to the contrary in any note, operating agreement, or

12   executory contract to which the Reorganized Debtors or an Entity owned in whole or in part

13   by the Reorganized Debtors is a party, all Persons shall be precluded from asserting and

14   shall be permanently enjoined from commencing any action or proceeding (whether directly,

15   indirectly, derivatively or otherwise) against the Reorganized Debtors or an Entity owned in

16   whole or in part by the Reorganized Debtors based upon an alleged default in any note,

17   operating agreement or executory contract to which the Reorganized Debtors or an Entity

18   owned in whole or in part by the Reorganized Debtors is a party resulting from the granting

19   of the Creditors' Trust Lien and/or the Negative Pledge as an encumbrance on the Portfolio.

20   E.      **Waiver of Rights Under Section 1127(e) of the Bankruptcy Code**

21           In exchange for the consideration to be provided to the Creditors' Trust for the

22   benefit of holders of Allowed General Unsecured Claims under the Plan, the right of any

23   holder of a General Unsecured Claim to seek to modify the Plan pursuant to section 1127(e)

24   of the Bankruptcy Code is waived.

25

26

27

28

1

## ARTICLE XII

2

## JURISDICTION

3  **A.    Retention of Jurisdiction**

4         Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective

5  Date, the Court shall retain, after the Effective Date, exclusive jurisdiction of all matters arising

6  out of, arising in or related to, these Cases, except with respect to those matters which shall be

7  resolved through the Dispute Resolution Procedure, to the fullest extent permitted by applicable

8  law, including, without limitation, jurisdiction to:

9         1.    Allowance of Claims or Interests

10        The Court shall retain jurisdiction to allowed, disallow, determine, liquidate, classify,

11  estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether

12  filed before or after the Effective Date and whether or not contingent, disputed or unliquidated),

13  including the compromise, settlement and resolution of any request for payment of any

14  Administrative Claim or Priority Claim, the resolution of any objections to the allowance or

15  priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to

16  reinstate a Claim pursuant to this Plan, and to hear and determine any other issue presented hereby

17  or arising hereunder, including during the pendency of any appeal relating to any objection to such

18  Claim or Interest (to the extent permitted under applicable law).

19        2.    Executory Contract Proceedings

20        The Court shall retain jurisdiction to act with respect to proceedings regarding the rejection

21  of any executory contract or unexpired lease of a Debtor pursuant to sections 365 and 1123 of the

22  Bankruptcy Code and Article IX of this Plan, and to determine the allowance and proper

23  classification of any Claims arising from the resolution of any such proceedings.

24        3.    Plan Interpretation

25        The Court shall retain jurisdiction to resolve controversies and disputes regarding the

26  interpretation of the Plan, the Confirmation Order, and the Creditors' Trust Agreement.

27        4.    Plan Implementation

28

DEBTORS' FIRST AMENDED PLAN OF
REORGANIZATION                                    - 49 -